

**Your Missouri Courts**

asc.net

Search for Cases by: [Select Search Method...]

Judicial Links | eFiling | Help | Contact Us | Print          GrantedPublicAccess  Logoff ALLISONLEE7

**19SL-CC05679 - RICHARD SADDLER V CARVANA, LLC (E-CASE)**

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

This information is provided as a service and is not considered an official court record.

Sort Date Entries: ◉ Descending   Display Options:
○ Ascending

**Click here to eFile on Case**   Click here to Respond to Selected Documents          [All Entries]

| | | |
|---|---|---|
| 01/21/2020 | ☐ **Affidavit Filed** (22) | |
| | AFFIDAVIT IN SUPPORT OF PLANTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT CARVANA'S MOTION TO COMPEL ARBITRATION EXHIBITS A,B,C ATTACHED (22-A, 22-B, 22-C, 22-D) | |
| | **Filed By:** RICHARD SADDLER | |
| | ☐ **Notice of Hearing Filed** (21) | |
| | NOTICE OF HEARING | |
| | **Filed By:** RICHARD SADDLER | |
| | ☐ **Memorandum Filed** (20) | |
| | MEMORANDUM IN OPPOSITION TO DEFENDANT CARVANA'S MOTION TO COMPEL ARBITRATION | |
| | **Filed By:** RICHARD SADDLER | |
| 01/16/2020 | ☐ **Amended Notice of Hrng Filed** (19) | |
| | Amended Notice of Hearing; Electronic Filing Certificate of Service. | |
| | **Filed By:** WILLIAM ALLEN BRASHER | |
| | **On Behalf Of:** CARVANA, LLC | |
| | ☐ **Motion for Extension of Time** (18) | |
| | Motion for Extension of Time to File Responsive Pleading; Electronic Filing Certificate of Service. | |
| | **Filed By:** WILLIAM ALLEN BRASHER | |
| 01/15/2020 | ☐ **Motion Filed** (17) | |
| | MOTION FOR CONTINUANCE FILED | |
| | **Filed By:** RICHARD SADDLER | |
| 01/14/2020 | ☐ **Motion Filed** (16) | |
| | MOTION FOR PRO HAC VICE ADMISSION OF M THOMAS McFARLAND; Exhibit A; Exhibit B; Proposed Order; Electronic Filing Certificate of Service. | |
| | **Filed By:** WILLIAM ALLEN BRASHER | |
| | **On Behalf Of:** CARVANA, LLC | |
| 01/08/2020 | ☐ **Notice of Hearing Filed** (15) | |
| | Notice of Hearing; Electronic Filing Certificate of Service. | |
| | **Filed By:** WILLIAM ALLEN BRASHER | |
| | **On Behalf Of:** CARVANA, LLC | |
| 01/07/2020 | ☐ **Suggestions in Support** (14) | |
| | Memorandum in Support of Motion to Compel Arbitration; Exhibit A - Arbitration Agreement; Exhibit B - Prior Petition; Exhibit C - RIC Security Agreement. (14-A) (14-B) (14-C) | |
| | **Filed By:** WILLIAM ALLEN BRASHER | |
| | **On Behalf Of:** CARVANA, LLC | |
| | ☐ **Motion to Compel Arbitration** (13) | |
| | **Filed By:** WILLIAM ALLEN BRASHER | |
| | ☐ **Entry of Appearance Filed** (12) | |
| | Entry of Appearance - W Brasher for Carvana, LLC. | |
| | **Filed By:** WILLIAM ALLEN BRASHER | |
| | ☐ **Entry of Appearance Filed** (11) | |
| | Entry of Appearance - Allison E Lee. | |
| | **Filed By:** ALLISON ELIZABETH LEE | |
| | **On Behalf Of:** CARVANA, LLC | |
| 12/27/2019 | ☐ **Motion Denied** (10) | |
| | PLAINTIFF'S MOTION FOR TRO CALLED AND HEARD. BOTH SIDES APPEARED. MOTION DENIED. SO ORDERED: AMANDA B. MCNELLEY. | |
| | ☐ **Corporation Served** (09) | |

EXHIBIT
F

Document ID - 19-SMOS-1335; Served To - CARVANA, LLC; Server - ; Served Date - 23-DEC-19; Served Time - 00:00:00;
Service Type - Sheriff Department; Reason Description - Served
**Filed By:** RICHARD SADDLER

**12/23/2019**   ☐ **Judge/Clerk - Note**
       SERVICE PAPERS HAND DELIVERED TO PLTP FOR SERVICE BY SPS.
     ☐ **Motion Special Process Server** (08)
     ☐ **Summ Issd- Circ Pers Serv O/S** (07)
       Document ID: 19-SMOS-1335, for CARVANA, LLC.
     ☐ **Notice of Hearing Filed** (060)
     ☐ **Proposed Order Filed** (05)
       PROPOSED TEMPORARY RESTRAINING ORDER FILED.
     ☐ **Memorandum Filed** (04)
       MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER FILED.
     ☐ **Mot for Temp Restraining Order** (03)
     ☐ **Filing:** (02)
       SERVICE INSTRUCTIONS FILED.
     ☐ **Confid Filing Info Sheet Filed**
     ☐ **Pet Filed in Circuit Ct** (01)
     ☐ **Judge Assigned**
       DIV 1

## IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
## STATE OF MISSOURI

RICHARD SADDLER, an )
Individual     )  No.: 19SL-CC 05679
    Plaintiff, )
       )
v.       )
       )  Division: ___1___
CARVANA, LLC, an Arizona )
Limited Liability Company )
    Defendant. )

**FILED**

DEC 23 2019

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

### COMPLAINT

COMES NOW Plaintiff Richard Saddler, appearing *pro se*, and for his cause of action

against Defendant Carvana, LLC ("Defendant"), states as follows:

### GENERAL ALLEGATIONS

1. Plaintiff Richard Saddler is a citizen and resident of the County of St. Louis, State of

Missouri.

2. Defendant Carvana, LLC is a limited liability company organized under the laws of the

State of Arizona.  Defendant does business under the fictitious name Carvana.  Defendant is

registered as a foreign limited liability company in the State of Missouri.

3. At all times herein mentioned, Defendant maintained continuous, significant and ongoing

business activities within the State of Missouri which constituted purposeful minimum contacts

with Missouri and which subject it to personal jurisdiction.

4. In particular, Defendant is in the business of buying, selling, financing and delivering

used cars to customers throughout the State of Missouri and the United States.  As part of its

business, Defendant employs full-time and part-time personnel in Missouri, including, but not

limited to, customer advocate field personnel, lot attendants, drivers, marketers, and other

personnel who all work in concert to achieve the business goals of Defendant.  Defendant

1

contracts to buy, sell and finance used vehicles in St. Louis County Missouri. Defendant owns and operates lots to store and service vehicles in Missouri. Defendants sells and delivers vehicles to customers in St. Louis County Missouri. All the aforementioned activities constitute purposeful minimum contacts with the State of Missouri so as to satisfy the requirements of general jurisdiction over Defendant.

5.      Venue is proper in St. Louis County in that Plaintiff is a resident of St. Louis County Missouri.

6.      Desiring to purchase a used vehicle, Plaintiff utilized Defendant's website to search for and locate a suitable vehicle.

7.      After locating a vehicle, Plaintiff applied for financing through Carvana's related party finance company and was approved to finance $26,489.02 which included the price of the vehicle, TAVT tax, license fee, vehicle protection and GAP coverage, at an interest rate of 12.61%.

8.      On or about September 21, 2018, Defendant delivered to Plaintiff at his residence a 2015 GMC Terrain Denali "(Denali)". Plaintiff executed final documents acknowledging and accepting delivery.

9.      Plaintiff executed a retail installment contract, a security agreement, Carvana Care agreement, credit reporting notice, odometer disclosure statement, and a GAP Addendum to retail installment contract.

10.     Neither at the time of sale or delivery of the purchased vehicle nor any time subsequent did Defendant provide Plaintiff title or an assignment of a Certificate of Ownership to the purchased vehicle as required by Missouri law.

11.     Approximately forty-five days after his purchase, and prior to the expiration of the temporary registration tags, Plaintiff was required to obtain at his expense and inconvenience the first of what would turn into several emissions inspections with odometer readings. Defendant told Plaintiff he needed to take these actions and email the emissions test results to Defendant ostensibly so as Defendant could provide Plaintiff his vehicle title or an assignment of a Certificate of Ownership and registered license plates. Defendant told Plaintiff they would cover the expense of obtaining his emissions test. Plaintiff has repeatedly requested that the Defendant sign over said title, placing Carvana/ Bridgecrest (Carvana's Finance company) as lienholder. Allowing Plaintiff to obtain his own registration. Defendant has refused to even do that.

12.     Despite providing a passing emissions test result via US Postal Service and email as directed by Defendant, Plaintiff was informed Defendant's third-party processing company was unable to process the title and registration and they were requesting original emission inspection and odometer readings issued by the State of Missouri and not the "copy" provided by mail or email.

13.     Despite making all required payments under the Contract and as a consequence of Plaintiff's ownership registration problems, in April 2018 Plaintiff began receiving emails from Defendant threatening repossession of the vehicle Plaintiff purchased.

14.     As a further consequence of Plaintiff's registration problems, he has been stopped repeatedly by police for driving without properly registered license plates. Plaintiff feels fearful for his and his family's safety because of potential ramifications from having to confront a hostile police officer due to unregistered license plates.

15.     Beginning approximately September 2018 until approximately April 2019, Plaintiff has made all monthly payments on his purchased vehicle in the amount of $527.00 for a total amount

3

of approximately $3700 all of which have been paid toward a vehicle plaintiff doesn't legally own.

16.     Plaintiff has additionally suffered loss of time, inconvenience, annoyance, and embarrassment resulting from his vehicle purchase and Defendant's failure to assign Plaintiff a Certificate of Ownership or title pursuant thereto and by Defendant's further and ongoing failure to remedy their omission of failing to assign Plaintiff a Certificate of Ownership.

17.     Defendant's actions, as described herein, were outrageous because of Defendant's conscious disregard of their contractual and statutory  obligations or otherwise reckless indifference to Plaintiff's rights, and the rights of others, such that Plaintiff is entitled to an additional amount as punitive damages in a sum sufficient to punish Defendant and to deter Defendant and others from like conduct.

## COUNT I – BREACH OF CONTRACT

18.     Plaintiff hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

19.     On or around September 21, 2018, Plaintiff entered into a contract ("Contract") with Defendant for the purchase of a used vehicle. *See* Contract marked Exhibit I, attached hereto and incorporated herein by reference. The Contract was executed in St. Louis County Missouri. The Contract names Defendant as "Dealer" for the sale of the subject vehicle.

20.      The Contract and Missouri State law (*R.S.Mo.§ 301.210)* required the Defendant, among other things, to provide Plaintiff with title to the vehicle by assigning him a Certificate of Ownership upon performance by Plaintiff of his contractual obligations.

21.     Plaintiff performed fully in accordance with the Contract paying Defendant each and every payment in the correct amount as it became due until May 2019.

22.     Plaintiff was never provided a Certificate of Ownership by Defendant at time of vehicle delivery as required by Missouri law and which is necessary to register his purchased vehicle.

23.     Defendant's failure to provide Plaintiff documents necessary to register his purchased vehicle constitutes not only a breach of the Contract itself but also a breach of the implied covenant of good faith and fair dealing imposed upon every contract in Missouri.

24.     As a result of the foregoing  breaches of Contract, Defendant has caused Plaintiff to suffer financial damages.

25.     Accordingly, Plaintiff is entitled to an award of compensatory damages in an amount to be determined at trial, as well as an award of punitive damages and attorney fees, costs, and pre- and post-judgment interest.

## COUNT II – STATUTORY FRAUD

26.    Plaintiff hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

27.    *R.S.Mo. § 301.210 Subd. 4* provides any sale of a motor vehicle without transfer of title is fraudulent.

28.    Defendant sold, or purportedly sold, a vehicle to Plaintiff without transferring title of the vehicle by assignment of a Certificate of Ownership as required by Missouri statute *R.S.Mo. § 301.210 Subd. 4* and, as such, the sale was fraudulent and void as a matter of law.

29.    Defendant was repeatedly put on notice by Plaintiff, in addition to being notified by the Missouri State Attorney General, of the fraudulent nature of the vehicle sale.

30.    Despite being aware of their failure to transfer title by assignment of a Certificate of Ownership and by thereafter refusing to remedy same, Defendant has caused Plaintiff to suffer financial damages.

31.    Accordingly, Plaintiff is entitled to an award of compensatory damages in an amount to be determined at trial, as well as an award of punitive damages and attorney fees, costs, and pre- and post-judgment interest.

## COUNT III – CIVIL REMEDIES, ATTORNEY'S FEES AND PUNITIVE DAMAGES – VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT ("MMPA") - R.S. Mo. §§ 407.020 and 407.025

32.    Plaintiff hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

33.    As herein alleged Defendant used or employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and/or the concealment, suppression, or omissions of material fact in connection with the sale of the Denali to Plaintiff, to wit:

   a. Defendants misrepresented to Plaintiffs the fact Defendant was prepared to assign a Certificate of Ownership upon Plaintiff's performance under the contract;

6

b. Defendant misrepresented to Plaintiffs the fact Defendant would obtain an ownership interest in the Denali if he performed as required under the contract but despite Plaintiff's performance he has acquired no interests whatsoever in the Denali; and

c. Defendant charged Plaintiff excessive fees for services and products of little or no value.

34. Plaintiff's purchase of the Denali from Defendant was made primarily for personal, family or household purposes.

35. Plaintiff purchased the Denali for personal, family or household purposes and suffered an ascertainable loss of money or property as a result of the use or employment by Defendant of methods, acts or practices declared unlawful by R.S. Mo. § 407.020.

36. Plaintiff has been damaged by Defendant's actions in an amount to be proven at trial for which he claims compensatory damages against Defendant.

37. Defendant's conduct was malicious, fraudulent, oppressive and/or recklessly committed, with wanton disregard of Plaintiff's rights.

38. Plaintiff is entitled to an award of punitive damages in an amount no less than $2,500.00 and reasonable attorney's fees and expenses of this litigation, and interest against Defendant.

39. Plaintiff is entitled to such other and further relief as may be warranted.

## COUNT IV – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

40. Plaintiff hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

41. Defendant represented to Plaintiff they were able to legally sell the Denali to Plaintiff.

42.    Despite Plaintiff performing as required under the contract, Defendant failed to perform as required by law and as set forth *supra* by delivering the Denali without providing Plaintiff an assignment of a Certificate of Ownership.

43.    Defendant is a sophisticated and experienced nationwide and also a licensed Missouri auto dealership with resources enabling it to be fully knowledgeable regarding their responsibility to assign a Certificate of Ownership at the time of delivery in Missouri of any automobile sold.  Despite their knowledge of their legal duty to assign ownership at the time of delivery, Defendant shifted their statutory burden to provide an assignment of ownership to Plaintiff by requiring him to obtain his own smog certification prior to Defendant's assigning Plaintiff his Certificate of Ownership.

44.    As a result of Defendant's shifting its statutory responsibility to Plaintiff by failing to assign a Certificate of Ownership and thereafter insisting Plaintiff obtain his own smog certification prior to Defendant's assignment, Plaintiff has been denied the benefit of his bargained for exchange as represented by the parties contract because he has no ownership interest in the Denali after more than a year of monthly payments.

45.    As a direct result of Defendant's breach of the covenant of good faith and fair dealing, Plaintiff has, or will, sustain damages in an amount to be proven at trial.

**COUNT V – CONSTRUCTIVE FRAUD OR NEGLIGENT MISREPRESENTATION**

46.    Plaintiff hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

47.    Defendant in the course of their business as a Missouri licensed used auto dealership, for Defendant's pecuniary gain, supplied false information to Plaintiff intended for their specific

guidance in their consideration of the purchase of the Denali all as herein alleged, upon which Plaintiff reasonably relied to his detriment in entering into the purchase of the Denali.

48.     In furnishing such false information Defendant failed to exercise reasonable care or competence in obtaining or communicating such information to Plaintiff.

49.     As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff has suffered, and will continue to suffer damages, including pecuniary losses in an amount to be determined at trial.

50.     Plaintiff has been damaged by Defendant's actions for which he claims compensatory damages against Defendant.

## COUNT VI – UNJUST ENRICHMENT

51.     Plaintiff hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

52.     Defendant has been knowingly benefited at Plaintiff's expense by reason of their receipt of monthly payments with interest and fees made toward the purchase price for the Denali.

53.     Allowing Defendants to retain such benefit without assignment to Plaintiff of a Certificate of Ownership and a judgement for his damages would be unjust under the circumstances.

54.     Defendant's conduct was malicious, fraudulent, oppressive and/or recklessly committed with wanton disregard of plaintiff's rights.

55.     Plaintiff has been damaged by Defendant's actions in an amount to be proven at trial (and Plaintiff hereby tenders the return of the Denali) for which he claims compensatory and punitive damages against Defendant.

9

## COUNT VII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

56.     Plaintiff hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

57.     Defendant's actions were the direct and proximate cause of emotional distress suffered by Plaintiff.

57.     Defendant had a duty to avoid engaging in conduct and/or actions and/or omissions that would unnecessarily and unjustifiably cause emotional stress to Plaintiff.

58.     Defendant breached their duty.

59.     Defendant was negligent in causing Plaintiff's emotional distress in that Defendants realized or should have realized with the foresight exercised by a reasonable person that their conduct and/or actions and/or omissions involved an unreasonable risk of causing Plaintiff emotional distress.

60.     Furthermore, as the actions of Defendant are outrageous and evidence a complete indifference and conscious disregard for the rights of others, Plaintiff is entitled to punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

        a.  for the first count for Breach of Contract, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Defendant assign to Plaintiff a Certificate of Ownership or in the alternative rescission of the contract and an award of damages;  OR

        b.  for the second count for Statutory Fraud, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Defendant assign to Plaintiff a Certificate of Ownership or in the alternative rescission of the contract and an award of damages;  OR in lieu of "a" or "b"

c.  for the third count for Violation of the MPA, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Defendant assign to Plaintiff a Certificate of Ownership or in the alternative rescission of the contract and an award of damages;  OR in lieu of "a," "b" or "c"

d.  for the fourth count for Breach of the Covenant of Good Faith and Fair Dealing, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Defendant assign to Plaintiff a Certificate of Ownership or in the alternative rescission of the contract and an award of damages;  OR in lieu of "a," "b," "c" or "d"

e.  for the fifth count for Constructive Fraud/Negligent Misrepresentation, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Defendant assign to Plaintiff a Certificate of Ownership or in the alternative rescission of the contract and an award of damages;  OR in lieu of "a," "b," "c," "d" or "e"

f.  for the sixth count for Unjust Enrichment, an award of compensatory damages in an amount to be determined at trial;  AND

g.  for the seventh count for Negligent Infliction of Emotional Distress, an award of compensatory damages and punitive damages in an amount to be determined at trial;  AND

h.  an award of costs, attorney's fees, and pre- and post-judgment interest;  AND

i.  all other and further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff requests a jury trial.

Respectfully submitted,

_____
Richard Saddler
Plaintiff, *Pro Se*
413 Genoa Drive
Manchester, MO 63021
Cell: 310-428-2110

Subscribed and sworn before me this 23rd day of December, 2019.

_____
Notary Public

My Commission Expires
March 4, 2023

KARRIE KENNEY
My Commission Expires
March 4, 2023
St. Louis County
Commission #19866617

11

Exhibit A page 1 of 2

## Final Notice: ^_Carvana^_ Title & Registration

From: Registration (registration@carvana.com)

To: ricksaddler@yahoo.com

Date: Wednesday, April 24, 2019, 8:33 AM CDT


April 24, 2019


Richard Saddler
413 Genoa Dr
Manchester, Missouri 63021


RE: Title and Registration


Dear Juan Jazmin,


We have attempted several times to contact you by phone, text and email regarding the title and registration of the vehicle you purchased from Carvana. Additional items are required to process your registration and it's important that we hear from you within 5 days of the date on this letter. If we have not received the items requested or contact from you by the below-mentioned expiration date, you will have to return the vehicle or we may have to retake it.


**Expiration:** 4/29/2019

We believe we can work together to resolve any issue(s) you may be having. Please contact our Post Sale Operations team at 844-507-3599 at your earliest convenience.


Sincerely,
Carvana Title and Registration
registration@carvana.com

Case: 4:20-cv-00105-HEA Doc. #: 1-6 Filed: 01/22/20 Page: 15 of 190 PageID #: 48

Exhibit A page 2 of 2

## Re: Final Notice: ^_Carvana^_ Title & Registration

From: ricksaddler@yahoo.com (ricksaddler@yahoo.com)

To: registration@carvana.com; ricksaddler@yahoo.com

Cc: nicholas.backes@ago.mo.gov

Date: Wednesday, April 24, 2019, 8:57 AM CDT


I just tried to call you again, as I've try to do the same this past Monday. I have over a 140 people in front of me as I have to wait on the line to communicate with you. Schedule a time setup a call if you truly want to take care of this before the April 29th.

On Wed, Apr 24, 2019 at 8:51 AM, ricksaddler@yahoo.com
<ricksaddler@yahoo.com> wrote:

I want to make this unequivocally clear to Carvana and affiliate or anyone associated with. I have notified the local police department to let them know of what's going on with regards to the registration. And to threaten to come to my house and anywhere and now take the property in which I'm currently making monthly payments for because you could not follow the the Missouri rules is not going to be accepted. If I don't have my proper registration by the same date of the 29th of April I will file an action in court forcing you to do so. At this time I ask that Carvana and any and all Affiliates that have dealt with me through this process from acquisition to present preserve all recordings and all documents with regards to this account. I will follow this email up with a phone call right now. Thank you and I hope you would change your business practice and get this taken care of. I have cc'd the Attorney General in this message.

```
       OFFICE OF THE CIRCUIT CLERK          Invoice No: 283366
       CIRCUIT COURT OF ST.LOUIS CO             Date: 12/23/19
       105 SOUTH CENTRAL AVENUE
           CLAYTON, MO  63105                   Page: 1
             314-615-8035


                                        Customer No: 11
                                           Phone No:

   RICHARD SADDLER




 Cust. Order #: 19SL-CC05679        Salesperson: #23 - DOMINIQUE

Product Code          Item Description       Qty  Unit Price    Amount
=====================================================================
110              CIVIL & EQUITY FILING        1    105.50      105.50
=====================================================================
                                        Sub-Total:             105.50
                                                :
                                         Shipping:               0.00
                                      Tax [   0]:             EXEMPT *
                                        =========================
                                            Total:            105.50
                                                :             105.50
                                        =========================
       T h a n k                      Amount Paid:            105.50
       Y o u                           Amount Due:              0.00
                                           Change:              0.00
```

IN THE

# CIRCUIT COURT
OF SAINT LOUIS COUNTY, MISSOURI

Richard  Saddler

_Plaintiff(s)_

VS.

Carvana, LLC

_Defendant(s)_

Date **12-23-19**

Case Number **19SLCC00679**

Division

For File Stamp Only

# FILED

DEC 23 2019

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

## SERVICE INSTRUCTIONS

Defendant Name: Carvana, LLC

Address: 1930 W Rio Salado Parkway

City, State, & ZIP: Tempe, AZ 85281

Defendant Name: _____

Address: _____

City, State, & ZIP: _____

Defendant Name: _____

Address: _____

City, State, & ZIP: _____

Richard Saddler

Plaintiff(s)/~~Attorney~~ Pro se        Bar No. _____

413 Gordon Dr

Address

Manchester, MO 63021

310-428-2110

Phone Number

**IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI**

| | | |
|---|---|---|
| **RICHARD SADDLER** | ) | |
| | ) | Cause No. *19SL – CC05679* |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **CARVANA, LLC, an Arizona** | ) | Division:  *1* |
| **Limited Liability Company** | ) | |
| **Defendant.** | ) | |

## <u>MOTION FOR TEMPORARY RESTRAINING ORDER</u>

Comes now, Plaintiff Richard Saddler against Defendant Carvana, LLC (Carvana) and or any of its affiliates alleges and avers as follows:

Plaintiff Richard Saddler ("Saddler") moves this Court, pursuant to Rule 92.02 of the Missouri Supreme Court Rules, for an Order temporarily enjoining Defendant Carvana, LLC and or its affiliates ("Defendant") from harassing Plaintiff in relation, or otherwise attempting, to repossess the 2015 GMC Terrain Denali purchased by Plaintiff from Defendant. This motion is predicated upon Defendant's email sent to Plaintiff threatening repossession and their multiple "ambush-style" appearances at Plaintiff's Residence, employing intimidation in an attempt to repossess Plaintiff's car all based upon Defendant's failure to follow Missouri law governing Automobile Dealers. Carvana has had nearly sixteen months to deliver Plaintiff an assignment of Certificate of Title. Defendant has refused to assign title to Plaintiff so he may register and license the vehicle he purchased.

Specifically, Plaintiff moves this Court for a temporary restraining order compelling Defendant Carvana, LLC or any of its affiliates:

a) Refrain from taking or otherwise repossessing Plaintiff's 2015 GMC Terrain Denali without courts permission.

In support of its Motion, Plaintiff relies upon and incorporates by reference herein the allegations and arguments set forth in (a) Plaintiff's Verified Petition and (b) the Memorandum in Support of Plaintiff's Motion for a Temporary Restraining Order.

WHEREFORE, for the reasons set forth in this Motion, the related Memorandum in Support, and Verified Petition, Plaintiff respectfully requests this Court grant its Motion for a Temporary Restraining Order and enter Plaintiff's Proposed Order, which is attached hereto as Exhibit A.

Richard Saddler

## CERTIFICATE OF SERVICE

On this 23rd day of December, 2019, a copy of the attached Motion were FedEx to Defendant and hand deliver to the Clerk of Court, to the following addresses respectfully:

Carvana, LLC
1930 W Rio Salado Parkway
Tempe, AZ 85281

and

St. Louis County Clerk of Court
105 South Central Avenue
Clayton, MO 63105

Richard Saddler

## IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
## STATE OF MISSOURI

RICHARD SADDLER, an )
Individual )
           Plaintiff, )
            )
v. )
            )
CARVANA, LLC, an Arizona )
Limited Liability Company )
           Defendant. )

Cause No. 19SL - cc05679

Division:  1

## MEMORANDUM IN SUPPORT OF
## MOTION FOR TEMPORARY RESTRAINING ORDER

1. Plaintiff Richard Saddler ("Saddler") used Carvana's website to search and find a vehicle. Defendant Carvana, LLC ("Carvana") is a Licensed Automobile Dealer that sells used cars nationwide. Saddler has repeatedly requested from Defendant an assignment of a Certificate of Title for the 2015 GMC Terrain Denali ("Denali ") purchased on September 21, 2018. Defendant's failure to assign Saddler a Certificate of Title at the time of delivery of the Denali was a violation of *RSMO § 301.210.*

## BACKGROUND

A detailed account of the facts and allegations supporting both claims against Defendant and the requested Temporary Restraining Order are fully set forth in Saddler's Verified Petition and Other Relief ("Verified Petition"), and are incorporated herein by reference.

Temporary Restraining Orders ("TRO's") are authorized by Rule 92.02(b) of the Missouri Rules of Civil Procedure. The standards for granting TRO's are similar to the standards for granting preliminary injunctions. The Court should consider:

## THE RULE OF LAW

**92.02. Temporary Restraining Order - Notice - Preliminary Injunction - Bond - Form and Scope**

**(a) Temporary Restraining Order - With Notice.**

*(1) When Issued.* The court shall not grant a temporary restraining order unless the party seeking relief demonstrates that immediate and irreparable injury, loss, or damage will result in the absence of relief.

*(2) Proof Required.* A party seeking a temporary restraining order shall support that request with a verified petition or affidavit reciting the specific facts that support the showing required by Rule 92.02(a)(1).

*(3) Required Notice.* Except as provided in Rule 92.02(b), no temporary restraining order shall issue without reasonable notice at least twenty-four hours before the hearing on the motion to the party against whom relief is sought.

*(4) Form.* A temporary restraining order shall be endorsed with the date and hour of issuance, shall be filed forthwith in the clerk's office and entered of record, and shall set forth specific facts that support the showing required by Rule 92.02(a)(1).

*(5) Duration.* A temporary restraining order shall expire within such time after entry, not to exceed fifteen days, as the court fixes. The court may extend the order for additional periods, not to exceed fifteen days each, if the party seeking relief shows that the grounds specified in Rule 92.02(a)(1) continue to exist.

## (b) Temporary Restraining Order - Without Notice.

*(1) When Issued.* A party seeking a temporary restraining order without notice shall make the showing required under Rule 92.02(a). The court shall not grant a temporary restraining order without prior notice to the party against whom relief is sought unless the party seeking relief establishes that notice cannot be given or notice would defeat the purpose of the order.

*(2) Proof Required.* A party seeking a temporary restraining order without notice shall file a verified petition or affidavit reciting the specific facts that support the showing required by Rule 92.02(b)(1).

*(3) Form.* A temporary restraining order granted without notice shall be endorsed with the date and hour of issuance, shall be filed forthwith in the clerk's office and entered of record, and shall set forth specific facts that support the showing required by Rule 92.02(b)(1). A temporary restraining order failing to set forth such specific facts is void ab initio

*(4) Duration.* A temporary restraining order granted without notice shall expire within such time after entry, not to exceed ten days, as the court fixes. The court may extend the order for additional periods, not to exceed ten days each, after notice to the party against whom relief is sought. The court may dispense with such notice only if the party seeking relief establishes that notice cannot be given to the party against whom relief is sought or notice would defeat the purpose of the order.

*(5) When Set Aside.* On one day's notice to the party who obtained the temporary restraining order without notice, or on such shorter notice as the court may prescribe, the adverse party may

appear and move to dissolve or modify the order. At the hearing, the burden shall be upon the party seeking the temporary restraining order to establish a right to relief.

*(6 Sanction for Failure to Provide Required Notice.* If the court finds that a party obtaining a temporary restraining order without notice did not have a reasonable basis to proceed without notice, the party shall be presumed to have acted in bad faith and to have violated Rule 55.03(c). The thirty-day provisions of Rule 55.03(d) (1) (A) shall not apply to proceedings under this Rule 92.02(0)6).

(c) Bond. No injunction or temporary restraining order, unless on final hearing or judgment, shall issue in any case, except in suits instituted by the state in its own behalf, until the plaintiff, or some responsible person for the plaintiff, shall have executed a bond with sufficient surety or sureties to the other party, in such sum as the court shall deem sufficient to secure the amount or other matter to be enjoined, and all damages that may be occasioned by such injunction or temporary restraining order to the parties enjoined, or to any party interested in the subject matter of the controversy, conditioned that the plaintiff will abide by the decision that shall be made thereon and pay all sums of money, damages and costs that shall be adjudged if the injunction or temporary restraining order shall be dissolved. In lieu of the bond the plaintiff may deposit with the court such sum, in cash, as the court may require sufficient to secure such amount.

## ARGUMENT

### A. Saddler Is Suffering And Will Continue To Suffer Irreparable Harm From Defendant's Conduct

Defendant's conduct has caused and continues to cause severe and irreparable injury to Saddler and his family. On or about April 24, 2019, at approximately 8:33 am, Saddler received a threatening email that clearly referenced the current Registration issue with Carvana. See attached exhibit A. The email states in part, that if Saddler didn't contact Carvana by 4/29/19 he would have to return the car, or they would come take it. At the time of that threating email the loan was in good standing and or currant with all payments on time. In addition, Carvana on three separate occasion visited my home and harassed and threatened to take my vehicle. Finally, Carvana now refuses to accept payments from me so they may ostensibly claim that I'm in contractual default. Saddler and the Missouri Attorney General have had several communications with Carvana wherein Saddler has brought to light the fraudulent business practices of Carvana and their violations of Missouri law. Carvana has attempted to intimidate Saddler with their emails, phone calls, and visits to his residence all with the purpose of repossessing the Denali, which repossession is predicated upon Defendant's sale to Plaintiff a car in violation of Missouri law.

### B. Saddler Is Likely To Succeed On The Merits Of Its Claim

*RSMO § 301.210* declares that the sale of a motor vehicle without transfer of title is fraudulent. Defendant Carvana sold, or purported to sell, the vehicle to Mr. Saddler and did not transfer the title; therefore, the transaction constituted fraud as a matter of law. Due to the Defendant's

sophistication in clear knowledge of the laws in the State of Missouri, the Defendant should not have asked Mr. Saddler to obtain the emissions inspection and odometer reading.  Mr. Saddler was unaware of the rules and laws that surround buying and selling a car in the State of Missouri.

Despite having long been on notice of this fraud, including via mail, phone calls and emails from Mr. Saddler and the Attorney General of Missouri, Defendant is now resorting to Gangster like tactics of threats and intimidation.

## CONCLUSION

For the reasons set forth above, Plaintiff Saddler respectfully requests this Court issue a temporary restraining order compelling Defendant to:  refrain from taking Plaintiffs GMC Terrain until this court deems necessary.

Respectfully submitted

Richard Saddler

## CERTIFICATE OF SERVICE

On this 23rd day of December, 2019, a copy of the attached Motion were FedEx to Defendant and hand deliver to the Clerk of Court, to the following addresses respectfully:

Carvana, LLC
1930 W Rio Salado Parkway
Tempe, AZ 85281

and

St. Louis County Clerk of Court
105 South Central Avenue
Clayton, MO 63105

Richard Saddler

## IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
## STATE OF MISSOURI

RICHARD SADDLER, an )
Individual )          Cause No. 19SL - CC05679
      Plaintiff, )
   )
v. )
   )
CARVANA, LLC, an Arizona )          Division: 1
Limited Liability Company )
      Defendant. )

## TEMPORARY RESTRAINING ORDER

This matter comes before the Court on the motion for Temporary Restraining Order (TRO) of Plaintiff Saddler against Defendant Carvana, LLC and any and all affiliates. Based upon the argument of Plaintiff and the evidence adduced, the Court is of the opinion that such injunction should be granted.

Plaintiff Saddler is suffering and will continue to suffer irreparable harm from defendant's conduct if TRO isn't granted. The Court also finds that Plaintiff has made every reasonable attempt to provide the notice required by Rule 92.02

It is therefore ORDERED, ADJUDGED and DECREED that Defendant, and all others in active concert with Carvana, are hereby compelled to directly or indirectly:

1) Reframe from harass or actively taking any property belonging to Mr. Saddler, including but not limited to the 2015 GMC Terrain Denali the defendant sold to Saddler.

IT IS FURTHER ORDERED that any violation of this Order will subject Defendant to Sanctions and or contempt.

IT IS FURTHER ORDERED that bond is set at $500.00

IT IS FURTHER ORDERED that this Order shall expire in fifteen (15) days of its entry, unless further extended by the Court.

IT IS FURTHER ORDERED that the Court shall hold a hearing on Plaintiffs' motion/petition on _____, 20__ at _____ Division_____.

                    By:_____

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY

STATE OF MISSOURI

| | | |
|---|---|---|
| **RICHARD SADDLER** | ) | |
| **PLANTIFF,** | ) | Cause No. 19SL-CC05679 |
| VS | ) | |
| | ) | |
| **CARVANA, LLC** | ) | Division: 34 |
| **DEFENDANT,** | ) | |

**Notice of hearing** Jan. 27, 2019   Div 34

Comes now Richard Saddler, and his requested for hearing to be on the record for the following motions Plaintiffs TRO.

*Rule 92.02.a(3) Required Notice. Except as provided in Rule 92.02(b), no temporary restraining order shall issue without reasonable notice at least twenty-four hours before the hearing on the motion to the party against whom relief is sought.*

Appearance is required by Defendant

Richard Saddler

413 Genoa Dr.

Manchester, MO 63021

Phone: 310-428-2110

Richard Saddler

Certificate of Service

On this 23rd day of December 2019 this motion was delivered by FedEx to Defendant at:
1930 West Rio Salado Parkway,
Tempe,
AZ 85281
and also emailed to Defendant at registration@carvana.com per the rule 92

Richard Saddler



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>BRIAN H MAY | Case Number:  19SL-CC05679 |
|---|---|
| Plaintiff/Petitioner:<br>RICHARD SADDLER<br><div align="right">vs.</div> | Plaintiff's/Petitioner's Attorney/Address:<br>RICHARD SADDLER<br>413 GENOA DRIVE<br>BALLWIN, MO  63021 |
| Defendant/Respondent:<br>CARVANA, LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Contract-Other | |

<div align="right">(Date File Stamp)</div>

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:   CARVANA, LLC
Alias:

**1930 WEST RIO SALADO PKWY**
**TEMPE, AZ  85281**

**COURT SEAL OF**

**ST. LOUIS COUNTY**

> You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
> **SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.**

<u>23-DEC-2019</u>
**Date**
**Further Information:**
**CG**

_____
**Clerk**

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by:  (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
    ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.
    .
    ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
    ☐ other (describe) _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).
_____            _____
<div align="center">Printed Name of Sheriff or Server</div> <div align="center">Signature of Sheriff or Server</div>

**Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
I am: (check one) ☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
☐ authorized to administer oaths.  (use for court-appointed server)

*(Seal)*

_____
<div align="center">Signature and Title</div>

| Service Fees, if applicable | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Mileage | $_____ | (_____miles @ $ _____ per mile) |
| **Total** | $_____ | |

*See the following page for directions to clerk and to officer making return on service of summons.*

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion and/or petition must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion and/or petition when offered to him, the return shall be prepared to show the offer of the officer to deliver the summons and motion and/or petition and the Defendant's/Respondent's refusal to receive the same.

Service shall be made:  (1) On Individual.  On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the individual personally or by leaving a copy of the summons and motion and/or petition at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and motion and/or petition to an agent authorized by appointment or required by law to receive service of process;  (2) On Guardian.  On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the guardian personally;  (3)  On Corporation, Partnership or Other Unincorporated Association.  On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion and/or petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  On a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory in the United States.  If served in a territory, substitute the word "territory" for the word "state."

The officer making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than sixty days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly, and in any event so that it will reach the Missouri Court within 30 days after service.

**THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.   A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.   Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits.   Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.   An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) <u>Early Neutral Evaluation ("ENE")</u>:** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) <u>Mini-Trial</u>:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) <u>Summary Jury Trial</u>:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

In the
# CIRCUIT COURT
## Of St. Louis County, Missouri

Plaintiff/Petitioner: _Richard   Saddler_

Date: _Dec. 23, 2019_

FILED

DEC 23 2019

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

Case Number: _19SL-CC05679_

vs.

Defendant/Respondent: _Carvana, LLC_

Division: _1_

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now _Richard   Saddler_ , pursuant to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

| Name of Process Server | Address | Telephone |
|---|---|---|
| _Rufus R Harmon_ | _PO Box 1794, Jefferson City_ | _573-230-8799_ |
| Name of Process Server | Address or in the Alternative _MO 65102_ | Telephone |
| Name of Process Server | Address or in the Alternative | Telephone |

Natural person(s) of lawful age to serve the summons and petition in this cause on the below named parties. This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVE:
Name: _Carvana, LLC (Agent)_  _CSC_

Agent's Address → Address: _221 Bolivar St._

City/State/Zip: _Jefferson, MO 65101_

SERVE:
Name

Address

City/State/Zip

SERVE:
Name

Address

City/State/Zip

SERVE:
Name

Address

City/State/Zip

Appointed as requested:
**JOAN M. GILMER**, Circuit Clerk

By _____
Deputy Clerk

Date: _12-23-19_

Attorney/Plaintiff/Petitioner: _Richard   Saddler_

Bar No. _413 Genoa Dr Manchester MO 63021_

Address: _310-428-2110_

Phone No.                        Fax No.

CCADM62   Rev. 03/06      WHITE – File          YELLOW-Special Process Server      PINK - Attorney/Petitioner

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)  Any judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party.

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)  The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)  Appointments may list more than one server as alternates.

(B)  The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)  Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)  No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, or other taking.

(E)  Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" form which may be obtained from the Office of the Circuit Clerk.

(F)  This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.



RECEIVED & FILED
CIRCUIT COURT OF
ST. LOUIS COUNTY

**IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI**

| Judge or Division: | Case Number: 19SL-CC05679 |
|---|---|
| BRIAN H MAY | 2019 DEC 27 A 8: 23 |
| Plaintiff/Petitioner: | Plaintiff's/Petitioner's Attorney/Address: |
| RICHARD SADDLER | RICHARD SADDLER |
| | 413 GENOA DRIVE |
| | BALLWIN, MO 63021 |
| vs. | JOAN M. GILMER |
| Defendant/Respondent: | CIRCUIT CLERK |
| CARVANA, LLC | Court Address: |
| Nature of Suit: | ST LOUIS COUNTY COURT BUILDING |
| CC Contract-Other | 105 SOUTH CENTRAL AVENUE |
| | CLAYTON, MO 63105 |
| | (Date File Stamp) |

### Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: CARVANA, LLC
Alias:

1930 WEST RIO SALADO PKWY
TEMPE, AZ 85281

COURT SEAL OF

ST. LOUIS COUNTY

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

23-DEC-2019
Date                                                    _Joan G. Gilmer_
Further Information:                                      Clerk
CC:

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by: (check one)
   ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

   ☒ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _Lauren Shipley_ (name) _Authorized Agent_ (title).
   ☐ other (describe):
   Served at _221 Bolivar St Jefferson City Mo_ (address)
   in _Cole_ County, _Mo_ (state), on _12-23-19_ (date) at _2:15 pm_ (time).

   _Rufus R. Hairmon_                                      _Signature of Sheriff or Server_
   Printed Name of Sheriff or Server
   Subscribed and Sworn To me before this _24th_ (day) _December_ (month) _2019_ (year)
   I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
                       ☐ the judge of the court of which affiant is an officer.
                       ☒ authorized to administer oaths in the state in which the affiant served the above summons.
                       ☐ authorized to administer oaths. (use for court-appointed server)

| DEBRA J. SEYER | |
| Notary Public - Notary Seal | _Debra J. Seyer_ |
| STATE OF MISSOURI | Signature and Title |
| Cole County | |
| Commission # 15525119 | |
| My Commission Expires: 03/09/2023 | |

RECEIVED & FILED
CIRCUIT COURT OF
ST. LOUIS COUNTY



**IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI**

| | |
|---|---|
| Judge or Division:<br>BRIAN H MAY | Case Number: 19SL-CC05679    2019 DEC 27 A 8: 23 |
| Plaintiff/Petitioner:<br>RICHARD SADDLER | Plaintiff's/Petitioner's Attorney/Address:<br>RICHARD SADDLER<br>413 GENOA DRIVE<br>BALLWIN, MO 63021    JOAN M. GILMER<br>CIRCUIT CLERK |
| vs. | |
| Defendant/Respondent:<br>CARVANA, LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 |
| Nature of Suit:<br>CC Contract-Other | |
| | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  CARVANA, LLC
Alias:

1930 WEST RIO SALADO PKWY
TEMPE, AZ 85281

COURT SEAL OF

ST. LOUIS COUNTY

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

23-DEC-2019
Date
Further Information:
CG

_Joan M. Gilmer_
Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☒ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _Lauren Shipley_ (name) _Authorized Agent_ (title).

☐ other (describe):

Served at _221 Bolivar St  Jefferson City  mo_ (address)
in _Cole_ County, _mo_ (state), on _12/23/19_ (date) at _2:15 pm_ (time).

_Rufus R. Hinson_
Printed Name of Sheriff or Server

_Rufus R. Hinson_
Signature of Sheriff or Server

Subscribed and Sworn To me before this _24th_ (day) _December_ (month) _2019_ (year).

I am: (check one)
☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
☐ authorized to administer oaths. (use for court-appointed server)

_Debra J. Seyer_
Signature and Title

DEBRA J. SEYER
Notary Public - Notary Seal
STATE OF MISSOURI
Cole County
Commission # 16525119
My Commission Expires: 03/08/2023

OSCA (7-04) SM60 For Court Use Only: Document ID# 19-SMOS-1335        1        (19SL-CC05679)        Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo



In the
# CIRCUIT COURT
## Of St. Louis County, Missouri



Plaintiff/Petitioner: *Richard Saddler*

Date: *Dec. 23, 2019*

Case Number: *19SL-CC05679*

vs.

Defendant/Respondent: *Carvana LLC*

Division: *1*


FILED
DEC 23 2019
JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

For File Stamp Only

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now *Richard Saddler*, pursuant

to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

| Name of Process Server | Address | Telephone |
|---|---|---|
| *Rufus R Harmon* | *PO Box 1794, Jefferson City MO 65102* | *573-230-8799* |
| Name of Process Server | Address or in the Alternative | Telephone |
| Name of Process Server | Address or in the Alternative | Telephone |

Natural person(s) of lawful age to serve the summons and petition in this cause on the below named parties. This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVE:
Name: *Carvana LLC (Agent) CSC*
*Agent's Address*
Address: *221 Bolivar St*
City/State/Zip: *Jefferson MO 65101*

SERVE:
Name:
Address:
City/State/Zip:

SERVE:
Name:
Address:
City/State/Zip:

SERVE:
Name:
Address:
City/State/Zip:

Appointed as requested:
**JOAN M. GILMER, Circuit Clerk**

By _____
Deputy Clerk

Date: *12-23-19*

Attorney/Plaintiff/Petitioner: *Richard Saddler*

Bar No. *413 Genoa Dr Manchester MO 63021*
Address: *310-420-2110*
Phone No.                    Fax No.

CCADM62    Rev. 03/06        WHITE – File          YELLOW-Special Process Server    PINK - Attorney/Petitioner

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)  Any judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party.

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)  The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)  Appointments may list more than one server as alternates.

(B)  The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)  Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)  No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, or other taking.

(E)  Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" form which may be obtained from the Office of the Circuit Clerk.

(F)   This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.  .



## IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>BRIAN H MAY | Case Number: 19SL-CC05679 |
| Plaintiff/Petitioner:<br>RICHARD SADDLER<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>RICHARD SADDLER<br>413 GENOA DRIVE<br>BALLWIN, MO 63021 |
| Defendant/Respondent:<br>CARVANA, LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 |
| Nature of Suit:<br>CC Contract-Other | (Date File Stamp) |

### Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  CARVANA, LLC
Alias:
           1930 WEST RIO SALADO PKWY
           TEMPE, AZ 85281

*COURT SEAL OF*

*ST. LOUIS COUNTY*

      You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
      SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

<u>23-DEC-2019</u>
Date
Further Information:
CG

_____
Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by: (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
_____, a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

    ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
                    (name) _____ (title).
    ☐ other (describe) _____
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

Subscribed and Sworn To me before this _____ (day) _____ (month) _____ (year)
I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
                  ☐ the judge of the court of which affiant is an officer.
*(Seal)*            ☐ authorized to administer oaths in the state in which the affiant served the above summons.
                  (use for out-of-state officer)
            ☐ authorized to administer oaths. (use for court-appointed server)

_____
Signature and Title

| Service Fees, if applicable | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Mileage | $_____ | (_____ miles @ $_____ per mile) |
| Total | $_____ | |

See the following page for directions to clerk and to officer making return on service of summons.

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion and/or petition must be served on each Defendant/Respondent. If any Defendant/Respondent refuses to receive the copy of the summons and motion and/or petition when offered to him, the return shall be prepared to show the offer of the officer to deliver the summons and motion and/or petition and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the individual personally or by leaving a copy of the summons and motion and/or petition at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and motion and/or petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion and/or petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. On a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory in the United States. If served in a territory, substitute the word "territory" for the word "state."

The officer making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than sixty days from the date the Defendant/Respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri Court within 30 days after service.

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

## Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

## Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

## Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73



## IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>BRIAN H MAY | Case Number: 19SL-CC05679 |
| Plaintiff/Petitioner:<br>RICHARD SADDLER<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>RICHARD SADDLER<br>413 GENOA DRIVE<br>BALLWIN, MO  63021 |
| Defendant/Respondent:<br>CARVANA, LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE |
| Nature of Suit:<br>CC Contract-Other | CLAYTON, MO 63105                              (Date File Stamp) |

### Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:   CARVANA, LLC
Alias:

1930 WEST RIO SALADO PKWY
TEMPE, AZ 85281

*COURT SEAL OF*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

*ST. LOUIS COUNTY*

<u>23-DEC-2019</u>
Date
Further Information:
CG

_____
Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by: (check one)
   ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

   ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
   ☐ other (describe) _____

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____            _____
Printed Name of Sheriff or Server            Signature of Sheriff or Server

Subscribed and Sworn To me before this _____ (day) _____ (month) _____ (year)
I am: (check one)   ☐ the clerk of the court of which affiant is an officer.
                    ☐ the judge of the court of which affiant is an officer.
*(Seal)*            ☐ authorized to administer oaths in the state in which the affiant served the above summons.
                        (use for out-of-state officer)
                    ☐ authorized to administer oaths.  (use for court-appointed server)

_____
Signature and Title

OSCA (7-04) SM60 *For Court Use Only:* Document ID# 19-SMOS-1335      1      (19SL-CC05679)     Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo

| Service Fees, if applicable | | |
|---|---|---|
| Summons | $ | |
| Non Est | $ | |
| Mileage | $ | ( _____ miles @ $ _____ per mile) |
| Total | $ | |

See the following page for directions to clerk and to officer making return on service of summons.

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion and/or petition must be served on each Defendant/Respondent. If any Defendant/Respondent refuses to receive the copy of the summons and motion and/or petition when offered to him, the return shall be prepared to show the offer of the officer to deliver the summons and motion and/or petition and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the individual personally or by leaving a copy of the summons and motion and/or petition at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and motion and/or petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion and/or petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. On a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory in the United States. If served in a territory, substitute the word "territory" for the word "state."

The officer making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than sixty days from the date the Defendant/Respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri Court within 30 days after service.

THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

(1) **Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

(2) **Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

## IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
## STATE OF MISSOURI

RICHARD SADDLER, an )
Individual )  No.: _19SL - CC05679_
        Plaintiff, )
 )
v. )
 )  Division: ___1___
CARVANA, LLC, an Arizona )
Limited Liability Company )
        Defendant. )

## COMPLAINT

COMES NOW Plaintiff Richard Saddler, appearing *pro se*, and for his cause of action against Defendant Carvana, LLC ("Defendant"), states as follows:

## GENERAL ALLEGATIONS

1.     Plaintiff Richard Saddler is a citizen and resident of the County of St. Louis, State of Missouri.

2.     Defendant Carvana, LLC is a limited liability company organized under the laws of the State of Arizona. Defendant does business under the fictitious name Carvana. Defendant is registered as a foreign limited liability company in the State of Missouri.

3.     At all times herein mentioned, Defendant maintained continuous, significant and ongoing business activities within the State of Missouri which constituted purposeful minimum contacts with Missouri and which subject it to personal jurisdiction.

4.     In particular, Defendant is in the business of buying, selling, financing and delivering used cars to customers throughout the State of Missouri and the United States. As part of its business, Defendant employs full-time and part-time personnel in Missouri, including, but not limited to, customer advocate field personnel, lot attendants, drivers, marketers, and other personnel who all work in concert to achieve the business goals of Defendant. Defendant

1

contracts to buy, sell and finance used vehicles in St. Louis County Missouri. Defendant owns and operates lots to store and service vehicles in Missouri. Defendants sells and delivers vehicles to customers in St. Louis County Missouri. All the aforementioned activities constitute purposeful minimum contacts with the State of Missouri so as to satisfy the requirements of general jurisdiction over Defendant.

5.      Venue is proper in St. Louis County in that Plaintiff is a resident of St. Louis County Missouri.

6.      Desiring to purchase a used vehicle, Plaintiff utilized Defendant's website to search for and locate a suitable vehicle.

7.      After locating a vehicle, Plaintiff applied for financing through Carvana's related party finance company and was approved to finance $26,489.02 which included the price of the vehicle, TAVT tax, license fee, vehicle protection and GAP coverage, at an interest rate of 12.61%.

8.      On or about September 21, 2018, Defendant delivered to Plaintiff at his residence a 2015 GMC Terrain Denali "(Denali)". Plaintiff executed final documents acknowledging and accepting delivery.

9.      Plaintiff executed a retail installment contract, a security agreement, Carvana Care agreement, credit reporting notice, odometer disclosure statement, and a GAP Addendum to retail installment contract.

10.     Neither at the time of sale or delivery of the purchased vehicle nor any time subsequent did Defendant provide Plaintiff title or an assignment of a Certificate of Ownership to the purchased vehicle as required by Missouri law.

2

11.     Approximately forty-five days after his purchase, and prior to the expiration of the temporary registration tags, Plaintiff was required to obtain at his expense and inconvenience the first of what would turn into several emissions inspections with odometer readings. Defendant told Plaintiff he needed to take these actions and email the emissions test results to Defendant ostensibly so as Defendant could provide Plaintiff his vehicle title or an assignment of a Certificate of Ownership and registered license plates. Defendant told Plaintiff they would cover the expense of obtaining his emissions test. Plaintiff has repeatedly requested that the Defendant sign over said title, placing Carvana/ Bridgecrest (Carvana's Finance company) as lienholder. Allowing Plaintiff to obtain his own registration. Defendant has refused to even do that.

12.     Despite providing a passing emissions test result via US Postal Service and email as directed by Defendant, Plaintiff was informed Defendant's third-party processing company was unable to process the title and registration and they were requesting original emission inspection and odometer readings issued by the State of Missouri and not the "copy" provided by mail or email.

13.     Despite making all required payments under the Contract and as a consequence of Plaintiff's ownership registration problems, in April 2018 Plaintiff began receiving emails from Defendant threatening repossession of the vehicle Plaintiff purchased.

14.     As a further consequence of Plaintiff's registration problems, he has been stopped repeatedly by police for driving without properly registered license plates.  Plaintiff feels fearful for his and his family's safety because of potential ramifications from having to confront a hostile police officer due to unregistered license plates.

15.     Beginning approximately September 2018 until approximately April 2019, Plaintiff has made all monthly payments on his purchased vehicle in the amount of $527.00 for a total amount

of approximately $3700 all of which have been paid toward a vehicle plaintiff doesn't legally own.

16.     Plaintiff has additionally suffered loss of time, inconvenience, annoyance, and embarrassment resulting from his vehicle purchase and Defendant's failure to assign Plaintiff a Certificate of Ownership or title pursuant thereto and by Defendant's further and ongoing failure to remedy their omission of failing to assign Plaintiff a Certificate of Ownership.

17.     Defendant's actions, as described herein, were outrageous because of Defendant's conscious disregard of their contractual and statutory  obligations or otherwise reckless indifference to Plaintiff's rights, and the rights of others, such that Plaintiff is entitled to an additional amount as punitive damages in a sum sufficient to punish Defendant and to deter Defendant and others from like conduct.

## COUNT I – BREACH OF CONTRACT

18.     Plaintiff hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

19.     On or around September 21, 2018, Plaintiff entered into a contract ("Contract") with Defendant for the purchase of a used vehicle. *See* Contract marked Exhibit I, attached hereto and incorporated herein by reference. The Contract was executed in St. Louis County Missouri. The Contract names Defendant as "Dealer" for the sale of the subject vehicle.

20.     The Contract and Missouri State law (*R.S.Mo.§ 301.210*) required the Defendant, among other things, to provide Plaintiff with title to the vehicle by assigning him a Certificate of Ownership upon performance by Plaintiff of his contractual obligations.

21.     Plaintiff performed fully in accordance with the Contract paying Defendant each and every payment in the correct amount as it became due until May 2019.

22.     Plaintiff was never provided a Certificate of Ownership by Defendant at time of vehicle delivery as required by Missouri law and which is necessary to register his purchased vehicle.

23.     Defendant's failure to provide Plaintiff documents necessary to register his purchased vehicle constitutes not only a breach of the Contract itself but also a breach of the implied covenant of good faith and fair dealing imposed upon every contract in Missouri.

24.     As a result of the foregoing breaches of Contract, Defendant has caused Plaintiff to suffer financial damages.

25.     Accordingly, Plaintiff is entitled to an award of compensatory damages in an amount to be determined at trial, as well as an award of punitive damages and attorney fees, costs, and pre- and post-judgment interest.

## COUNT II – STATUTORY FRAUD

5

26.     Plaintiff hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

27.     *R.S.Mo. § 301.210 Subd. 4* provides any sale of a motor vehicle without transfer of title is fraudulent.

28.     Defendant sold, or purportedly sold, a vehicle to Plaintiff without transferring title of the vehicle by assignment of a Certificate of Ownership as required by Missouri statute *R.S.Mo. § 301.210 Subd. 4* and, as such, the sale was fraudulent and void as a matter of law.

29.     Defendant was repeatedly put on notice by Plaintiff, in addition to being notified by the Missouri State Attorney General, of the fraudulent nature of the vehicle sale.

30.     Despite being aware of their failure to transfer title by assignment of a Certificate of Ownership and by thereafter refusing to remedy same,  Defendant has caused Plaintiff to suffer financial damages.

31.     Accordingly, Plaintiff is entitled to an award of compensatory damages in an amount to be determined at trial, as well as an award of punitive damages and attorney fees, costs, and pre- and post-judgment interest.

### COUNT III – CIVIL REMEDIES, ATTORNEY'S FEES AND PUNITIVE DAMAGES – VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT ("MMPA") - R.S. Mo. §§ 407.020 and 407.025

32.     Plaintiff hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

33.     As herein alleged Defendant used or employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and/or the concealment, suppression, or omissions of material fact in connection with the sale of the Denali to Plaintiff, to wit:

   a. Defendants misrepresented to Plaintiffs the fact Defendant was prepared to assign a Certificate of Ownership upon Plaintiff's performance under the contract;

6

b. Defendant misrepresented to Plaintiffs the fact Defendant would obtain an ownership interest in the Denali if he performed as required under the contract but despite Plaintiff's performance he has acquired no interests whatsoever in the Denali; and

c. Defendant charged Plaintiff excessive fees for services and products of little or no value.

34. Plaintiff's purchase of the Denali from Defendant was made primarily for personal, family or household purposes.

35. Plaintiff purchased the Denali for personal, family or household purposes and suffered an ascertainable loss of money or property as a result of the use or employment by Defendant of methods, acts or practices declared unlawful by R.S. Mo. § 407.020.

36. Plaintiff has been damaged by Defendant's actions in an amount to be proven at trial for which he claims compensatory damages against Defendant.

37. Defendant's conduct was malicious, fraudulent, oppressive and/or recklessly committed, with wanton disregard of Plaintiff's rights.

38. Plaintiff is entitled to an award of punitive damages in an amount no less than $2,500.00 and reasonable attorney's fees and expenses of this litigation, and interest against Defendant.

39. Plaintiff is entitled to such other and further relief as may be warranted.

**COUNT IV – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

40. Plaintiff hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

41. Defendant represented to Plaintiff they were able to legally sell the Denali to Plaintiff.

7

42. Despite Plaintiff performing as required under the contract, Defendant failed to perform as required by law and as set forth *supra* by delivering the Denali without providing Plaintiff an assignment of a Certificate of Ownership.

43. Defendant is a sophisticated and experienced nationwide and also a licensed Missouri auto dealership with resources enabling it to be fully knowledgeable regarding their responsibility to assign a Certificate of Ownership at the time of delivery in Missouri of any automobile sold. Despite their knowledge of their legal duty to assign ownership at the time of delivery, Defendant shifted their statutory burden to provide an assignment of ownership to Plaintiff by requiring him to obtain his own smog certification prior to Defendant's assigning Plaintiff his Certificate of Ownership.

44. As a result of Defendant's shifting its statutory responsibility to Plaintiff by failing to assign a Certificate of Ownership and thereafter insisting Plaintiff obtain his own smog certification prior to Defendant's assignment, Plaintiff has been denied the benefit of his bargained for exchange as represented by the parties contract because he has no ownership interest in the Denali after more than a year of monthly payments.

45. As a direct result of Defendant's breach of the covenant of good faith and fair dealing, Plaintiff has, or will, sustain damages in an amount to be proven at trial.

**COUNT V – CONSTRUCTIVE FRAUD OR NEGLIGENT MISREPRESENTATION**

46. Plaintiff hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

47. Defendant in the course of their business as a Missouri licensed used auto dealership, for Defendant's pecuniary gain, supplied false information to Plaintiff intended for their specific

8

guidance in their consideration of the purchase of the Denali all as herein alleged, upon which Plaintiff reasonably relied to his detriment in entering into the purchase of the Denali.

48.    In furnishing such false information Defendant failed to exercise reasonable care or competence in obtaining or communicating such information to Plaintiff.

49.    As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff has suffered, and will continue to suffer damages, including pecuniary losses in an amount to be determined at trial.

50.    Plaintiff has been damaged by Defendant's actions for which he claims compensatory damages against Defendant.

## COUNT VI – UNJUST ENRICHMENT

51.    Plaintiff hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

52.    Defendant has been knowingly benefited at Plaintiff's expense by reason of their receipt of monthly payments with interest and fees made toward the purchase price for the Denali.

53.    Allowing Defendants to retain such benefit without assignment to Plaintiff of a Certificate of Ownership and a judgement for his damages would be unjust under the circumstances.

54.    Defendant's conduct was malicious, fraudulent, oppressive and/or recklessly committed with wanton disregard of plaintiff's rights.

55.    Plaintiff has been damaged by Defendant's actions in an amount to be proven at trial (and Plaintiff hereby tenders the return of the Denali) for which he claims compensatory and punitive damages against Defendant.

9

## COUNT VII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

56.     Plaintiff hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

57.     Defendant's actions were the direct and proximate cause of emotional distress suffered by Plaintiff.

57.     Defendant had a duty to avoid engaging in conduct and/or actions and/or omissions that would unnecessarily and unjustifiably cause emotional stress to Plaintiff.

58.     Defendant breached their duty.

59.     Defendant was negligent in causing Plaintiff's emotional distress in that Defendants realized or should have realized with the foresight exercised by a reasonable person that their conduct and/or actions and/or omissions involved an unreasonable risk of causing Plaintiff emotional distress.

60.     Furthermore, as the actions of Defendant are outrageous and evidence a complete indifference and conscious disregard for the rights of others, Plaintiff is entitled to punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

    a.  for the first count for Breach of Contract, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Defendant assign to Plaintiff a Certificate of Ownership or in the alternative rescission of the contract and an award of damages;  OR

    b.  for the second count for Statutory Fraud, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Defendant assign to Plaintiff a Certificate of Ownership or in the alternative rescission of the contract and an award of damages;  OR in lieu of "a" or "b"

10

c.  for the third count for Violation of the MPA, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Defendant assign to Plaintiff a Certificate of Ownership or in the alternative rescission of the contract and an award of damages;  OR in lieu of "a," "b" or "c"

d.  for the fourth count for Breach of the Covenant of Good Faith and Fair Dealing, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Defendant assign to Plaintiff a Certificate of Ownership or in the alternative rescission of the contract and an award of damages;  OR in lieu of "a," "b," "c" or "d"

e.  for the fifth count for Constructive Fraud/Negligent Misrepresentation, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Defendant assign to Plaintiff a Certificate of Ownership or in the alternative rescission of the contract and an award of damages;  OR in lieu of "a," "b," "c," "d" or "e"

f.  for the sixth count for Unjust Enrichment, an award of compensatory damages in an amount to be determined at trial;  AND

g.  for the seventh count for Negligent Infliction of Emotional Distress, an award of compensatory damages and punitive damages in an amount to be determined at trial;  AND

h.  an award of costs, attorney's fees, and pre- and post-judgment interest;  AND

i.  all other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully submitted,

Richard Saddler
Plaintiff, *Pro Se*
413 Genoa Drive
Manchester, MO 63021
Cell: 310-428-2110

Subscribed and sworn to before me this 23rd day of December 2019

Notary Public or Clerk

KARRIE KENNEY
My Commission Expires
March 4, 2023
St. Louis County
Commission #19866617

NOTARY PUBLIC
NOTARY
SEAL
STATE OF MISSOURI

11

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY

STATE OF MISSOURI

| | | |
|---|---|---|
| **RICHARD SADDLER** | ) | |
| **PLANTIFF,** | ) | Cause No. |
| **VS** | ) | |
| | ) | |
| **CARVANA, LLC** | ) | Division:  $34$ |
| **DEFENDANT,** | ) | |

**Notice of hearing** $Jan\ 27,\ 2019\quad Div.\ 34$

Comes now Richard Saddler, and his requested for hearing to be on the record for the
following motions Plaintiffs TRO.

*Rule 92.02.a(3) Required Notice. Except as provided in Rule 92.02(b), no
temporary restraining order shall issue without reasonable notice at least twenty-
four hours before the hearing on the motion to the party against whom relief is
sought.*

Appearance is required by Defendant

Richard Saddler

413 Genoa Dr.

Manchester, MO 63021

Phone: 310-428-2110

Richard Saddler

Certificate of Service

On this 23rd day of December 2019 this motion was delivered by FedEx to Defendant at:
1930 West Rio Salado Parkway,
Tempe,
AZ 85281
and also emailed to Defendant at registration@carvana.com per the rule 92

Richard Saddler

## IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
## STATE OF MISSOURI

| | | |
|---|---|---|
| RICHARD SADDLER, an | ) | |
| Individual | ) | Cause No. *19SL-QCC05679* |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CARVANA, LLC, an Arizona | ) | Division: *34* |
| Limited Liability Company | ) | |
| **Defendant.** | ) | |

### <u>TEMPORARY RESTRAINING ORDER</u>

This matter comes before the Court on the motion for Temporary Restraining Order (TRO) of Plaintiff Saddler against Defendant Carvana, LLC and any and all affiliates. Based upon the argument of Plaintiff and the evidence adduced, the Court is of the opinion that such injunction should be granted.

Plaintiff Saddler is suffering and will continue to suffer irreparable harm from defendant's conduct if TRO isn't granted. The Court also finds that Plaintiff has made every reasonable attempt to provide the notice required by Rule 92.02

It is therefore ORDERED, ADJUDGED and DECREED that Defendant, and all others in active concert with Carvana, are hereby compelled to directly or indirectly:

1) Reframe from harass or actively taking any property belonging to Mr. Saddler, including but not limited to the 2015 GMC Terrain Denali the defendant sold to Saddler.

IT IS FURTHER ORDERED that any violation of this Order will subject Defendant to Sanctions and or contempt.

IT IS FURTHER ORDERED that bond is set at $500.00

IT IS FURTHER ORDERED that this Order shall expire in fifteen (15) days of its entry, unless further extended by the Court.

IT IS FURTHER ORDERED that the Court shall hold a hearing on Plaintiffs' motion/petition on *Dec 27*, 20*19* at *9AM* Division_____ .

By:_____

# IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
## STATE OF MISSOURI

RICHARD SADDLER      )

                  )    Cause No. 19SL-CC05679

          Plaintiff,     )

                  )

v.                    )

                  )

CARVANA, LLC, an Arizona   )    Division: 34

Limited Liability Company   )

         Defendant.     )

## MOTION FOR TEMPORARY RESTRAINING ORDER

Comes now, Plaintiff Richard Saddler against Defendant Carvana, LLC (Carvana) and or any of its affiliates alleges and avers as follows:

Plaintiff Richard Saddler ("Saddler") moves this Court, pursuant to Rule 92.02 of the Missouri Supreme Court Rules, for an Order temporarily enjoining Defendant Carvana, LLC and or its affiliates ("Defendant") from harassing Plaintiff in relation, or otherwise attempting, to repossess the 2015 GMC Terrain Denali purchased by Plaintiff from Defendant. This motion is predicated upon Defendant's email sent to Plaintiff threatening repossession and their multiple "ambush-style" appearances at Plaintiff's Residence, employing intimidation in an attempt to repossess Plaintiff's car all based upon Defendant's failure to follow Missouri law governing Automobile Dealers. Carvana has had nearly sixteen months to deliver Plaintiff an assignment of Certificate of Title. Defendant has refused to assign title to Plaintiff so he may register and license the vehicle he purchased.

Specifically, Plaintiff moves this Court for a temporary restraining order compelling Defendant Carvana, LLC or any of its affiliates:

    a) Refrain from taking or otherwise repossessing Plaintiff's 2015 GMC Terrain Denali without courts permission.

In support of its Motion, Plaintiff relies upon and incorporates by reference herein the allegations and arguments set forth in (a) Plaintiff's Verified Petition and (b) the Memorandum in Support of Plaintiff's Motion for a Temporary Restraining Order.

WHEREFORE, for the reasons set forth in this Motion, the related Memorandum in Support, and Verified Petition, Plaintiff respectfully requests this Court grant its Motion for a Temporary Restraining Order and enter Plaintiff's Proposed Order, which is attached hereto as Exhibit A.

Richard Saddler

## CERTIFICATE OF SERVICE

On this 23rd day of December, 2019, a copy of the attached Motion were FedEx to Defendant and hand deliver to the Clerk of Court, to the following addresses respectfully:

Carvana, LLC
1930 W Rio Salado Parkway
Tempe, AZ 85281

and

St. Louis County Clerk of Court
105 South Central Avenue
Clayton, MO 63105

Richard Saddler

**IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **RICHARD SADDLER, an** | ) | |
| **Individual** | ) | Cause No. *19SL-CC05679* |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CARVANA, LLC, an Arizona** | ) | Division: *34* |
| **Limited Liability Company** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR TEMPORARY RESTRAINING ORDER

1. Plaintiff Richard Saddler ("Saddler") used Carvana's website to search and find a vehicle. Defendant Carvana, LLC ("Carvana") is a Licensed Automobile Dealer that sells used cars nationwide. Saddler has repeatedly requested from Defendant an assignment of a Certificate of Title for the 2015 GMC Terrain Denali ("Denali ") purchased on September 21, 2018. Defendant's failure to assign Saddler a Certificate of Title at the time of delivery of the Denali was a violation of *RSMO § 301.210.*

### BACKGROUND

A detailed account of the facts and allegations supporting both claims against Defendant and the requested Temporary Restraining Order are fully set forth in Saddler's Verified Petition and Other Relief ("Verified Petition"), and are incorporated herein by reference.

Temporary Restraining Orders ("TRO's") are authorized by Rule 92.02(b) of the Missouri Rules of Civil Procedure. The standards for granting TRO's are similar to the standards for granting preliminary injunctions. The Court should consider:

### THE RULE OF LAW

**92.02. Temporary Restraining Order - Notice - Preliminary Injunction - Bond - Form and Scope**

**(a) Temporary Restraining Order - With Notice.**



(1) *When Issued.* The court shall not grant a temporary restraining order unless the party seeking relief demonstrates that immediate and irreparable injury, loss, or damage will result in the absence of relief.

(2) *Proof Required.* A party seeking a temporary restraining order shall support that request with a verified petition or affidavit reciting the specific facts that support the showing required by Rule 92.02(a)(1).

(3) *Required Notice.* Except as provided in Rule 92.02(b), no temporary restraining order shall issue without reasonable notice at least twenty-four hours before the hearing on the motion to the party against whom relief is sought.

(4) *Form.* A temporary restraining order shall be endorsed with the date and hour of issuance, shall be filed forthwith in the clerk's office and entered of record, and shall set forth specific facts that support the showing required by Rule 92.02(a)(1).

(5) *Duration.* A temporary restraining order shall expire within such time after entry, not to exceed fifteen days, as the court fixes. The court may extend the order for additional periods, not to exceed fifteen days each, if the party seeking relief shows that the grounds specified in Rule 92.02(a)(1) continue to exist.

**(b) Temporary Restraining Order - Without Notice.**

(1) *When Issued.* A party seeking a temporary restraining order without notice shall make the showing required under Rule 92.02(a). The court shall not grant a temporary restraining order without prior notice to the party against whom relief is sought unless the party seeking relief establishes that notice cannot be given or notice would defeat the purpose of the order.

(2) *Proof Required.* A party seeking a temporary restraining order without notice shall file a verified petition or affidavit reciting the specific facts that support the showing required by Rule 92.02(b)(1).

(3) *Form.* A temporary restraining order granted without notice shall be endorsed with the date and hour of issuance, shall be filed forthwith in the clerk's office and entered of record, and shall set forth specific facts that support the showing required by Rule 92.02(b)(1). A temporary restraining order failing to set forth such specific facts is void ab initio

(4) *Duration.* A temporary restraining order granted without notice shall expire within such time after entry, not to exceed ten days, as the court fixes. The court may extend the order for additional periods, not to exceed ten days each, after notice to the party against whom relief is sought. The court may dispense with such notice only if the party seeking relief establishes that notice cannot be given to the party against whom relief is sought or notice would defeat the purpose of the order.

(5) *When Set Aside.* On one day's notice to the party who obtained the temporary restraining order without notice, or on such shorter notice as the court may prescribe, the adverse party may

appear and move to dissolve or modify the order. At the hearing, the burden shall be upon the party seeking the temporary restraining order to establish a right to relief.

*(6 Sanction for Failure to Provide Required Notice.* If the court finds that a party obtaining a temporary restraining order without notice did not have a reasonable basis to proceed without notice, the party shall be presumed to have acted in bad faith and to have violated Rule 55.03(c). The thirty-day provisions of Rule 55.03(d) (1) (A) shall not apply to proceedings under this Rule 92.02(0)6).

(c) Bond. No injunction or temporary restraining order, unless on final hearing or judgment, shall issue in any case, except in suits instituted by the state in its own behalf, until the plaintiff, or some responsible person for the plaintiff, shall have executed a bond with sufficient surety or sureties to the other party, in such sum as the court shall deem sufficient to secure the amount or other matter to be enjoined, and all damages that may be occasioned by such injunction or temporary restraining order to the parties enjoined, or to any party interested in the subject matter of the controversy, conditioned that the plaintiff will abide by the decision that shall be made thereon and pay all sums of money, damages and costs that shall be adjudged if the injunction or temporary restraining order shall be dissolved. In lieu of the bond the plaintiff may deposit with the court such sum, in cash, as the court may require sufficient to secure such amount.

## ARGUMENT

### A. Saddler Is Suffering And Will Continue To Suffer Irreparable Harm From Defendant's Conduct

Defendant's conduct has caused and continues to cause severe and irreparable injury to Saddler and his family. On or about April 24, 2019, at approximately 8:33 am, Saddler received a threatening email that clearly referenced the current Registration issue with Carvana. See attached exhibit A. The email states in part, that if Saddler didn't contact Carvana by 4/29/19 he would have to return the car, or they would come take it. At the time of that threating email the loan was in good standing or currant with all payments on time. In addition, Carvana on three separate occasion visited my home and harassed and threatened to take my vehicle. Finally, Carvana now refuses to accept payments from me so they may ostensibly claim that I'm in contractual default. Saddler and the Missouri Attorney General have had several communications with Carvana wherein Saddler has brought to light the fraudulent business practices of Carvana and their violations of Missouri law. Carvana has attempted to intimidate Saddler with their emails, phone calls, and visits to his residence all with the purpose of repossessing the Denali, which repossession is predicated upon Defendant's sale to Plaintiff a car in violation of Missouri law.

### B. Saddler Is Likely To Succeed On The Merits Of Its Claim

*RSMO § 301.210* declares that the sale of a motor vehicle without transfer of title is fraudulent. Defendant Carvana sold, or purported to sell, the vehicle to Mr. Saddler and did not transfer the title; therefore, the transaction constituted fraud as a matter of law. Due to the Defendant's

sophistication in clear knowledge of the laws in the State of Missouri, the Defendant should not have asked Mr. Saddler to obtain the emissions inspection and odometer reading.  Mr. Saddler was unaware of the rules and laws that surround buying and selling a car in the State of Missouri.

Despite having long been on notice of this fraud, including via mail, phone calls and emails from Mr. Saddler and the Attorney General of Missouri, Defendant is now resorting to Gangster like tactics of threats and intimidation.

## CONCLUSION

For the reasons set forth above, Plaintiff Saddler respectfully requests this Court issue a temporary restraining order compelling Defendant to:  refrain from taking Plaintiffs GMC Terrain until this court deems necessary.

Respectfully submitted




Richard Saddler

## CERTIFICATE OF SERVICE

On this 23rd day of December, 2019, a copy of the attached Motion were FedEx to Defendant and hand deliver to the Clerk of Court, to the following addresses respectfully:

Carvana, LLC
1930 W Rio Salado Parkway
Tempe, AZ 85281

and

St. Louis County Clerk of Court
105 South Central Avenue
Clayton, MO 63105

_____
Richard Saddler

*Exhibit A page 1 of 2*

## Final Notice: ^_Carvana^_ Title & Registration

From:  Registration (registration@carvana.com)

To:      ricksaddler@yahoo.com

Date:  Wednesday, April 24, 2019, 8:33 AM CDT

April 24, 2019

Richard Saddler
413 Genoa Dr
Manchester, Missouri 63021

RE: Title and Registration

Dear Juan Jazmin,

We have attempted several times to contact you by phone, text and email regarding the title and registration of the vehicle you purchased from Carvana. Additional items are required to process your registration and it's important that we hear from you within 5 days of the date on this letter. If we have not received the items requested or contact from you by the below-mentioned expiration date, you will have to return the vehicle or we may have to retake it.

**Expiration: 4/29/2019**

We believe we can work together to resolve any issue(s) you may be having. Please contact our Post Sale Operations team at 844-507-3599 at your earliest convenience.

Sincerely,
Carvana Title and Registration
registration@carvana.com

*Exhibit A Page 2 of 2*

## Re: Final Notice: ^_Carvana^_ Title & Registration

From:  ricksaddler@yahoo.com (ricksaddler@yahoo.com)

To:     registration@carvana.com; ricksaddler@yahoo.com

Cc:     nicholas.backes@ago.mo.gov

Date:  Wednesday, April 24, 2019, 8:57 AM CDT

I just tried to call you again, as I've try to do the same this past Monday.  I have over a 140 people in front of me as I have to wait on the line to communicate with you. Schedule a time setup a call if you truly want to take care of this before the April 29th.

On Wed, Apr 24, 2019 at 8:51 AM, ricksaddler@yahoo.com
<ricksaddler@yahoo.com> wrote:

> I want to make this unequivocally clear to Carvana and affiliate or anyone associated with. I have notified the local police department to let them know of what's going on with regards to the registration. And to threaten to come to my house and anywhere and now take the property in which I'm currently making monthly payments for because you could not follow the the Missouri rules is not going to be accepted. If I don't have my proper registration by the same date of the 29th of April I will file an action in court forcing you to do so. At this time I ask that Carvana and any and all Affiliates that have dealt with me through this process from acquisition to present preserve all recordings and all documents with regards to this account. I will follow this email up with a phone call right now. Thank you and I hope you would change your business practice and get this taken care of. I have cc'd the Attorney General in this message.

**In the**

# CIRCUIT COURT

of St. Louis County, Missouri

_Richard Saddler_ _____
Plaintiff(s)

vs.

_Carvana, LLC_ _____
Defendant(s)

Date: _12/27/19_

Case Number: _18SL-CC05679_

Division: _1_

**FILED**

DEC 2 7 2019

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

For File Stamp Only

## Order

Plaintiff's Motion for T.R.O. called and heard. Both sides appeared. Motion denied.

**SO ORDERED**

_Richard Sson_ _____
Attorney   Pro Se          Bar No.
_413 Cannon   Dr  Manure 630_
Address
_310 - 428 - 2110_
Phone No.                    Fax No.

_Ralph Kerz_      _41305_
Attorney                    Bar No.
_1010 Market Street 850_
Address
_St. Louis, MO  63101_
Phone No.                    Fax No.

_____   MN39
Judge

ENTERED: _12/27/2019_
              (Date)

CCOPR47-WS  Rev. 02/14

Electronically Filed - St Louis County - January 07, 2020 - 05:26 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

RICHARD SADDLER,

      Plaintiff,

v.

CARVANA, LLC,

      Defendant.

Cause No. 19SL-CC05679

Division No. 1

**ENTRY OF APPEARANCE**

    Allison E. Lee hereby enters her appearance on behalf of Carvana, LLC in this action.

           Respectfully submitted,

           /s/ Allison E. Lee

           William A. Brasher, #30155
           Allison E. Lee, #61626
           **BOYLE BRASHER LLC**
           1010 Market Street, Suite 950
           St. Louis, Missouri 63101
           P:  (314) 621-7700
           F:  (314) 621-1088
           wbrasher@boylebrasher.com
           alee@boylebrasher.com

           Christopher W. Cardwell, #49583
           M. Thomas McFarland, #033432TN
           (*pro hac vice* application forthcoming)
           **GULLETT SANFORD ROBINSON**
           **& MARTIN, PLLC**
           150 Third Avenue South, Suite 1700
           Nashville, TN 37201
           P:  (615) 244-4994
           F:  (615) 256-6339
           ccardwell@gsrm.com
           tmcfarland@gsrm.com

           ***Attorneys for Defendant***

Electronically Filed - St Louis County - January 07, 2020 - 05:26 PM

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of January 2020, the foregoing was filed electronically with the Clerk of Court using the Missouri e-filing system and that a copy of the same has been served via the United States Postal Service, First-Class Mail, postage prepaid to:

Richard Saddler
413 Genoa Drive
Manchester, MO 63021
richardsaddler@yahoo.com
***Pro Se Plaintiff***

/s/ Allison E. Lee

41C7682

2

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI**

RICHARD SADDLER,

     Plaintiff,

v.

CARVANA, LLC,

     Defendant.

Cause No. 19SL-CC05679

Division No. 1

**ENTRY OF APPEARANCE**

William A. Brasher hereby enters his appearance on behalf of Carvana, LLC in this action.

Respectfully submitted,

/s/ William A. Brasher
William A. Brasher, #30155
Allison E. Lee, #61626
**BOYLE BRASHER LLC**
1010 Market Street, Suite 950
St. Louis, Missouri 63101
P:  (314) 621-7700
F:  (314) 621-1088
wbrasher@boylebrasher.com
alee@boylebrasher.com

Christopher W. Cardwell, #49583
M. Thomas McFarland, #033432TN
(*pro hac vice* application forthcoming)
**GULLETT SANFORD ROBINSON
& MARTIN, PLLC**
150 Third Avenue South, Suite 1700
Nashville, TN 37201
P:  (615) 244-4994
F:  (615) 256-6339
ccardwell@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Defendant*

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the <u>7th</u> day of <u>January</u> 2020, the foregoing was filed electronically with the Clerk of Court using the Missouri e-filing system and that a copy of the same has been served via the United States Postal Service, First-Class Mail, postage prepaid to:

Richard Saddler
413 Genoa Drive
Manchester, MO 63021
richardsaddler@yahoo.com
***Pro Se Plaintiff***

/s/ William A. Brasher
_____

41C7684

2

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI**

RICHARD SADDLER,

      Plaintiff,                           Cause No. 19SL-CC05679

v.                                      Division No. 1

CARVANA, LLC,

      Defendant.

## DEFENDANT CARVANA, LLC'S MOTION TO COMPEL ARBITRATION AND DISMISS ACTION, OR IN THE ALTERNATIVE, TO STAY

By and through undersigned counsel, Defendant, Carvana, LLC ("Carvana"), respectfully moves this Court to compel arbitration of this matter pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*  In support of this motion, Carvana states that the Court should compel this lawsuit to arbitration as Plaintiff and Carvana entered into an Arbitration Agreement in which the parties unambiguously agreed to arbitrate any disputes between them.  In further support of this motion, Carvana relies on a contemporaneously filed memorandum of law.

WHEREFORE, Carvana respectfully requests that this Court:

1.      grant this motion:

2.      compel this case to arbitration;

3.      dismiss the Petition, or stay this litigation pending arbitration;

4.      award Carvana the fees and costs, including reasonable attorneys' fees, incurred in dismissing the Petition; and

5.      grant any other relief it deems just and proper.

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

Respectfully submitted,

/s/ William A. Brasher
_____

William A. Brasher, #30155
Allison E. Lee, #61626
**BOYLE BRASHER LLC**
1010 Market Street, Suite 950
St. Louis, Missouri 63101
P:  (314) 621-7700
F:  (314) 621-1088
wbrasher@boylebrasher.com
alee@boylebrasher.com

Christopher W. Cardwell, #49583
M. Thomas McFarland, #033432TN
(*pro hac vice* application forthcoming)
**GULLETT SANFORD ROBINSON
& MARTIN, PLLC**
150 Third Avenue South, Suite 1700
Nashville, TN 37201
P:  (615) 244-4994
F:  (615) 256-6339
ccardwell@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Defendant*

41C7655

2

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of January 2020, the foregoing was filed electronically with the Clerk of Court using the Missouri e-filing system and that a copy of the same has been served via the United States Postal Service, First-Class Mail, postage prepaid to:

Richard Saddler
413 Genoa Drive
Manchester, MO 63021
richardsaddler@yahoo.com
***Pro Se Plaintiff***

/s/ William A. Brasher

41C7655

3

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
## STATE OF MISSOURI

RICHARD SADDLER,

       Plaintiff,

v.

CARVANA, LLC,

       Defendant.

Cause No. 19SL-CC05679

Division No. 1

## DEFENDANT, CARVANA, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

By and through undersigned counsel, Defendant, Carvana, LLC ("Carvana"), files this Memorandum of Law in Support of its Motion to Compel Arbitration, and states:

### I.      INTRODUCTION

Plaintiff's Petition asserts causes of action for breach of contract, fraud, violation of the Missouri Merchandising Practices Act (the "MMPA"), breach of the covenant of good faith and fair dealing, unjust enrichment, and negligent infliction of emotional distress all related to the sale and delivery of a 2015 GMC Terrain sport utility vehicle, VIN 2GKFLZE35F6281225 (the "Vehicle").[1]  The Counts generally allege that Carvana damaged Plaintiff by selling and delivering the Vehicle without contemporaneously delivering title in violation of Missouri law.  Despite the fact that the statutory provisions Plaintiff relies upon are not applicable to this dispute because the Vehicle was never registered under the laws of the State of Missouri, this Court should compel

---

[1] Plaintiff initially filed an action arising out of this same transaction this action on May 13, 2019, in the matter styled *Saddler v. Carvana, LLC*, St. Louis County Circuit Court Case No. 19SL-CC01864 asserting only causes of action for fraud and violation of the MMPA (the "First Action").  Carvana removed  the First Action to the United States District Court for the Eastern District of Missouri on June 6, 2019, pursuant to diversity jurisdiction 28 U.S.C. §§ 1332, 1441, 1446.  Carvana based its removal decision on Plaintiff's June 2, 2019, punitive damages demand in the amount of $500,000. Plaintiff later conceded in open court on June 18, 2019, that he "made up" this demand and he is not entitled to any damages in excess of $75,000. The Eastern District of Missouri subsequently remanded the First Action back to this Court.  On August 5, 2019, Plaintiff voluntarily dismissed the First Action.

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

this lawsuit to arbitration as Plaintiff and Carvana entered into an Arbitration Agreement that covers the subject matter of this dispute.  Carvana attaches a copy of the Arbitration Agreement as **Exhibit A**.

## II.     THE COURT SHOULD COMPEL PLAINTIFF'S CASE TO ARBITRATION

This dispute is properly resolved through private arbitration.  The parties entered into an Arbitration Agreement on September 21, 2018, and the entirety of this dispute falls within its substantive scope.  Accordingly, the Court should compel this case to arbitration.

### A.  Standard For Compelling Arbitration.

"The issue of whether arbitration should be compelled is a question of law subject to *de novo* review."  *State ex rel. Van Alst v. Harrell*, 528 S.W.3d 442, 445 (Mo. App. 2017) (quoting *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. banc 2014)).  The Federal Arbitration Act ("FAA") "governs the applicability and enforceability of arbitration agreements in all contracts involving interstate commerce."  *Id.* at 446 (quoting *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 431 (Mo. banc 2015) (noting that a contract between residents of the state of Missouri on the one hand and an out-of-state corporation registered to do business in Missouri "involves interstate commerce and is subject to the FAA").[2]  Motions to compel arbitration require the court to consider: "(1) whether a valid arbitration agreement exists; (2) whether the dispute falls within the scope of the agreement; and (3) whether applicable contract principles subject to the agreement to revocation."  *Id.*

---

[2] Plaintiff is a resident of the State of Missouri and Carvana is an Arizona limited liability company registered to do business in the State of Missouri. The FAA "establishes a liberal federal policy favoring arbitration."  *Leonard v. Del. North Cos. Sport Serv.*, No. 4:15-cv-1356-CDP, 2016 U.S. Dist. LEXIS 89295, at *4 (E.D. Mo. Jul. 11, 2016) (quoting *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015)).

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

**B.  The Arbitration Agreement Is Valid.**

The Arbitration Agreement is a valid agreement to arbitrate under Missouri law.  Whether an agreement is valid under the FAA is "tested through a lens of ordinary state-law principles that govern contracts."  *Eaton*, 461 S.W.3d at 432.  As such:

> Missouri contract law applies to determine whether the parties have entered a valid agreement to arbitrate.  The essential elements of any contract, including one for arbitration, are offer, acceptance, and bargained for consideration.  Consideration consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party.

*Van Alst*, 528 S.W.3d at 446 (quoting *Baker*, 450 S.W.3d at 775).

Plaintiff's Petition establishes that the Arbitration Agreement is valid and enforceable.  Indeed, the verified Petition concedes that at the time he received the Vehicle, "executed final documents acknowledging and accepting delivery."  (Pl.'s Ver. Pet., ¶¶ 8-9).  The Arbitration Agreement was one of those "final documents."[3]  Accordingly, there can be no dispute that the Arbitration Agreement satisfies the elements of offer and acceptance under Missouri law.

Further, valid consideration exists to support the Arbitration Agreement in the form of each party's mutual promise to arbitrate.  "It is an elemental principle of contract law that a contract that contains mutual promises imposing some legal duty or liability on each promisor is supported by sufficient consideration to form a valid, enforceable contract."  *Clemmons v. Kan. City Chiefs Football Club, Inc.*, 397 S.W.3d 503, 506 (Mo. App. 2013) (quoting *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 438 (Mo. App. 2010)).  "Therefore, if a contract contains mutual promises imposing a legal duty or liability 'on each party as a promisor to the other party as a

---

[3] In what appears to be an attempt to avoid arbitration in this action, Plaintiff's Petition removes reference to the Arbitration Agreement.  However, Plaintiff conceded in his verified Petition in the First Action that the Arbitration Agreement was one of the "final documents" he executed at the time of accepting delivery of the Vehicle. (*See* Ver. Pet., attached as **Exhibit B**, ¶ 9). Plaintiff cannot avoid the Arbitration Agreement by simply ignoring it in his Petition.

41C7667                                    3

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

promise, the contract is a bilateral contract supported by sufficient consideration.'" *Id.* (quoting *Frye*, 321 S.W.3d at 438). Here, the parties' promises to arbitrate their disputes were mutual, as the Arbitration Agreement states:

> We both agree that if we have a dispute, either of us can decide to resolve it by using arbitration. Arbitration is a formal process for resolving disputes without going to court. . . By choosing arbitration, we are both giving up our right to go to court (except small claims court) to resolve our dispute. In arbitration a neutral person, called an arbitrator, listens to both of us and decides how our dispute is resolved. Arbitrator decisions are enforceable, just like a court order. Unlike court orders, these decisions are subject to very limited review by a court. Once a decision is made it is final, except in very limited circumstances. In arbitration, we both give up our right to a judge or jury, and, as a result, there is no jury trial. . . C.

(Ex. A, p. 1). This language clearly and unequivocally imposes mutual promises upon both Plaintiff and Carvana, and is, therefore, a bilateral contract supported by adequate consideration. Put simply, Plaintiff acknowledged and agreed under oath that he entered into the Arbitration Agreement, and there is no allegation even referencing, much less questioning, its validity. Therefore, the Arbitration Agreement is valid, and the first prong of the requisite test is satisfied.

### D.  <u>This Dispute Falls Within The Scope Of The Arbitration Agreement</u>.

The scope of the Arbitration Agreement encompasses Plaintiff's claims, particularly in light of the strong presumption in favor of arbitrability. *Kan. City Urology, P.A. v. United Heathcare Servs.*, 261 S.W.3d 7, 12 (Mo. Ct. App. 2008) ("Under federal law, arbitrability of a claim does not turn on whether or not the claim can be maintained without referring to the underlying contract but on whether or not the arbitration clause's scope is broad. A broad scope creates a strong presumption in favor of arbitrability, and the circuit court should order arbitration of any dispute that "touches" matters covered by the parties' contract.") (internal citations omitted). *Leonard*, 2016 U.S. Dist. LEXIS 89295, at *16 ("The [FAA] establishes that, as a matter

of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.")[4]  "Where an arbitration clause is broad and contains no express provision excluding a particular grievance from arbitration, only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  *State ex rel. Reg'l Convention & Sports Complex Auth. v. Burton*, 533 S.W.3d 223, 226 (Mo. 2017) (citing *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 427 (Mo. banc 2003)).

Indeed, the Arbitration Agreement's scope is all-encompassing as it subjects all "Claims" to arbitration, which are defined as:

> [A]ny claim, dispute our [sic] controversy between you and us arising from or related to one or more of the following: (a) The Contract; (b) The vehicle or the sale of the vehicle; (c) The provision or sale of any goods and services like warranties, insurance and extended service contracts covered by the Contract or related to the vehicle; (d) The relationships resulting from the Contract; (e) Advertisements, promotions or oral or written statements related to the Contract; (f) The financing terms; (g) Your credit applications; (h) The origination and servicing of the Contract; (i) The collection of amounts you owe us; (j) Any repossession, or replevin, of the vehicle; (k) Your personal information; (l) The rescission or termination of the Contract.  "Claim" has the broadest reasonable meaning.  It includes claims of very kind of nature.  This includes initial claims, counterclaims, cross-claims, third-party claims, statutory claims, contract claims, negligence and tort claims (including claims of fraud and other intentional torts).

(Ex. A., p. 2).[5]  A cursory review of Plaintiff's Petition reveals that all of his claims fall well within the scope of the broad, all-encompassing provisions of the Arbitration Agreement.  *See Leonard v. Del. North Cos. Sport Serv.*, No. 4:15-cv-1356-CDP, 2016 U.S. Dist. LEXIS 89295, at **16-17

---

[4] Under the FAA, opinions of the U.S. Supreme Court are binding upon Missouri state courts, which also consider lower federal court decisions "for their aid and guidance."  *Kan. City Urology*, 261 S.W.3d at 11 (citing *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 171 (Mo.  App. 2006)).

[5] The Arbitration Agreement defines "Contract" as the Retail Installment Contract and Security Agreement (the "RIC") that Plaintiff agreed to and executed in order to purchase the Vehicle.  Carvana attaches a copy of the RIC as **Exhibit C**.

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

(citing *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836-37 (8th Cir. 2010) (finding arbitration clause covering "all disputes arising under" the agreement was "generally broad" in scope and holding that arbitration may be compelled "as long as the underlying factual allegations simply touch matters covered by the arbitration provision").  Indeed, as recognized by the Missouri Court of Appeals in *Kansas City Urology*, arbitration provisions such as those in the Arbitration Agreement are "the paradigm of a broad clause."  261 S.W.3d at 12 (citing *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995)).  In sum, it is clear that all of Plaintiff's claims constitute "Claims" for purposes of the Arbitration Agreement, and therefore this dispute falls within its scope and must be arbitrated.

### E.  No Contract Principles Subject the Arbitration Agreement to Revocation.

The third prong of Missouri's test for arbitrability of the Arbitration Agreement may be dealt summarily as no principles – contract or otherwise – would subject the Arbitration Agreement to revocation.[6]

### F.  The Court Should Dismiss Plaintiff's Petition.

This Court should dismiss Plaintiff's Petition pending arbitration.  In *Reg'l Convention*, the Missouri Supreme Court upheld the trial court's dismissal of the petitioner's petition after compelling the matter to arbitration pursuant to the parties' agreement to arbitrate.  533 S.W.3d at 225, 227.  As in *Reg'l Convention*, Plaintiff's and Saddler's intent to arbitrate their disputes – including those at issue here – is "clear" and dismissal is appropriate.  *Id.*  As such, the Petition fails to state a claim upon which relief may be granted and should be dismissed.[7]

---

[6] In fact, Plaintiff was given the option to "opt out" and reject the Arbitration Agreement within thirty (30) days of executing same.  He declined to do so. (Ex. A., p. 1).

[7] Carvana recognizes competing authority stating a stay is appropriate.  *See Dotson v. Dillard's, Inc.*, 472 S.W.3d 599, 608 n.6 (Mo. App. 2015) (citing *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 804 n.2 (Mo. banc 2015)). However,

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

### III.   <u>CONCLUSION</u>

In conclusion and for the reasons stated above, the Court should compel this case to arbitration and dismiss this action.

Respectfully submitted,

/s/ William A. Brasher

William A. Brasher, #30155
Allison E. Lee, #61626
**BOYLE BRASHER LLC**
1010 Market Street, Suite 950
St. Louis, Missouri 63101
P:  (314) 621-7700
F:  (314) 621-1088
wbrasher@boylebrasher.com
alee@boylebrasher.com

Christopher W. Cardwell, #49583
M. Thomas McFarland, #033432TN
(*pro hac vice* application forthcoming)
**GULLETT SANFORD ROBINSON
& MARTIN, PLLC**
150 Third Avenue South, Suite 1700
Nashville, TN 37201
P:  (615) 244-4994
F:  (615) 256-6339
ccardwell@gsrm.com
tmcfarland@gsrm.com

***Attorneys for Defendant***

---

the facts of this matter are analogous to *Reg'l Convention*, which controls.  Should this Court disagree, this matter should be stayed.

41C7667

7

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

**<u>CERTIFICATE OF SERVICE</u>**

     I hereby certify that on the <u>7th</u> day of <u>January</u> 2020, the foregoing was filed electronically with the Clerk of Court using the Missouri e-filing system and that a copy of the same has been served via the United States Postal Service, First-Class Mail, postage prepaid to:

Richard Saddler
413 Genoa Drive
Manchester, MO 63021
richardsaddler@yahoo.com
***Pro Se Plaintiff***

                                         /s/ William A. Brasher

41C7667

8

DocuSign Envelope ID: 12B2F825-9E39-44EC-A792-753077B24742

THIS IS A COPY
This is a copy page of the Authoritative Copy held
by the designated custodian

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

# ARBITRATION AGREEMENT

## NOTICE OF ARBITRATION AGREEMENT

We both agree that if we have a dispute, either of us can decide to resolve it by using arbitration. Arbitration is a formal process for resolving disputes without going to court. If you want to learn more about arbitration, please navigate to the following links in your browser:

- http://info.adr.org/consumer-arbitration/
- https://www.jamsadr.com/adr-arbitration

If you wish, **you can decide to opt out and reject this arbitration agreement**, but to reject this arbitration agreement you will need to follow the instructions under the heading "Your Right to Reject this Agreement". You will need to act in the next 30 days or you lose your right to reject this arbitration agreement. It is your choice.

By choosing arbitration, we are both giving up our right to go to court (except small claims court) to resolve our dispute. In arbitration a neutral person, called an arbitrator, listens to both of us and decides how our dispute is resolved. Arbitrator decisions are enforceable, just like a court order. Unlike court orders, these decisions are subject to very limited review by a court. Once a decision is made it is final, except in very limited circumstances.

In arbitration, we both give up our right to a judge or jury, and, as a result, there is no jury trial. However, if either of us elects to use small claims court to resolve the dispute, the dispute will be resolved in small claims court rather than arbitration.

If you or we choose arbitration, only our individual claims will be arbitrated. Claims by groups of individuals or "Class" arbitrations, are not allowed. By choosing to arbitrate, you will be giving up your right to participate in a class action or a private attorney general action in court or in arbitration with respect to the dispute.

Arbitration rules are generally simpler and more limited than court rules. If you want to learn more about the rules and how they work, navigate to the following link in your browser:

- https://www.adr.org/sites/default/files/Consumer_Rules_Web.pdf

- https://www.jamsadr.com/rules-streamlined-arbitration/

The Arbitration Agreement also explains what the fees and costs for the arbitration will be, and who will pay them.

This is only a summary. As with all legal agreements, please read the entire agreement carefully before you sign. **Unless you opt out of the Arbitration Agreement, it will substantially affect your rights in the event of a dispute between you and us.**

"Us/We/Our" means Carvana, any purchaser, assignee or servicer of the Contract, all of their parent companies, and all subsidiaries, affiliates, predecessors and successors, and all officers, directors and employees of any of the forgoing. "Us/We/Our" also means any third party providing any product or service in connection with or incidental to the Contract, the sale of the vehicle and/or other goods or services covered by the Contract and/or related to the vehicle, if such third party is named as a co-defendant with us in a Claim you assert. "Us/We/Our" have these meanings only for this Agreement. This Agreement is part of, and is hereby incorporated into, the Contract. However, whenever in this Agreement the term "Contract" is used, it does not include this Agreement.

"You/Your" means you and/or any of your heirs or personal representatives.

"Contract" means the Retail Purchase Agreement (in Texas, the Buyer's Order) and/or the related Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement) you signed with us in connection with this purchase, and any prior Retail Purchase Agreement (in Texas, Buyer's Order) and/or Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement) that you previously had with us.

**EXHIBIT**

**A**

THIS IS A COPY
This is a copy of the Authoritative Copy held
by the designated custodian

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

"Agreement" means this Arbitration Agreement.

"Including" and "includes" means "including but not limited to."

This Agreement describes how a Claim may be arbitrated instead of litigated in court.

"Claim" means any claim, dispute our controversy between you and us arising from or related to one or more of the following:

    (a) The Contract.
    (b) The vehicle or the sale of the vehicle.
    (c) The provision or sale of any goods and services like warranties, insurance and extended service contracts covered by the Contract or related to the vehicle.
    (d) The relationships resulting from the Contract.
    (e) Advertisements, promotions or oral or written statements related to the Contract.
    (f) The financing terms.
    (g) Your credit applications.
    (h) The origination and servicing of the Contract.
    (i) The collection of amounts you owe us.
    (j) Any repossession, or replevin, of the vehicle.
    (k) Your personal information.
    (l) The rescission or termination of the Contract.

"Claim" has the broadest reasonable meaning. It includes claims of every kind of nature. This includes initial claims, counterclaims, cross-claims, third-party claims, statutory claims, contract claims, negligence and tort claims (including claims of fraud and other intentional torts). However, notwithstanding any language in this Agreement to the contrary, a "Claim" does not include a dispute about validity, enforceability, coverage or scope of this Agreement (including, without limitation, the paragraph below captioned "No Class Actions or Private Attorney General Actions," the final sentence under the paragraph below captioned "Miscellaneous" and/or this sentence); any such dispute is for a court, and not an arbitrator to decide. This exclusion from the definition of a "Claim" does not apply to any dispute or argument that concerns the validity or enforceability of the Contract as a whole; any such dispute or argument is for the arbitrator, not a court, to decide.

Even if you and we elect to litigate a Claim in court, you or we may elect to arbitrate any other Claim, including a new Claim in that lawsuit or any other lawsuit. Nothing in that litigation waives any rights in this Agreement.

However, notwithstanding any language in this Agreement to the contrary, the term "Claim" does not include (i) any self-help remedy, such as repossession or sale of any collateral given by you to us as security for repayment of amounts owed by you under the Contract; or (ii) any individual action in court by one party that is limited to preventing the other party from using such self-help remedy and that does not involve a request for damages or monetary relief of any kind. Also, we will not require arbitration of any individual Claim you make in small claims court or your state's equivalent court, if any. If, however, you or we transfer or appeal the Claim to a different court, we reserve our right to elect arbitration.

**Your Right to Reject this Agreement. You have the right to reject this Agreement, in which event neither you nor we will have the right to require arbitration of any Claims. Rejection of this Agreement will not affect any other aspect of your Contract. In order for you to reject this Agreement, we must receive a signed writing ("Rejection Notice") from you within 30 days of the day you enter into the Contract, stating that you reject the Agreement. Any notice received after 30 days from the Contract date will not be accepted. The Rejection Notice must include your name, address and Vehicle Identification Number (VIN) and must be mailed to us at:  Attn: Carvana Legal, 1930 W Rio Salado Pkwy, Tempe, AZ 85281  and must be sent via certified mail, return receipt requested. Upon receipt of your Rejection Notice, we will refund your postage cost up to $6.70. We will not refund postage cost for late notices. If the Rejection Notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the Rejection Notice on your behalf. If you reject this Agreement, that will not constitute a rejection of any prior arbitration agreement between you and us.**

THIS IS A COPY
This is a copy of the Authoritative Copy held
by the designated custodian

Electronically Filed - St. Louis County - January 07, 2020 - 05:30 PM

COPY VIEW

<u>Selection of Arbitration Administrator</u>. Unless prohibited by applicable laws, any Claim shall be resolved, on your election or ours, by arbitration under this Agreement.

You may select as the administrator either of the organizations listed at the end of this Agreement. If we want to arbitrate, we will tell you in writing. That may include a motion to compel arbitration that we file in court. You will have 20 (twenty) days to select the administrator (or, if you dispute our right to require arbitration of the Claim, 20 (twenty) days after that dispute is finally resolved). If you do not choose an administrator within the 20-day period, we will do so.

If for any reason the administrator is unable, unwilling, or ceases to be the administrator, you will have 20 (twenty) days to choose the other organization listed at the end of this Agreement. If you do not select a new administrator within that period, we will do so. If neither organization is willing or able to be the administrator, then the administrator will be selected by the court. Notwithstanding any language in this Agreement to the contrary, no arbitration may be administered, without the consent of all parties to the arbitration, by any administrator that has in place a formal or informal policy that is inconsistent with the paragraph below captioned "No Class Action or Private Attorney General Action."

If a party files a lawsuit in court asserting Claim(s) that are subject to arbitration and the other party files a motion to compel arbitration with the court which is granted, it will be the responsibility of the party prosecuting the Claim(s) to commence the arbitration proceeding.

<u>Location of Hearing</u>. Any arbitration hearing you attend shall be in the federal judicial district of your residence.

<u>No Class Action or Private Attorney General Action</u>. Notwithstanding any language herein to the contrary, if you or we elect to arbitrate a Claim, neither you nor we will have the right to: (1) participate in a class action in court or in arbitration, either as a class representative, class member or class opponent; (2) act as a private attorney general in court or in arbitration, or (3) join or consolidate your Claim(s) with claims of any other person, and the arbitrator shall have no authority to conduct any such class, private attorney general or multiple-party proceeding. This paragraph does not apply to any lawsuit filed against us in court by a state or federal government agency even when such agency is seeking relief on behalf of a class of buyers/borrowers including you. This means that we will not have the right to compel arbitration of any claim brought by such an agency.

<u>Notice and Cure; Special Payment</u>: Prior to initiating a Claim, you may give us a written Claim Notice describing the basis of your Claim and the amount you would accept in resolution of the Claim, and a reasonable opportunity, not less than 30 days, to resolve the Claim. If (i) you submit a Claim Notice in accordance with this Paragraph on your own behalf (and not on behalf of any other party); (ii) you cooperate with us by promptly providing the information we reasonably request; (iii) we refuse to provide you with the relief you request; and (iv) the arbitrator subsequently determines that you were entitled to such relief (or greater relief), you will be entitled to a minimum award of at least $7,500 (not including any arbitration fees and attorneys' fees and costs to which you will also be entitled).

<u>Fees and Expenses</u>. An arbitration administrator and arbitrator may waive or reduce its fees for financial hardship. If you ask in writing, we will pay all administrator and arbitrator fees up to $2,500 that the administrator will not waive for any Claims you assert in good faith.

We will consider in good faith your request to pay all or part of any administrator or arbitrator fees over $2,500 ("additional fees"). To the extent we do not approve your request, if the arbitrator issues an award to you, we will still pay you for additional fees you must pay the administrator and/or arbitrator as follows:

(1) In the case of additional fees based on the amount of your Claim or the value of the relief you sought, we will pay you an amount equal to the fees you would have paid if the amount of your Claim or the value of the relief you sought had been the amount or value of the award to you.

(2) In the case of other additional fees not based on the amount of your Claim or the value of the relief you sought, we will pay you for the amount of such additional fees.

(3) If we are required to pay any greater sums under applicable law or in order for this Agreement to be enforced, we will pay such amounts.

THIS IS A COPY

This is a copy of the Authoritative Copy held by the designated custodian

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

We will bear the administrator and arbitrator fees we are normally required to pay and will also bear the expense of our attorneys, experts and witnesses, except where applicable law and the Contract allow us to recover attorneys' fees and/or court costs in a collection action we bring. You will bear the expense of your attorneys, experts and witnesses if we prevail in an arbitration. However, in an arbitration you commence, we will pay your reasonable fees if you prevail or if we must bear such fees in order for this Agreement to be enforced. Also, we will bear any fees if applicable law requires us to.

<u>Applicable Law, Award of Arbitrator and Right to Appeal.</u> Because the Contract involves a transaction in interstate commerce, the Federal Arbitration Act ("FAA") governs this Agreement. The arbitrator shall apply applicable substantive law consistent with the FAA. The arbitrator shall apply applicable statutes of limitations. The arbitrator is authorized and given the power to award all remedies that would apply if the action were brought in court. Either party may make a timely request for a brief written explanation of the basis for the award. The arbitrator shall not apply federal or state rules of civil procedure or evidence.

Judgment on the arbitrator's award may be entered in any court with jurisdiction. Otherwise, the award shall be kept confidential.

The arbitrator's decision is final and binding, except for any right of appeal provided by the FAA. However, if the amount of the Claim exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can appeal the award to a three-arbitrator panel administered by the administrator, which panel shall reconsider any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Agreement to "The arbitrator" shall mean the panel of arbitrators if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with the paragraph captioned "Fees and Expenses" above.

<u>Miscellaneous.</u> This Agreement survives payment of all amounts you owe, if any, under the Contract. It also survives your bankruptcy and any sale by us of your Contract.

If there is a conflict or inconsistency between the administrator's rules and this Agreement, this Agreement governs. If there is a conflict or inconsistency between this Agreement and the Contract, this Agreement governs. If a court or arbitrator deems any part of this Agreement invalid or unenforceable under any law or statute consistent with the FAA, the remaining parts of this Agreement shall be enforceable despite such invalidity. However, if a court limits or voids any part of the above paragraph captioned "No Class Actions or Private Attorney General Actions" in any proceeding, then this entire Agreement (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal such limitation or voiding.

This Agreement (if you do not reject) will supersede any prior arbitration agreement between you and us with respect to any Claim.

THIS IS A COPY

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

**BY SIGNING BELOW, YOU EXPRESSLY AGREE TO THE ABOVE AGREEMENT. THE AGREEMENT MAY SUBSTANTIALLY LIMIT YOUR RIGHTS IN THE EVENT OF A DISPUTE. YOU ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT.**

_Richard Saddler_

_____    _____
Customer Signature                                  Customer Signature


                                                    By: _____
                                                          Authorized Signature


Date: _____ 09/21/18 _____


**ARBITRATION ADMINISTRATORS**

If you have a question about the administrator mentioned in this Agreement or if you would like to obtain a copy of their arbitration rules or fee schedules, you can contact them as follows:

American Arbitration Association (AAA)
13455 Noel Road, Suit 1750
Dallas, TX 75240-6620
www.adr.org

J.A.M.S./Endispute
700 11th Street, NW, Suite 450
Washington, DC 20001
www.jamsADR.com
(800) 352-5267

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

**IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **RICHARD SADDLER** | ) | |
| | ) | Cause No. *19SL-CCO1864* |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **CARVANA, LLC** | ) | Division: *12* |
| | ) | |
| **Defendant.** | ) | |

**FILED**

MAY 1 3 2019

**JOAN M. GILMER**
**CIRCUIT CLERK, ST. LOUIS COUNTY**

## <u>PETITION</u>

Comes now, Plaintiff Richard Saddler (Mr. Saddler) against Defendants Carvana, LLC
(Carvana) alleges and avers as follows:

### <u>NATURE OF CASE</u>

1. This case is an action for damages and other relief arising from a fraudulent sale of an
   automobile from Carvana, LLC to Mr. Saddler. Mr. Saddler signed an installment sales
   contract to purchase the car, however, the sales was void and fraudulent *ab initio* by
   operation of law, as Carvana, LLC failed to provide Mr. Saddler with a certificate of title
   in violation of *RSMO 301.210*.

### <u>PARTIES</u>

2. Plaintiff Richard Saddler is a natural person and a resident of St. Louis County, Missouri.

3. Defendant Carvana, LLC is a corporation licensed to do business in the State of Missouri,
   and whose principal business operation consists of retailing used cars online and also offer
   financing through a related party.

### <u>JURISDITION AND VENUE</u>

4. This court has jurisdiction over this matter pursuant to Article V, Section 14 of the
   Missouri Constitution.

5. Venue is proper in this Court, since the events giving rise to this case occurred at my
   residence, 413 Genoa Dr. Manchester, Missouri, in St. Louis County, Missouri.

### <u>FACTUAL ALLEGATIONS</u>

6. Mr. Saddler was in the market for a used vehicle and utilized the Carvana's website to
   search and find a vehicle that fit his specifications.



EXHIBIT
**B**

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

7. He then applied for financing through Carvana's related party finance company and was approved to finance $26,489.02, which included the sales price of the vehicle, TAVT tax, license fee, vehicle protection and GAP coverage, plus interest rate of 12.64%.

8. On or about September 21, 2018 Mr. Saddler was delivered a 2015 GMC Terrain, at his residence 413 Genoa Dr. Manchester Missouri.  At the time of delivery Mr. Saddler received the automobile and signed final documents acknowledging and accepting delivery.

9. Mr. Saddler also signed a retail installment contract, security agreement, Carvana care agreement, and credit reporting notice, odometer disclosure statement, GAP addendum to retail installment contract, and an arbitration agreement.

10. Neither at the time of the sale on September 21, 2018, nor at any time since did Defendant provide Mr. Saddler with a title to the vehicle, as required by Missouri Law.

11. Within approximately forty five days after the sale (before the temporary tags were set to expire) Mr. Saddler was forced to obtain an emissions inspection and odometer reading and email it to Carvana for Mr. Saddler to receive the title to the vehicle and the registered license plates.

12. At the expense of Mr. Saddler he got emissions inspection and odometer reading completed multiple times. It was an expense that Carvana stated that they would take care of. Additionally, he emailed Carvana the passing emissions results on November 1, 2018 at 11:33am of which was completed by his local GMC Bommarito Dealership. Carvana confirmed receipt of said email with the attached emissions results on November 1, 2018 at 5:22pm.

13. Mr. Saddler was later informed that the third party processing company was unable to process the required title and registration due to the fact that the email was a copy and were requesting the original emissions inspection and odometer reading issued by State of Missouri. The Dealer can only issue copies on their letter head. Not on State leterhead.

14. Since September 2018, Mr. Saddler has made monthly payments of $527, totaling to date approximately $4,216, all of which have been payments towards a car he does not legally even own.

15. In an email dated April 24, 2019 Carvana threatens that if Mr. Saddler does not contact Carvana within five days then they "or we may have to retake it." Meaning my car..

16. In addition, Mr. Saddler has suffered additional damages due to this transaction, including being pulled over multiple times for driving without properly registered license plates. Which makes him fearful of his and his family's life in having to deal with a possible hostile Police Officer that have cause to pull him over due to Carvana's illegal business practices.

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

17. Mr. Saddler has also suffered substantial damages resulting from his loss of time, inconvenience, annoyance, embarrassment, and other such damages, resulting from the void sale and subsequent failure to take any action to remedy it.

18. The actions of the Defendants, as described herein, were outrageous because of the Defendant's evil motif or reckless indifference to Plaintiff's right and the rights of others such that the Plaintiff is entitled to an additional amount as punitive damages in a sum sufficient to punish Defendants and to deter Defendants and others from like conduct.

## COUNT I – FRAUD

COMES NOW Plaintiff and for Count I of his Petition against Defendants, states and alleges as follows:

19. Plaintiff incorporates herein all preceding paragraphs as though fully set forth herein.

20. *RSMO 301.210.4* declares that the sale of a motor vehicle without transfer of title is fraudulent.

21. Defendant Carvana sold, or purported to sell, the vehicle to Mr. Saddler and did not transfer the title; therefore, the transaction constituted fraud as a matter of law.

22. Due to the Defendant's sophistication in clear knowledge of the laws in the State of Missouri, the Defendant should not have asked Mr. Saddler to obtain the emissions inspection and odometer reading. Due to Mr. Saddler's lack of sophistication he was unaware of the rules and laws that surround buying and selling a car in the State of Missouri.

23. Despite having long been on notice of this fraud, including via mail, phone calls and emails from Mr. Saddler, and the Attorney General of Missouri on multiple occasions.

WHEREFORE, Plaintiff prays for an award of his actual damages, punitive damages in amounts that are fair and reasonable, for an order declaring the contract void and rescinding the transaction, for the costs of this action, and for such other and further relief as this Court deems just and proper.

## COUNT II VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT

COMES NOW Plaintiff and for Count II of his Petition against Defendants, states and alleges as follows:

24. Plaintiff incorporates herein all preceding paragraphs as though fully set forth herein.

25. The Missouri Merchandising Practices Act, 407.010 et seq. prohibits unfair and deceptive acts and practices in the sale of goods and services of Missouri.

26. The sale or purported sale of the GMC by Carvana to Mr. Saddler was a sale for purposes of the MPA, and the sale was primarily for personal, family, or household purposes.

27. In connection with the sales transaction, Defendant Carvana committed the following unfair or deceptive acts and practices:

  a. Sale of the motor vehicle without a certificate of title, which is a violation of *RSMO 301.210.*, and was thus a per se unfair or deceptive act or practice.
  b. Selling Mr. Saddler a car that could not and did not pass Missouri state vehicle inspection at the time of the sale.
  c. Charging Mr. Saddler exorbitant fees for services of little or no value, including an extended warranty and GAP coverage.

28. Defendant Carvana has further violated the MPA by refusing and continuing to refuse to tender a certificate of title to Mr. Saddler.

29. Pursuant to RSMO. 407.025, this Court may award Mr. Saddler his actual damages, punitive damages, equitable relief, attorneys fees, and the costs of this action.

WHEREFORE, Plaintiff prays this Court declare the purported sale void and rescinded, award Mr. Sadder his actual damages, punitive damages in amounts that are fair and reasonable, his reasonable attorneys fees, and the costs of this action.

Respectfully submitted,

Richard Saddler
Pro se Plaintiff

Subscribed and sworn to before me this 13 day of May , 19.

Notary Public or Clerk

ELIZABETH J. FISCHER
My Commission Expires
March 27, 2021
St. Louis City
Commission #13407834

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

## CERTIFICATE OF SERVICE

On this 13th day of May, 2019, a copy of the attached Motion were FedEx to Defendant and

hand deliver to the Clerk of Court, to the following addresses respectfully:

Carvana, LLC
1930 W Rio Salado Parkway
Tempe, AZ 85281

and

St. Louis County Clerk of Court
105 South Central Avenue
Clayton, MO  63105

THIS IS A COPY
of the original Authoritative Copy held
by the designated custodian

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

MO-102 10/10/2015

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary |
| --- | --- | --- |
| CARVANA, LLC | Richard Saddler | No. PII |
| 63 PIERCE RD | 701 Ridgeside Dr # L | Date 09/21/18 |
| WINDER GA 30680-7280 | Ballwin MO 63021 | |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments | Total Sale Price |
| --- | --- | --- | --- | --- |
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid when you have made all scheduled payments. | The total cost of your purchase on credit, including your down payment of |
| 12.64 % | $ 11,415.51 | $ 26,489.02 | $ 37,904.53 | $ 0.00 |
| | | | | $ 37,904.53 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
| --- | --- | --- |
| 71 | $ 527.00 | monthly beginning 10/21/18 |
| 1 | $ 487.53 | 09/21/24 |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If you fail to pay your scheduled payment, in full, within 15 days of its due date, you agree to pay: 1. a late charge of $5.00, if the amount of your scheduled payment is $25.00 or less; 2. otherwise, a late charge of 5% of the amount of your scheduled payment, subject to a minimum late charge of $10.00 and a maximum late charge of $25.00.

**Prepayment.** If you pay off this Contract early, you ☐ may ☒ will not have to pay a Minimum Finance Charge.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
| --- | --- | --- | --- | --- | --- |
| 2015 | GMC | Terrain | SUV | 2GKFLZE35F6281225 | 63770 |

☐ New
☒ Used
☐ Demo

Other:
N/A

## Description of Trade-In

| N/A | N/A | N/A | N/A |
| --- | --- | --- | --- |
| N/A | N/A | N/A | N/A |

## Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("*Agreement*") applies: _____ N/A _____
_____ N/A _____. The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the terms of this Contract will apply.

## Sales Agreement

**Payment.** You promise to pay us the principal amount of
$ _____ 26,489.02 _____ plus finance charges accruing on the unpaid balance at the rate of _____ 12.64 _____ % per year from the date of this Contract until paid in full. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed*.

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

☐ **Minimum Finance Charge.** You agree to pay a minimum finance charge of $ _____ N/A _____ if you pay this Contract in full before we have earned that much in finance charges.

Retail Installment Contract-MO Not for use in transactions secured by a dwelling.
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2015

EXHIBIT
C

RSSIMVLFLZMO 10/10/2015
_____ Page 1 of 5

THIS IS A COPY

This is not an Authoritative Copy held
by the designated custodian

COPY VIEW

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

## Itemization of Amount Financed

| | | | |
|---|---|---|---|
| a. | Price of Vehicle, etc. (incl. sales tax of $ 1,652.02 ) | $ | 23,352.02 |
| b. | Service Contract, paid to: Carvana | $ | 2,350.00 |
| c. | **Cash Price** (a+b) | $ | 25,702.02 |
| d. | Trade-in allowance | $ | 0.00 |
| e. | Less: Amount owing, paid to (includes m): N/A | $ | N/A |
| f. | Net trade-in (d-e; if negative, enter $0 here and enter the amount on line m) | $ | 0.00 |
| g. | Cash payment | $ | 0.00 |
| h. | Manufacturer's rebate | $ | N/A |
| i. | Deferred down payment | $ | N/A |
| j. | Other down payment (describe) N/A | $ | N/A |
| k. | **Down Payment** (f+g+h+i+j) | $ | 0.00 |
| l. | **Unpaid balance of Cash Price** (c-k) | $ | 25,702.02 |
| m. | Financed trade-in balance (see line f) | $ | 0.00 |
| n. | Paid to public officials, including filing fees | $ | 92.00 |
| o. | Insurance premiums paid to insurance company(ies) | $ | 0.00 |
| p. | Administrative Fee | $ | 0.00 |

AN ADMINISTRATIVE FEE IS NOT AN OFFICIAL FEE AND IS NOT REQUIRED BY LAW BUT MAY BE CHARGED BY A DEALER. THIS ADMINISTRATIVE FEE MAY RESULT IN A PROFIT TO DEALER. NO PORTION OF THIS ADMINISTRATIVE FEE IS FOR THE DRAFTING, PREPARATION, OR COMPLETION OF DOCUMENTS OR THE PROVIDING OF LEGAL ADVICE. THIS NOTICE IS REQUIRED BY LAW.

| | | | |
|---|---|---|---|
| q. | To: Gap Coverage | $ | 695.00 |
| r. | To: N/A | $ | N/A |
| s. | To: N/A | $ | N/A |
| t. | To: N/A | $ | N/A |
| u. | To: N/A | $ | N/A |
| v. | To: N/A | $ | N/A |
| w. | To: N/A | $ | N/A |
| x. | To: N/A | $ | N/A |
| y. | To: N/A | $ | N/A |
| z. | To: N/A | $ | N/A |
| aa. | **Total Other Charges, Amounts Paid** (m thru z) | $ | 3,137.00 |
| bb. | **Prepaid Finance Charge** | $ | 0.00 |
| cc. | **Amount Financed** (l+aa-bb) | $ | 26,489.02 |

We may retain or receive a portion of any amounts paid to others.

## Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the coverages you have chosen to purchase.

**Credit Life**

☐ Single   ☐ Joint   ☐ None
Premium $ N/A    Term N/A
Insured N/A

**Credit Disability**

☐ Single   ☐ Joint   ☐ None
Premium $ N/A    Term N/A
Insured N/A

---

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

N/A _____ N/A
By: _____ DOB

N/A _____ N/A
By: _____ DOB

N/A _____ N/A
By: _____ DOB

**You have the right to cancel credit insurance within 15 days of buying it and receive a full refund or credit for the credit insurance premium.**

**Property Insurance.** You must insure the Property securing this Contract. You understand that you are free to insure your Property with whatever licensed company, agent or broker you may choose; that you may do so at any time before the date of this loan; that you have not cancelled any existing insurance on your Property if you obtained before this loan; and that this loan cannot be denied simply because you did not purchase your insurance through us. **YOU MAY NOT NEED TO PURCHASE CREDIT PROPERTY INSURANCE, AND YOU MAY HAVE OTHER INSURANCE WHICH WE WILL ACCEPT WHICH COVERS THE PROPERTY SECURING THIS LOAN. YOU SHOULD EXAMINE ANY OTHER INSURANCE WHICH YOU HAVE IN ORDER TO DETERMINE IF THIS COVERAGE IS NECESSARY.**

This premium is calculated as follows:

| | | | |
|---|---|---|---|
| ☐ $ N/A | Deductible, Collision Cov. | $ | N/A |
| ☐ $ N/A | Deductible, Comprehensive | $ | N/A |
| ☐ Fire-Theft and Combined Additional Cov. | | $ | N/A |
| ☐ | | $ | N/A |

**Liability insurance coverage for bodily injury and property damage caused to others is not included in this Contract unless checked and indicated.**

☐ **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ N/A for N/A of coverage.

*[This area intentionally left blank.]*

---

THIS IS A COPY
The Authoritative Copy h
by the designated custodian

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

COPY VIEW

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☒ Service Contract

| Term | 36 months |
|---|---|
| Price | $ 2,350.00 |
| Coverage | Vehicle Protection |

☒ Gap Waiver or Gap Coverage

| Term | 72 months |
|---|---|
| Price | $ 695.00 |
| Coverage | Gap Coverage |

☐ N/A

| Term | N/A |
|---|---|
| Price | $ N/A |
| Coverage | N/A |

*Richard Saddler*                                          09/21/18

By: Richard Saddler                                        Date

N/A                                                        N/A

By:                                                        Date

N/A                                                        N/A

By:                                                        Date

## Additional Terms of the Sale Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors jointly and individually. The pronouns *"we," "us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. You also agree that the purchase of the Property on credit takes place at the Seller's licensed location identified at the top of page 1 of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time. See *Minimum Finance Charge* section. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $25, plus any charge by the depository institution for the dishonored or returned payment.

**Governing Law and Interpretation.** This Contract is governed by the law of Missouri and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days' notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order to us service the account or collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

- ◆ You fail to make a payment as required by this Contract.
- ◆ We believe the prospect of payment, performance, or the ability to realize upon the collateral is significantly impaired.

If you default, you agree to pay our costs for collecting amounts owing, including court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay reasonable attorneys' fees not in excess of 15% of the unpaid debt after default and referral to an attorney not a salaried employee of ours.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you default on this Contract, we may exercise the remedies provided by law and this Contract after we have given you any notice and opportunity to cure your default that the law requires. Those remedies include:

- ◆ We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
- ◆ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so, provided we give you prior notice and a reasonable opportunity to perform. We are not required to make any such payments or repairs. You will repay us that amount when we tell you to do so. That amount will earn finance charges from the date we pay it at the rate described in the *Payment* section until paid in full.
- ◆ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- ◆ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.
- ◆ We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.
- ◆ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

THIS IS A COPY
This is not an Authoritative Copy h
by the designated custodian

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- ◆ You must pay this Contract even if someone else has also signed it.
- ◆ We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- ◆ We may release any security and you will still be obligated to pay this Contract.
- ◆ If we give up any of our rights, it will not affect your duty to pay this Contract.
- ◆ If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- ◆ You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- ◆ You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- ◆ You agree not to remove the Property from the U.S. without our prior written consent.
- ◆ You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- ◆ You will pay all taxes and assessments on the Property as they become due.
- ◆ You will notify us with reasonable promptness of any loss or damage to the Property.
- ◆ You will provide us reasonable access to the Property for purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

Unless you provide evidence of the insurance coverage required by this Contract, we may purchase insurance at your expense to protect our interests in the Property. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the Property. You may later cancel any insurance purchased by us, but only after providing evidence that you have obtained insurance as required. If we purchase insurance for the Property, you will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Notices

**Note.** If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. **NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**If you are buying a used vehicle:** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

**Sí compra un vehículo usado:** La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compra venta.

Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

**Emissions Inspection Notice.** If the vehicle is subject to Missouri emissions inspection and the Seller sells it to you without prior inspection and approval, you may: (1) return the vehicle within 10 days, provided it has no more than 1,000 additional miles since the time of sale, to have the Seller repair the Vehicle and provide an emissions certificate and sticker within five working days if the Vehicle fails, upon inspection, to meet the emissions standards, or (2) enter into any mutually acceptable agreement with the Seller.

## Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

| N/A | N/A |
|---|---|
| **By:** | **Date** |

Signature of Third Party Owner (NOT the Buyer)

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

COPY

THIS IS A COPY

This is a Copy View of the Authoritative Copy held by the designated custodian

Electronically Filed - St Louis County - January 07, 2020 - 05:30 PM

☒  **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of the Contract in the electronic form. You may enforce the paper version of the Contract copy that you received.

### Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

*Richard Saddler*                                          09/21/18
**By:** Richard Saddler                                    **Date**

_____           _____
N/A                                                        N/A
**By:**                                                    **Date**

_____           _____
N/A                                                        N/A
**By:**                                                    **Date**

**Notice to the Buyer.** Do not sign this Contract before you read it or if it contains any blank spaces. You are entitled to an exact copy of the Contract you sign. Under the law you have the right to pay off in advance the full amount due and to obtain a partial refund of the time price differential.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you sign it.

**Buyer**

*Richard Saddler*                                          09/21/18
**By:** Richard Saddler                                    **Date**

_____           _____
N/A                                                        N/A
**By:**                                                    **Date**

_____           _____
N/A                                                        N/A
**By:**                                                    **Date**

**Seller**



                                                           09/21/18
**By:** CARVANA, LLC                                       **Date**

**Assignment.** This Contract and Security Agreement is assigned to
_____
N/A
_____ ,
the Assignee, phone _____ N/A _____ . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.
☐   This Assignment is made with recourse.

**Seller**

_____
N/A
**By:** _____     **Date**

Electronically Filed - St Louis County - January 08, 2020 - 09:15 AM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

RICHARD SADDLER,

      Plaintiff,

v.

CARVANA, LLC,

      Defendant.

Cause No. 19SL-CC05679

Division No. 1

## <u>NOTICE OF HEARING</u>

PLEASE TAKE NOTICE that Defendant will, on January 21, 2020, at 9:00 AM, or as soon thereafter as counsel can be heard, call up for hearing Defendant's Motion to Compel Arbitration and Dismiss Action, or in the Alternative, to Stay in the Circuit Court of St. Louis County, Missouri before the Hon. Brian H. May.

Respectfully submitted,

/s/ William A. Brasher

William A. Brasher, #30155
Allison E. Lee, #61626
**BOYLE BRASHER LLC**
1010 Market Street, Suite 950
St. Louis, Missouri 63101
P:  (314) 621-7700
F:  (314) 621-1088
wbrasher@boylebrasher.com
alee@boylebrasher.com

Christopher W. Cardwell, #49583
M. Thomas McFarland,
#033432TN
(*pro hac vice* application
forthcoming)

Electronically Filed - St Louis County - January 08, 2020 - 09:15 AM

**GULLETT SANFORD ROBINSON & MARTIN, PLLC**
150 Third Avenue South, Suite 1700
Nashville, TN 37201
P: (615) 244-4994
F: (615) 256-6339
ccardwell@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Defendant*


## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of January 2020, the foregoing was filed electronically with the Clerk of Court using the Missouri e-filing system and that a copy of the same has been served via the United States Postal Service, First-Class Mail, postage prepaid to:

Richard Saddler
413 Genoa Drive
Manchester, MO 63021
richardsaddler@yahoo.com
*Pro Se Plaintiff*


/s/ William A. Brasher

Electronically Filed - St Louis County - January 14, 2020 - 04:41 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

RICHARD SADDLER,

      Plaintiff,

v.

CARVANA, LLC,

      Defendant.

Cause No. 19SL-CC05679

Division No. 1

**MOTION FOR PRO HAC VICE ADMISSION OF M. THOMAS McFARLAND**

COMES NOW, Defendant Carvana, LLC ("Carvana"), by and through undersigned counsel, pursuant to Missouri Supreme Court Rule 9.03, and moves this Honorable Court for an Order admitting M. Thomas McFarland *pro hac vice* in this matter, and in support thereof, states as follows:

1.      William A. Brasher is a member of the Missouri bar in good standing, maintains an office in St. Louis City, Missouri, and has been retained, along with the attorneys of Boyle Brasher LLC, to represent Carvana in this matter.

2.      Carvana also wishes to be represented by M. Thomas McFarland in this matter.

3.      Mr. McFarland is currently a member of the bar in good standing in the State of Tennessee. His bar number is 033432.  He is also admitted to practice before the United States Court of Appeals for the First, Third, and Sixth Circuits and the United States District Courts for the Eastern, Middle, and Western Districts of Tennessee.

4.      Mr. McFarland is not under suspension or disbarment by the highest court of any state or territory of the United States.

5.      Mr. McFarland's affidavit pursuant to Missouri Supreme Court Rule 9.03(c) is attached as **Exhibit A** to this motion.

Electronically Filed - St Louis County - January 14, 2020 - 04:41 PM

6.      Mr. McFarland has paid the fee required by Missouri Supreme Court Rule 6.01(n), as evidenced by the receipt attached as **Exhibit B** to this motion.

7.      As the requirements of Missouri Supreme Court Rule 9.03 have been satisfied, Mr. McFarland is eligible to and should be admitted *pro hac vice* in this matter.

WHEREFORE, Defendant Carvana, LLC respectfully requests that this Court grant its Motion for Pro Hac Vice Admission of M. Thomas McFarland and award such further relief as this Court deems appropriate and just.

Respectfully submitted,

/s/ William A. Brasher

William A. Brasher, #30155
Allison E. Lee, #61626
**BOYLE BRASHER LLC**
1010 Market Street, Suite 950
St. Louis, Missouri 63101
P:  (314) 621-7700
F:  (314) 621-1088
wbrasher@boylebrasher.com
alee@boylebrasher.com

Christopher W. Cardwell, #49583
M. Thomas McFarland, #033432TN
(*pro hac vice* application forthcoming)
**GULLETT SANFORD ROBINSON & MARTIN, PLLC**
150 Third Avenue South, Suite 1700
Nashville, TN 37201
P:  (615) 244-4994
F:  (615) 256-6339
ccardwell@gsrm.com
tmcfarland@gsrm.com

***Attorneys for Defendant***

41D1343

2

Electronically Filed - St Louis County - January 14, 2020 - 04:41 PM

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of January 2020, the foregoing was filed electronically with the Clerk of Court using the Missouri e-filing system and that a copy of the same has been served via the United States Postal Service, First-Class Mail, postage prepaid to:

Richard Saddler
413 Genoa Drive
Manchester, MO 63021
richardsaddler@yahoo.com
*Pro Se Plaintiff*

/s/ William A. Brasher

41D1343                                          3



EXHIBIT

A

Electronically Filed - St Louis County - January 14, 2020 - 04:41 PM

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
## STATE OF MISSOURI

RICHARD SADDLER,

    Plaintiff,

v.

CARVANA, LLC,

    Defendant.

Cause No. 19SL-CC05679

Division No. 12

## <u>AFFIDAVIT OF M. THOMAS McFARLAND</u>

M. Thomas McFarland, being of sound mind, over the age of 18, and duly sworn upon his oath, states as follows:

1.    My name is Marshall Thomas McFarland;

2.    At the request of my client, Carvana, LLC ("Carvana"), I wish to appear *pro hac vice* in the above captioned matter as counsel for Carvana;

3.    I am a member of the bar in good standing of the State of Tennessee, and my bar number is 033432. I am also admitted to practice before the United States Courts of Appeal for the First, Third, and Sixth Circuits and the United States District Courts for the Eastern, Middle, and Western Districts of Tennessee;

4.    I have never been under suspension or disbarment by the highest court of any state or territory of the United States;

5.    No member of my firm is under suspension or disbarment by the State of Tennessee, Missouri, or any federal court to which I am admitted to practice;

6.    The services of Boyle Brasher LLC have also been retained to represent Carvana in this matter, and I have designated William A. Brasher, and the attorneys of Boyle Brasher, LLC

Electronically Filed - St Louis County - January 14, 2020 - 04:41 PM

to serve as associate counsel in this case.

**FURTHER AFFIANT SAYETH NOT.**

12-27-19
_____
Date

M. Thomas McFarland
_____
M. Thomas McFarland

Subscribed and sworn to me this ___27th___ day of ___December___ 2019.

_____
Notary Public

My Commission Expires: ___1/3/2023___

AMBER E. KING
STATE
OF
TENNESSEE
NOTARY
PUBLIC
COUNTY OF DAVIDSON
My Comm. Expires
January 3, 2023

Electronically Filed - St Louis County - January 14, 2020 - 04:41 PM

EXHIBIT

**B**



**CLERK OF THE SUPREME COURT**
**STATE OF MISSOURI**
**POST OFFICE BOX 150**
**JEFFERSON CITY, MISSOURI**
65102

BETSY AUBUCHON
CLERK

TELEPHONE
(573) 751-4144

January 6, 2020

*This will hereby acknowledge receipt of $410 as required by*
*Rule 6.01(m) for Marshall Thomas McFarland, appearing in*
*Richard Saddler v. Carvana, LLC, Case No. 19SL-CC05679,*
*before the Circuit Court of St. Louis County, State of Missouri.*

Betsy AuBuchon, Clerk

Electronically Filed - St Louis County - January 14, 2020 - 04:41 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

RICHARD SADDLER,

       Plaintiff,

v.

CARVANA, LLC,

       Defendant.

Cause No. 19SL-CC05679

Division No. 1

**ORDER GRANTING**
**MOTION FOR *PRO HAC VICE* ADMISSION OF M. THOMAS McFARLAND**

This matter is before the Court on the Motion for *Pro Hac Vice* Admission of M. Thomas McFarland in this matter. After being duly advised of the premises and having found that the requirements of Missouri Supreme Court Rule 9.03 have been satisfied, this Honorable Court **GRANTS** the motion and **ORDERS** M. Thomas McFarland admitted *pro hac vice* in the above captioned matter.

      **IT IS SO ORDERED.**

_____        _____
      **Date**                              **The Honorable Brian H. May**

cc: All counsel of record

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY

STATE OF MISSOURI

RECEIVED AND FILED
CIRCUIT COURT OF
ST LOUIS

2020 JAN 15 PM 2: 17

JOAN M. GILMER
CIRCUIT CLERK

| | | |
|---|---|---|
| **RICHARD SADDLER** | ) | |
| **PLANTIFF,** | ) | Cause No. 19SL-CC05679 |
| **VS** | ) | |
| | ) | |
| **CARVANA, LLC** | ) | Division: 1 |
| **DEFENDANT,** | ) | |

## Motion for Continuance

After having a brief conversation with William Brasher, the attorney for the defendant. I shared with him that I had a prior engagement on the January 21st and no one from his firm contacted me to verify if that hearing date was sufficient. Based on that, I request this court to continue this case until January 27th at 10 a.m.

Richard Saddler

413 Genoa Dr.

Manchester, MO 63021

Phone: 310-428-2110

Richard Saddler

/RS/

Certificate of Service

On this 15 day of January 2020 this motion was delivered by Email to The defendant Council William Brasher of Boyal Brasher to: wbrasher@boylebrasher.com

/RS/

Richard Saddler

Electronically Filed - St Louis County - January 16, 2020 - 02:03 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

RICHARD SADDLER,

       Plaintiff,

v.

CARVANA, LLC,

       Defendant.

Cause No. 19SL-CC05679

Division No. 1

## <u>MOTION FOR EXTENSION OF TIME TO FILE RESPONSIVE PLEADING</u>

Defendant Carvana, LLC ("Carvana"), by and through undersigned counsel, pursuant to Missouri Rule of Civil Procedure 44.01, and for its Motion for Extension of Time to File Responsive Pleading, states as follows:

1.     This action arises out of Plaintiff Richard Saddler's purchase of a vehicle from Carvana.

2.     Mr. Saddler originally filed this action on May 13, 2019, alleging that Carvana had failed to provide a title to the vehicle, sold him a vehicle that could not pass a Missouri state vehicle inspection, and charged him fees for services of little or no value, such as an extended warranty and gap coverage.

3.     After Carvana moved to compel arbitration pursuant to the terms of the parties' Arbitration Agreement, Mr. Saddler voluntarily dismissed the action.

4.     Mr. Saddler then filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Missouri. That action was dismissed on August 30, 2019, for Mr. Saddler's failure to pay the appropriate filing fee or to petition the Court for leave to pay the filing fee in installments.

Electronically Filed - St Louis County - January 16, 2020 - 02:03 PM

5.      Mr. Saddler refiled this action on December 23, 2019, adding five counts to his Petition, and served Carvana's statutory agent with process the same day.

6.      Pursuant to Missouri Rule of Civil Procedure 55.25(a), Carvana's Answer is due on or before January 22, 2020.

7.      The filing of a motion to dismiss pursuant to Missouri Rule of Civil Procedure 55.25(c) tolls the time for filing an Answer until after the Court denies or postpones its ruling on such motion.

8.      Carvana filed its Motion to Dismiss and Compel Arbitration on January 7, 2020, and the following day, noticed it for hearing on January 21, 2020.

9.      Based on Carvana's understanding of the law, its Motion to Dismiss and Compel Arbitration qualifies as a motion to dismiss for failure to state a claim upon which relief may be granted, tolling the time for Carvana to file an Answer. *See State ex rel. Reg'l Convention v. Burton*, 533 S.W.3d 223, 227 (Mo. banc 2017) (sustaining dismissal of action where claims were subject to arbitration); *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 881-82 (8th Cir. 2017) (holding that a motion to dismiss in favor of arbitration is appropriately raised under Federal Rule of Civil Procedure 12(b)(6), where all claims are subject to arbitration agreement); *Hemme v. Bharti*, 183 S.W.3d 593, 597 (Mo. banc 2006) (explaining that where Missouri and federal rules are similar, federal precedents constitute persuasive authority as to the meaning of the Missouri rule).

10.     Carvana has been advised that Mr. Saddler is unavailable for the hearing on January 21, 2020. The Court's ruling at that hearing either could have eliminated the need for any further pleading or could have clarified the time for filing an Answer.

Electronically Filed - St Louis County - January 16, 2020 - 02:03 PM

11.     Carvana has approached Mr. Saddler about agreeing to extend the deadline for any Answer in this matter, requesting that its Answer not be due until twenty-one days after the Court denies Carvana's Motion to Dismiss and Compel Arbitration.

12.     Such an extension would also prevent the parties or the Court from expending any resources in the preparation of, filing, or responding to an Answer, until the Court has determined whether this matter must proceed in arbitration.

13.     Nevertheless, Mr. Saddler refused to consent to such an extension.

14.     Carvana respectfully requests that this Court extend the time for Carvana to file an Answer up to and including twenty-one days after the Court enters an Order denying Carvana's Motion to Dismiss and Compel Arbitration.

15.     Missouri Rule of Civil Procedure 44.01(b) provides that when a party is required to take some action under the rules, the Court may enlarge that period for cause shown, with or without notice, when the request is made prior to the expiration of the time period.

WHEREFORE, Defendant Carvana, LLC respectfully requests that this Court grant this motion, extend the time for Carvana to file an Answer as described above, and award such further relief as this Court deems appropriate and just.

Respectfully submitted,

/s/ William A. Brasher

William A. Brasher, #30155
Allison E. Lee, #61626
**BOYLE BRASHER LLC**
1010 Market Street, Suite 950
St. Louis, Missouri 63101
P:  (314) 621-7700
F:  (314) 621-1088
wbrasher@boylebrasher.com
alee@boylebrasher.com

41D2590

Electronically Filed - St Louis County - January 16, 2020 - 02:03 PM

Christopher W. Cardwell, #49583
M. Thomas McFarland, #033432TN
(*pro hac vice* application forthcoming)
**GULLETT SANFORD ROBINSON
& MARTIN, PLLC**
150 Third Avenue South, Suite 1700
Nashville, TN 37201
P:  (615) 244-4994
F:  (615) 256-6339
ccardwell@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of January 2020, the foregoing was filed electronically with the Clerk of Court using the Missouri e-filing system and that a copy of the same has been served via the United States Postal Service, First-Class Mail, postage prepaid to:

Richard Saddler
413 Genoa Drive
Manchester, MO 63021
richardsaddler@yahoo.com
*Pro Se Plaintiff*

/s/ William A. Brasher

41D2590                                    4

Electronically Filed - St Louis County - January 16, 2020 - 02:03 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

RICHARD SADDLER,

     Plaintiff,

v.

CARVANA, LLC,

     Defendant.

Cause No. 19SL-CC05679

Division No. 1

**AMENDED NOTICE OF HEARING**

PLEASE TAKE NOTICE that Defendant will, on January 27, 2020, at 9:00 AM, or as soon thereafter as counsel can be heard, call up for hearing Defendant's Motion to Compel Arbitration and Dismiss Action, or in the Alternative, to Stay, Defendant's Motion for Extension of Time to File Responsive Pleading and Motion for *pro hac vice* Admission of M. Thomas McFarland in the Circuit Court of St. Louis County, Missouri before the Hon. Brian H. May.

Respectfully submitted,

/s/ William A. Brasher

William A. Brasher, #30155
Allison E. Lee, #61626
**BOYLE BRASHER LLC**
1010 Market Street, Suite 950
St. Louis, Missouri 63101
P: (314) 621-7700
F: (314) 621-1088
wbrasher@boylebrasher.com
alee@boylebrasher.com

Christopher W. Cardwell, #49583
M. Thomas McFarland,
#033432TN
(*pro hac vice* application
forthcoming)
**GULLETT SANFORD ROBINSON**
**& MARTIN, PLLC**
150 Third Avenue South, Suite
1700
Nashville, TN 37201
P:  (615) 244-4994
F:  (615) 256-6339
ccardwell@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of January 2020, the foregoing was filed electronically with the Clerk of Court using the Missouri e-filing system and that a copy of the same has been served via the United States Postal Service, First-Class Mail, postage prepaid to:

Richard Saddler
413 Genoa Drive
Manchester, MO 63021
richardsaddler@yahoo.com
*Pro Se Plaintiff*

/s/ William A. Brasher

Richard Saddler, *Pro Se* Plaintiff
295 Brightfield Drive
Ballwin, MO 63021
(310) 428 - 2110



RECEIVED AND FILED
CIRCUIT COURT OF
ST LOUIS COUNTY

2020 JAN 21  AM 9:08

JOAN M. GILMER
CIRCUIT CLERK

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
## STATE OF MISSOURI

| | | |
|---|---|---|
| **Richard Saddler** | ) | **PLAINTIFF RICHARD SADDLER'S** |
| | ) | **MEMORANDUM IN OPPOSITION TO** |
| **Plaintiff.** | ) | **DEFENDANT CARVANA'S MOTION TO** |
| **vs.** | ) | **COMPEL ARBITRATION** |
| | ) | |
| **Carvana, LLC** | ) | **Cause No. 19SL-CC05679** |
| | ) | |
| **Defendant.** | ) | **Division No. 1** |

Undersigned *pro* se Plaintiff Richard Saddler ("Plaintiff") files this Memorandum in Opposition to Defendant Carvana's ("Carvana" or "Defendant") Motion to Compel Arbitration and states:

I.    BACKGROUND

Carvana asserts the parties entered into an arbitration agreement on September 21, 2018 and that the subject matter of this suit is covered by the scope of that agreement.  Carvana's Memorandum of Law in Support of its Motion to Compel Arbitration at pages 1-2 ("Carvana Mem").  In support of this assertion Carvana attaches the putative Arbitration Agreement as *Defendant's Exhibit A* which contains Plaintiff's electronic signature and is dated September 21, 2018. Carvana Mem. page 2.    Based upon Carvana's assertion the parties entered into the agreement attached as *Defendant's Exhibit A* and that this dispute is governed by the scope of its terms, Carvana seeks to compel Plaintiff into arbitration.  However, Plaintiff has made clear in his affidavit he was never presented with an arbitration agreement with regard to the purchase of the vehicle ("Denali") which is the subject of this action, whether at delivery or any time thereafter.  Affidavit of Richard Saddler ¶ 18 ("Saddler Aff.").

The only electronic signature(s) Carvana ever obtained from Plaintiff were obtained when he purchased his prior vehicle from Carvana weeks earlier. Saddler Aff. ¶ 5.  When this prior purchase was made, Plaintiff executed electronic documents which included an arbitration agreement.  Saddler Aff. ¶ 6.  When Plaintiff became dissatisfied with this purchase, Carvana agreed to accept back the vehicle provided Plaintiff make a second purchase. Saddler Aff. ¶¶ 7-8. This second purchase is the subject of this action and it also is this second purchase where Plaintiff was presented with sales documents to sign at delivery which did not include any arbitration agreement and certainly did not include Carvana's Memorandum *Exhibit A*. Saddler Aff. ¶¶ 9 & 10.

During delivery of the Denali, the salesman experienced a failure in his technology preventing his use of a tablet to access the sale documentation and which Plaintiff was to also use to provide his electronic signature.  Saddler Aff. ¶ 9.  Because of this technology failure, Plaintiff was unable to provide an electronic signature on any documents at the time of delivery or any time thereafter.  In fact, during

delivery the salesman used Plaintiff's home printer to produce a second copy of Saddler's Affidavit *Exhibit A* which was the ONLY document executed by Plaintiff at the time of the Denali's delivery on September 21,2018,or any time thereafter.  Saddler Aff. ¶ 10.  Carvana could not possess a legitimate electronically signed arbitration agreement executed as of the date of the Denali's delivery, September 21, 2018, because the salesman's tablet was not functioning at delivery and he was unable to take Plaintiff's electronic signature.  This is why at the time of delivery of the Denali the salesman and Plaintiff produced, and Plaintiff is now in possession of,  a hard copy of the sales agreement signed by Plaintiff dated on September 21, 2018.

When Carvana provided Plaintiff "all sales documents from his Denali purchase," Carvana included a purported "Thank You" letter from Carvana to Plaintiff ostensibly thanking Plaintiff for his business.  Saddler Aff. ¶ 19.  An inspection of this document evidences Plaintiff's electronic signature was also inserted on this "form" document just as it was with all of Carvana's "September 21, 2018" sales documents which included Carvana's proffered Exhibit A.  The fact Carvana was able to mistakenly affix Plaintiff's electronic signature on a form "Thank You" letter which obviously was supposed to be from Carvana and not a letter from the Plaintiff to himself is evidence Carvana has the ability to insert Plaintiff's electronic signature to any form document in their possession.  It's telling that this "Thank You" letter was provided to Plaintiff by Carvana at the same time and along with Plaintiff's requested Denali sales documents, which dated September 21, 2018 as demonstrated above, could not have been electronically signed on this date.

Carvana's Motion is seemingly predicated at best upon incompetence and at worst an outright attempted fraud upon this court.  Inasmuch as Carvana's memorandum *Exhibit A* is a wholesale production of Carvana, LLC with Plaintiff having nothing to do with its creation, Carvana's Motion to Compel Arbitration is without any legal basis supporting the requested relief.

II.   CARVANA'S PROFFERED ARBITRATION AGREEMENT IS UNENFORCEABLE BECAUSE PLAINTIFF WAS NEVER PRESENTED WITH, NOR DID HE EXECUTE, EXHIBIT A

Motions to compel arbitration require the court to consider:  "(1) whether a valid arbitration agreement exists;  (2) whether the dispute falls within the scope of the agreement;  and (3) whether applicable contract principles subject the agreement to revocation."  State ex rel. Van Alst v. Harrell, 528 S.W.3d 442, 446 (Mo. App. 2017) (quoting Baker v. Bristol Care, Inc., 450 S.W.3d 770, 774 (Mo. banc 2014).

As set forth in section I, Carvana and Plaintiff did not enter into an arbitration agreement at the time of purchase (September 21, 2018) and therefore the first element must necessarily fail and Carvana's motion denied.  Carvana's proffered Exhibit A is fraudulent inasmuch as Carvana could not have acquired an electronic signature when delivering the vehicle on September 21, 2018 because the salesman's tablet used for accepting such electronic signatures was not functioning.  Instead, a hard copy of the sales agreement had to be printed using Plaintiff's computer and printer.  No such arbitration agreement, as represented by Carvana's Exhibit A or otherwise, was produced at the time of vehicle delivery for Plaintiff to sign.  It was precisely because of the fact Carvana was unable to accept an electronic signature

from Plaintiff at the time of vehicle delivery that necessitated a hardcopy of the sales agreement be produced contemporaneously with delivery. As such, the parties did not enter into any agreement on September 21, 2018 other than that which is attached to Plaintiff's affidavit as Exhibit A and the parties certainly did not enter into any arbitration agreement and Carvana cannot thus carry their burden of proving the existence of a valid contract and their Motion to Compel Arbitration should therefore be denied.

III.    THIS COURT SHOULD INVOKE ITS INHERENT POWERS TO SANCTION CARVANA AND AWARD PLAINTIFF HIS ATTORNEY FEES

A trial court may use its inherent powers and impose sanctions when parties act in bad faith. *A.J.H. ex rel. M.J.H. v. M.A.H.S.*, 364 S.W.3d 680, 682 (Mo. App. E.D. 2012). Trial courts are encouraged to use them "sparingly, wisely, temperately, and with judicial self-restraint." *Id.* (internal quotation marks and citation omitted). "[S]anctions imposed under the court's inherent powers should be limited to situations in which it is reasonably necessary to preserve the court's existence and protect it in the orderly administration of its business." *Rea*, 74 S.W.3d at 800 (internal quotation marks and citation omitted). A trial court abuses this discretion when its sanction serves to destroy a plaintiff's case and no evidence on the record exists to support a finding of bad faith. *See Foster v. Kohm*, 661 S.W.2d 628, 632 (Mo. App. E.D. 1983). Bad faith "embraces actual intent to mislead or deceive another," or "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *A.J.H.*, 364 S.W.3d at 683. Thus, conduct that constitutes "bad judgment or negligence" does not constitute actions performed in bad faith. *See id.* (reversing the trial court's monetary sanction because the record did not support a finding of bad faith); *see also McPherson v. U.S. Physicians Mut. Risk Retention Grp.*, 99 S.W.3d 462, 481 (Mo. App. W.D. 2003) (reversing the trial court's attorney fee award as a sanction because the evidence was insufficient to support a finding of bad faith).

By bringing a Motion predicated upon a fraudulent document Carvana is "playing fast and loose" with the trial court, undermining the integrity of the judicial process. The fact Carvana had in their possession the original hard copy sales agreement signed by Plaintiff and despite this fact decided to "manufacture" fraudulent sale documents even being so bold as to add agreements which were not

part of the originally signed hard copy sales document.  Clearly, these circumstances are evidence of, and rise to the level of, "bad faith" entitling Plaintiff to attorney fees.

IV.     CONCLUSION

Because Carvana's motion is predicated upon fraudulent documentary evidence (*Defendant's Exhibit A*) their motion should be denied and Plaintiff should be awarded attorney fees.

Respectfully Submitted,

Richard Saddler, Plaintiff (*pro se*)

1-20-2020

Date

State of: MO
County of: St. Charles
The forgoing document was acknowledged
before me 20 day of Jan 2020
Notary Public
My Commission Expires 03/13/23

K. ADELE KUBES QUALE
My Commission Expires
March 13, 2023
Franklin County
Commission #15024516

RECEIVED AND FILED
CIRCUIT COURT OF
ST. LOUIS COUNTY

2020 JAN 21 AM 9: 08

JOAN M. GILMER
CIRCUIT CLERK

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY

STATE OF MISSOURI

| | | |
|---|---|---|
| **RICHARD SADDLER** | ) | |
| **PLANTIFF,** | ) | Cause No. 19SL-CC05679 |
| **VS** | ) | |
| | ) | |
| **CARVANA, LLC** | ) | Division: 1 |
| **DEFENDANT,** | ) | |

### <u>Notice of hearing January 27 at 9am, Div. 1</u>

Comes now Richard Saddler, and his requested for hearing to be on the record for the following motions: Plaintiffs TRO and Memorandum in opposition to Defendant Carvana's Motion to Compel Arbitration

*Rule 92.02.a(3) Required Notice. Except as provided in Rule 92.02(b), no temporary restraining order shall issue without reasonable notice at least twenty-four hours before the hearing on the motion to the party against whom relief is sought.*

Appearance is required by Defendant

Richard Saddler

413 Genoa Dr.

Manchester, MO 63021

Phone: 310-428-2110

Richard Saddler

/RS/

Certificate of Service

On this 20th day of January 2020 this motion was delivered by Email to The defendants Attorneys, wbrasher@boylebrasher.com, alee@boylebrasher.com

Bill Brasher & Allison Lee of Boyle Brasher

/RS/

Richard Saddler

1   Richard Saddler, *Pro Se* Plaintiff
    295 Brightfield Drive
2   Ballwin, MO  63021
    (310) 428 - 2110
3

4

RECEIVED AND FILED
CIRCUIT COURT OF
ST LOUIS COUNTY

2020 JAN 21  AM 9: 08

JOAN M. GILMER
CIRCUIT CLERK

5              **IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
6                       **STATE OF MISSOURI**

7       **Richard Saddler**              )      **PLAINTIFF RICHARD SADDLER'S**
8                                         )      **AFFIDAVIT IN SUPPORT OF HIS**
               **Plaintiff.**             )      **MEMORANDUM IN OPPOSITION TO**
9       **vs.**                           )      **DEFENDANT CARVANA'S MOTION TO**
                                          )      **COMPEL ARBITRATION**
10      **Carvana, LLC**                  )      **Cause No. 19SL-CC05679**
11                                        )
               **Defendant.**             )      **Division No. 1**
12

13  STATE OF MISSOURI              )
14                                 ) ss.
15  COUNTY OF ST. LOUIS            )

16      I, Richard Saddler, under penalty of perjury state:

17  1.  I am submitting this Affidavit in opposition to defendant Carvana's Motion to Compel
18
19      Arbitration in the above-captioned matter.

20      2.  I am over 21 and competent to testify to the matters set forth herein.

21      3.      I know the following through personal knowledge or experience.
22
23      4.      August 1st 2018 I bought a GMC 2015 Terrain from Carvana.

24      5.      At the time of purchase and vehicle delivery I signed my sales documents
25  electronically using a tablet which the salesman brought with him.

26      6.      To the best of my recollection, I executed electronically at the time Carvana
27  delivered my vehicle were: Acknowledging  and Accepting Delivery, Retail  Installment
28

Contract, Security agreement, Carvana Care Agreement, Odometer Disclosure Statement, Gap Addendum and an Arbitration Agreement.

7.      After approximately ten to fourteen days, I decided to return this car and make a new purchase from Carvana.

8.      I found a more suitable vehicle on Carvana's website and it was agreed I would return my purchased vehicle and enter into a second purchase for a 2015 Terrain Denali ("Denali").

9.      The Denali was delivered to my residence on September 21st 2018.  At delivery, I was informed by the salesman he was unable to use his tablet and would therefore have to have me sign a "hard copy" of the sales agreement document.  The salesman stated he would need to use my home computer and printer to produce the hard copy sales agreement for me to sign.

10.      September 21, 2018 was the same day I moved into my new residence and therefore the salesman and I had to search for my printer, unpack, set up, and configure so we could utilize it to produce a second sales agreement document to sign.   The salesman who delivered my vehicle assisted me with configuring my printer and eventually the sales agreement document was copied/ printed and executed.  Attached hereto and incorporated herewith by reference marked "*Exhibit A*" is a true and correct copy of the sales agreement document I printed and executed for the salesman at the Denali delivery September 21, 2018.

11.      At the time of delivery of the Denali, Carvana did not assign ownership or otherwise transfer title to the vehicle despite my paying the full price through approved financing.

12.      Carvana stated when I was able to provide proof the Denali had successfully passed Missouri emissions certification, certificate of title to the Denali would be sent to me.  I

was instructed to provide my proof of Missouri emissions certification via email, US Postal Service and FedEx.

13.     After submitting multiple emissions certifications on October 18, 2018 and May 2, 2019 via email and US Postal Service as instructed, I was informed Carvana could not send the Denali's title because "original" smog certification documentation was required (had to be issued by the State of Missouri).  See *Exhibit B*.

14.     I did everything Carvana asked regarding providing proof of smog certification yet no assignment of title has ever been issued to me.

15.     Because of my inability to register my Denali and have the beneficial use of my purchased vehicle and after not being able to come to a resolution with Carvana, I decided to file a lawsuit seeking relief.  To assist me towards this end I requested from Carvana copies of my sales agreement documents for the Denali purchase.  Attached hereto and incorporated herewith by reference marked "*Exhibit C*" are true and correct copies of putative Denali sales documents provided to me by Carvana in response to my request.

16.     Based upon the Denali sales documents provided by Carvana (see *Exhibit C*) I drafted my first petition (St. Louis County Circuit Court Case No. 19SL-CC01864).  In this filing, I listed among sales documents I executed at the time of delivery of the Denali an arbitration agreement.  The arbitration agreement was listed among sales agreement documents I signed at the Denali delivery because I reflexively believed the documents Carvana provided were true and correct versions of what they purported to be.

17.     While unpacking boxes at my office I came across the "hard copy" sales agreement the salesman and I printed with my computer and printer during the Denali's delivery.  Upon review of the printed sales agreement I fully recollected the circumstances surrounding the second purchase from Carvana and delivery of the Denali;  to wit:  I never provided Carvana an

electronic signature on September 21, 2018. Soon I concluded I needed to refile my claims and, on August 5, 2019, withdrew my suit.

18.     Neither at the time of delivery of the Denali, nor any time thereafter, was I presented with any document(s) to signed other than that sales document attached to this affidavit and marked as *Exhibit A*.

19.     When Carvana provided my requested Denali sales documents (*Exhibit B*), accompanying this group of documents was ostensibly a "Thank You" letter written by Carvana addressed to me the contents of which were a general thank you for doing business with Carvana. This form "Thank You" letter has affixed at the signature location my electronic signature just as the other form documents Carvana provided concurrently with this document in response to my request  Attached hereto and incorporated herewith by reference marked "*Exhibit D*" is a true and correct copy of referenced "Thank You" letter.

*(Remainder of Page Intentionally Left Blank)*

1   Sworn to by Richard Saddler under penalty of perjury under the laws of the State of Missouri that

2   the foregoing is true and correct and that this affidavit is executed on January 20, 2020 in    St.

3   Louis County in the state of Missouri.

4

5   

6   _____

7   **Richard Saddler**

    **Pro Se Plaintiff**

8

9   State of Missouri

10  County and City of St. Louis

11  On this 20th day of January in the year 2020 before me K. Adele Kubes Quale, a Notary Public in

12  and for said state, personally appeared Richard Saddler, known to be the person who executed
    the within affidavit, and who acknowledged to me that he executed the same for the purpose

13  therein stated.

14

15  Notary Public

16

17  NOTARY
    SEAL
    STATE OF MISSOURI                  K. ADELE KUBES QUALE
                                       My Commission Expires
                                       March 13, 2023
18                                     Franklin County
                                       Commission #15024516

19

20

21

22

23

24

25

26

27

28

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

# BUYERS GUIDE

**IMPORTANT:** Spoken promises are difficult to enforce. Ask the dealer to put all promises in writing. Keep this form.

| GMC | Terrain | 2015 | 2GKFLZE35F6281225 |
|---|---|---|---|
| VEHICLE MAKE | MODEL | YEAR | VEHICLE IDENTIFICATION NUMBER (VIN) |

## WARRANTIES FOR THIS VEHICLE:

☐ # AS IS - NO DEALER WARRANTY

THE DEALER DOES NOT PROVIDE A WARRANTY FOR ANY REPAIRS AFTER SALE.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

☒ # DEALER WARRANTY

☐ FULL WARRANTY.

☒ LIMITED WARRANTY. The dealer will pay _100_ % of the labor and _100_ % of the parts for the covered systems that fail during the warranty period. Ask the dealer for a copy of the warranty, and for any documents that explain warranty coverage, exclusions, and the dealer's repair obligations. *Implied warranties* under your state's laws may give you additional rights.

| SYSTEMS COVERED: | DURATION: |
|---|---|
| Gasoline/Diesel Engine | 100 days or 4,189 miles whichever comes first |
| Transaxle | 100 days or 4,189 miles whichever comes first |
| Driveaxle | 100 days or 4,189 miles whichever comes first |
| Air Conditioning | 100 days or 4,189 miles whichever comes first |

## NON-DEALER WARRANTIES FOR THIS VEHICLE:

☒ MANUFACTURER'S WARRANTY STILL APPLIES. The manufacturer's original warranty has not expired on some components of the vehicle.

☐ MANUFACTURER'S USED VEHICLE WARRANTY APPLIES.

☐ OTHER USED VEHICLE WARRANTY APPLIES.

Ask the dealer for a copy of the warranty document and an explanation of warranty coverage, exclusions, and repair obligations.

☒ SERVICE CONTRACT. A service contract on this vehicle is available for an extra charge. Ask for details about coverage, deductible, price, and exclusions. If you buy a service contract within 90 days of your purchase of this vehicle, *implied warranties* under your state's laws may give you additional rights.

**ASK THE DEALER IF YOUR MECHANIC CAN INSPECT THE VEHICLE ON OR OFF THE LOT.**

**OBTAIN A VEHICLE HISTORY REPORT AND CHECK FOR OPEN SAFETY RECALLS.** For information on how to obtain a vehicle history report, visit ftc.gov/usedcars. To check for open safety recalls, visit safercar.gov. You will need the vehicle identification number (VIN) shown above to make the best use of the resources on these sites.

**SEE OTHER SIDE for important additional information, including a list of major defects that may occur in used motor vehicles.**

**Si el concesionario gestiona la venta en español, pídale una copia de la Guía del Comprador en español.**

*Exhibit A*

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

Here is a list of some major defects that may occur in used vehicles.

**Frame & Body**
Frame-cracks, corrective welds, or rusted through
Dog tracks—bent or twisted frame

**Engine**
Oil leakage, excluding normal seepage
Cracked block or head
Belts missing or inoperable
Knocks or misses related to camshaft lifters and push rods
Abnormal exhaust discharge

**Transmission & Drive Shaft**
Improper fluid level or leakage, excluding normal seepage
Cracked or damaged case which is visible
Abnormal noise or vibration caused by faulty transmission or drive shaft
Improper shifting or functioning in any gear
Manual clutch slips or chatters

**Differential**
Improper fluid level or leakage, excluding normal seepage
Cracked of damaged housing which is visible
Abnormal noise or vibration caused by faulty differential

**Cooling System**
Leakage including radiator
Improperly functioning water pump

**Electrical System**
Battery leakage
Improperly functioning alternator, generator, battery, or starter

**Fuel System**
Visible leakage

**Inoperable Accessories**
Gauges or warning devices
Air conditioner
Heater & Defroster

**Brake System**
Failure warning light broken
Pedal not firm under pressure (DOT spec.)
Not enough pedal reserve (DOT spec.)
Does not stop vehicle in straight line (DOT spec.)
Hoses damaged
Drum or rotor too thin (Mfgr. Specs)
Lining or pad thickness less than 1/32 inch
Power unit not operating or leaking
Structural or mechanical parts damaged

**Air Bags**

**Steering System**
Too much free play at steering wheel (DOT specs.)
Free play in linkage more than 1/4 inch
Steering gear binds or jams
Front wheels aligned improperly (DOT specs.)
Power unit belts cracked or slipping
Power unit fluid level improper

**Suspension System**
Ball joint seals damaged
Structural parts bent or damaged
Stabilizer bar disconnected
Spring broken
Shock absorber mounting loose
Rubber bushings damaged or missing
Radius rod damaged or missing
Shock absorber leaking or functioning improperly

**Tires**
Tread depth less than 2/32 inch
Sizes mismatched
Visible damage

**Wheels**
Visible cracks, damage or repairs
Mounting bolts loose or missing

**Exhaust System**
Leakage

**Catalytic Converter**

---

**DEALER NAME**
CARVANA, LLC

**ADDRESS**
63 PIERCE RD                    WINDER GA 30680-7280

**TELEPHONE**                   **EMAIL**
8003334554                      DL-CarvanaPhoenixAdvocate@carvana.com

FOR COMPLAINTS AFTER SALE, CONTACT:
Carvana Customer Advocates at: 1.800.333.4554 or
1930 W Rio Salado Pkwy, Tempe, AZ 85281

---

**IMPORTANT:** The information on this form is part of any contract to buy this vehicle. Removing this label before consumer purchase (except for purpose of test-driving) violates federal law (16 C.F.R. 455).

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

# GAP ADDENDUM TO
# RETAIL INSTALLMENT CONTRACT

| CONTRACT NUMBER | |
|---|---|
| CVGA | 1189373 |

**A. TRANSACTION INFORMATION**

| Customer's Name | | | | |
|---|---|---|---|---|
| | Richard Saddler | | | |

| Address | City | | State | ZIP |
|---|---|---|---|---|
| 701 Ridgeside Dr # L | Ballwin | | MO | 63021 |

| Phone Number | Email Address |
|---|---|
| 3104282110 | |

| Creditor's Name | Creditor's Policy # | Creditor's Phone Number |
|---|---|---|
| Carvana | | 1 (800) 333-4554 |

| Creditor's Address | City | | State | ZIP |
|---|---|---|---|---|
| 1930 W. Rio Salado Pkwy | Tempe | | AZ | 85281 |

| Vehicle Year / Make / Model | | | Vehicle Identification Number | Vehicle Class |
|---|---|---|---|---|
| 2015 | GMC | Terrain | 2GKFLZE35F6281225 | 01 |

| Manufacturer's Suggested Retail Price ("MSRP") | Current Odometer | Deal No. | Use (Personal, Business, or Commercial) |
|---|---|---|---|
| 21,700.00 | 63770 | CVGA 1189373 | |

| GAP Addendum Price | Term of GAP Addendum | Amount Financed | Inception Date |
|---|---|---|---|
| 695.00 | 72 | 26,489.02 | 09/21/18 |

This Guaranteed Asset Protection ("GAP") Contract Addendum ("GAP Addendum") amends the Retail Installment Contract ("RIC"). This GAP Addendum is between the Customer ("I", "You", or "Your") and the Creditor ("We", "Us", or "Our"). The administrator named herein will service this GAP waiver. Although not required to do so, You have elected to participate in Our GAP Program. GAP does not take the place of insurance on the vehicle. You are responsible for maintaining collision and comprehensive insurance for the full value of the vehicle and any other insurance required by the RIC or applicable law. You are responsible for all notifications or claims that are required to be filed with Your automobile insurance company. We will not process or handle Your insurance claims for You.

**B.   TERMINATION OF ADDENDUM**

This Addendum will terminate as of the earliest date that any of the following events occur: 1) the date Your RIC is scheduled to terminate; 2) upon payment in full of the RIC; 3) expiration of any redemption period following the repossession or surrender of the Covered Vehicle, however, in the event of acceleration or payment in full of the unpaid balance, and upon Our notice thereof, You will receive a refund of the cost of this Addendum, calculated from the date of the acceleration or demand for payment in full; 4) after a Constructive Total Loss or theft of the Covered Vehicle occurs and Our rights against You for the amount due under a payable loss have been waived; 5) the date the RIC is prepaid or the RIC is refinanced, however, in the event of prepayment, and upon Our notice thereof, You will receive a refund of the cost of this Addendum based on the prepayment date; or 6) upon the occurrence of a denial of benefits based on an Exclusion, from which You will receive a refund based upon such Exclusion. It is Your responsibility to notify Us or Our Administrator, in writing, of Your request to cancel this coverage and to request a refund/credit of the GAP charge which, at Our option, may be made to satisfy Your obligations under the RIC.

**YOU ACKNOWLEDGE AND AGREE THAT YOUR ACCEPTANCE OF THIS GAP ADDENDUM IS VOLUNTARY AND IS NOT REQUIRED IN ORDER FOR YOU TO OBTAIN CREDIT, DOES NOT IMPACT YOUR ABILITY TO OBTAIN ANY PARTICULAR OR MORE FAVORABLE CREDIT TERMS, AND HAS NO EFFECT ON THE TERMS OF THE RELATED SALE OF THIS VEHICLE.** This coverage may decrease over the term of Your RIC and may not extend for the full term of Your RIC. You may wish to consult an alternative source to determine whether similar coverage may be obtained and at what cost. You also acknowledge that You have read and understand this Addendum and its provisions. No other verbal representations have been made to You that differ from these written provisions. This Addendum includes a binding arbitration clause. You should carefully read the back of this Addendum for additional information on eligibility, requirements, conditions and exclusions that could prevent You from receiving benefits under this Addendum.

**C.   SIGNATURES**

I have read, understand, and accept the terms and conditions of this Addendum, and agree to be bound thereby:

_____   09/21/18
Customer                                                                          Date

_____   09/21/18
Signature of Creditor                                                      Date



SilverRock

GAP (CV-MuST) 03-2017

You may contact Administrator during normal business hours at the
following number or address: SilverRock Automotive, Inc
P.O. Box 29087, Phoenix, AZ 85038-9087 • (888) 849-0681

Page 1 of 3

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

# GAP ADDENDUM TO
# RETAIL INSTALLMENT CONTRACT

| CONTRACT NUMBER | |
|---|---|
| CVGA | 1189373 |

## TERMS AND CONDITIONS

### D.  WAIVER

(1) In the event of a Constructive Total Loss to the Covered Vehicle, We agree to waive Our rights against You for the GAP Amount then due under the RIC. You will remain responsible for payment of any items stated under Exclusions.

(2) All GAP Amount claims must be reported to Us or Our Administrator within 90 days of receiving settlement from the Primary Carrier; or if no Primary Carrier coverage is in effect on the date of loss, within 90 days of the accident or theft. No payment for payable loss will be made by Us if the claim is not reported within these stated time periods.

### E.  CANCELLATION

(1) **YOUR RIGHT TO CANCEL:** You have the unconditional right to cancel and terminate this optional Addendum for a refund/credit of the unearned portion of the charge for this Addendum at any time. If any termination occurs within 30 days of the Addendum purchase You will receive a full refund/credit of the Addendum cost, provided no loss has occurred. After 30 days, You will receive a refund/credit of the Addendum cost calculated by the pro rata method, or by the refund method as may be required by state or federal law. All refunds will be applied to satisfy Your obligations under the RIC. To cancel the Addendum and request a refund/credit, You must contact Us or Our Administrator, in writing, at the address shown below.

(2) If You do not receive the refund/credit within 60 days of notice of cancellation/termination, contact Us or Our Administrator.

### F.  CLAIMS PROCEDURES

(1) In the event of a Constructive Total Loss, You must notify and provide all of the following to Our Administrator, SilverRock Automotive Inc (at the address shown below): 1) a complete copy of the primary insurance settlement, including the valuation report; 2) a copy of the original RIC and this Addendum; 3) A copy of the accident/police report; 4) a copy of Your automobile insurance policy from Your Primary Carrier; 5) a copy of the payoff from the Creditor as of the date of loss; 6) a copy of the insurance settlement check from Your Primary Carrier; 7) a copy of the damage estimate; 8) a copy of the payment history for the RIC, 9) a list of refundable items, and 10) a copy of the Primary Carrier's denial of claim (if applicable). You will not be required to provide additional documentation that is not listed in this GAP Addendum.

(2) Neither Our Administrator nor We will obtain this information for You. The Administrator or We must receive this documentation within 90 days of settlement by Your Primary Carrier. No payment will be made if this documentation is not provided to Our Administrator or Us within this stated time period.

### G.  ASSIGNMENT

(1) The GAP Addendum will follow the RIC with no subrogation rights against the Customer, if the RIC is sold or assigned by Us.

### H.  DEFINITIONS

(1) **Actual Cash Value (ACV).** The retail value of the Covered Vehicle, on the date of loss, as listed in a national or regional guide, such as National Automobile Dealers Association (NADA) or, at the Administrator's discretion, the Administrator may use an equivalent national or regional guide for the territory in which the Covered Vehicle is principally garaged. For a Covered Vehicle which has no retail value available, or is located in territories where NADA or an equivalent national or regional guide is not customarily used, ACV will be determined using the best information available to Our Administrator, or which Administrator reasonably believes accurately reflects the retail value of the Covered Vehicle and is customarily used as the basis for establishing ACV for Covered Vehicle in the territory of the Covered Vehicle location.

(2) **Constructive Total Loss.** A direct and accidental loss of or damage of Covered Vehicle, which meets one of these criteria: 1) the total cost to repair the Covered Vehicle is greater than the ACV of the Covered vehicle immediately prior to the date of loss; or 2) the Covered Vehicle is stolen and is not recovered within 30 days from the date a police report was filed, and Your Primary Carrier declares the Covered Vehicle a total loss. In the case there is no primary insurance coverage, and only upon reasonable advanced notice, the Covered Vehicle must be available for the Administrator's inspection or appraisal to determine if the Covered Vehicle is a Constructive Total Loss. If the Covered Vehicle is not available for inspection or appraisal, then the claim will not be covered. Notwithstanding the foregoing, inspection or appraisal by the Administrator will not be required if the Covered Vehicle is stolen and is not recovered within 30 days from the date a police report was filed, and Your Primary Carrier declares the Covered Vehicle a total loss.

(3) **Covered Vehicle.** Any four-wheel private passenger automobile, van, or light truck, as described in the RIC, utilized for personal purposes. This definition is subject to the Exclusions provisions. If benefits under this Addendum are denied because it is determined that Your vehicle is not a Covered Vehicle as defined herein, then You will receive a full refund of the cost of this Addendum upon denial of such claim for benefits.

(4) **Creditor:** The seller of the Covered Vehicle and holder of the RIC.

(5) **Date of Loss.** The date on which Covered Vehicle is reported stolen or incurs physical damage that is severe enough to constitute a Constructive Total Loss.

(6) **Delinquent Payment.** Any payment, as described in the RIC, which remains unpaid for a period of more than 30 days after the due date stated in the RIC. The delinquent payment will be determined as of and limited to amounts past due on the date of loss.

(7) **RIC.** The contract which represents the financing agreement between Us and You for the purchase of the Covered Vehicle, and which explains the terms, conditions, inception date, and expiration date of the financing agreement.

(8) **GAP Amount.** The difference between the Net Payoff and the Primary Carrier's physical damage insurance settlement for a Constructive Total Loss, or if the Covered Vehicle was uninsured at the time of the Constructive Total Loss, then the difference between the Net Payoff and the Actual Cash Value. The GAP Amount includes the amount of Your physical damage insurance deductible up to $1,000.

(9) **Net Payoff.** The amount of Our interest as of the date of loss, as represented by the portion of Your unpaid balance according to the original payment schedule of the RIC that is secured by collateral subject to the Limitations. The amount does not include any unearned finance charges; late charges; any delinquent payments; uncollected service charges; refundable prepaid taxes and fees; the recoverable portion of financed insurance charges; or the recoverable portion of financed amounts for unearned insurance premiums or refundable charges (including, but not limited to credit life, vehicle service coverages/warranties and guaranteed automobile protection charges) that are owed by You on the date of loss; and amounts that are added to the RIC balance after the inception date of the RIC.

(10) **Primary Carrier.** The insurance company that: is selected by You to provide physical damage coverage on the vehicle; or provides liability coverage to any person who has caused Your vehicle to incur a Constructive Total Loss.

(11) **Territory.** This coverage applies only to payable losses sustained while the Covered Vehicle is: 1) within the United States of America (U.S.), its territories or possessions; 2) in Canada; or 3) being transported between any of the previously stated.

### I.  EXCLUSIONS

This Addendum will not provide coverage for loss:

(1) Resulting from losses occurring prior to the effective date of this Addendum.
(2) Resulting from confiscation of Covered Vehicle by a government body or public official.
(3) Caused by theft, unless You or We file a police report.
(4) Resulting from being operated, used, or maintained in any race, speed contest, or other contest.
(5) Occurring after the Covered Vehicle has been repossessed.
(6) For any amounts deducted from the Primary Carrier's settlement due to wear and tear, prior damage, unpaid insurance premiums, salvage, towing and storage and other condition adjustments.

### J.  ARBITRATION

IF THE RIC INCLUDES AN ARBITRATION PROVISION, THEN ALL DISPUTES BETWEEN YOU AND US RELATING TO THIS ADDENDUM ARE SUBJECT TO THE ARBITRATION PROVISIONS OF THE RIC, WHICH PROVISIONS ARE HEREBY INCORPORATED BY REFERENCE.

### K.  FRAUD AND MISREPRESANTATION

This Addendum is issued in reliance upon the truth of all representations made by You. We will not waive the GAP Amount as to any RIC where You: 1) intentionally concealed or misrepresented any material fact; 2) engaged in fraudulent conduct; or 3) made a materially false statement relating to submitting a claim. If You have concealed or misrepresented any material fact(s) concerning this coverage, or in case of fraud, attempted fraud, or the false swearing by affecting any matter relating to this coverage, whether before or after payable loss, this Addendum may be terminated and all charges will be returned.

GAP (CV-MuSt) 03-2017

You may contact Administrator during normal business hours at the following number or address: SilverRock Automotive, Inc
P.O. Box 29087, Phoenix, AZ 85038-9087 • (888) 849-0681

Page 2 of 3

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

# GAP ADDENDUM TO
# RETAIL INSTALLMENT CONTRACT

| CONTRACT NUMBER | |
|---|---|
| CVGA | 1189373 |

## I.   STATE – SPECIFIC PROVISIONS

(1) **Alabama:** *The following provision is hereby added:* "The cost of this GAP Addendum is not regulated by You and You should determine whether the cost of this GAP Addendum is reasonable."

(2) **Arkansas:** None

(3) **Arizona:** None

(4) **California:** None

(5) **Colorado:** *The following provision is hereby added:* "GAP is not a substitute for collision or property insurance. You may wish to consult an insurance agent to determine whether similar coverage may be obtained and at what cost. GAP is not a substitute for collision or property damage insurance. If this transaction contains a fee or premium for guaranteed automobile protection, all holders and assignees of this consumer credit transaction are subject to all claims and defenses which the consumer could assert against the original Creditor resulting from the consumer's purchase of guaranteed automobile protection."

(6) **Georgia:** None

(7) **Hawaii:** None

(8) **Florida:** None

(9) **Illinois:** None

(10) **Indiana:**
(a) *The following provision is hereby added:* "You may be able to obtain GAP coverage from Your primary insurance carrier."
(b) *The definition for the term "Actual Cash Value" is deleted and hereby replaced with the following:* "Actual Cash Value (ACV)." The value of the covered vehicle, on the date of loss, as established by the primary insurance carrier. If there is no primary insurance coverage in place at the time of a claim, then the applicable NADA value or its equivalent shall be used."
(c) *The following provision is hereby added:* "For additional information or complaints, You may contact the Indiana Department of Financial Institutions, 30 South Meridian Street, Suite 200, Indianapolis, Indiana 46204, (317) 232-3955, http://www.in.gov/dfi."
(d) *The following provision is hereby added to Section I, Exclusions:* "RICs where the amount financed, less the cost of the GAP Waiver, the cost of credit insurance, and the cost of warranties or service agreements, is less than 80% of MSRP for a new vehicle or the NADA average retail value for a used vehicle are not eligible for participation in this GAP program."

(11) **Iowa:** None

(12) **Kansas:**
(a) *The following provision is hereby added:* "The GAP coverage may not cancel or waive the entire amount owing at the time of loss."
(b) *The following provision is hereby added:* "Kansas consumers with questions or complaints may contact the Office of the State Bank Commissioner, 700 S.W. Jackson #300, Topeka, KS 66603, (785) 296-2266 or toll free 1-877-387-8523."
(c) *Section H(1) is hereby deleted and replaced with the following:* "Actual Cash Value (ACV). The value established by the primary insurance carrier. If there is no primary insurance coverage at the time of the loss, the market value of the Covered Vehicle will be determined by the National Automobile Dealers Association ("NADA") Official Used Car Guide or equivalent."

(13) **Kentucky:** None

(14) **Louisiana:**
(a) *The following provision is hereby added to Section E ("Cancellation"):* "In order to receive a refund due in the event of early cancellation of this GAP Waiver Addendum after the first thirty (30) days from purchase, You must provide a written request to cancel to the Administrator or Creditor within ninety (90) days of the occurrence of the event terminating the GAP Waiver Addendum. If You elect to cancel this GAP Waiver, no cancellation fee shall be charged."
(b) *Section D(1) is hereby deleted, and replaced with the following:* "In the event of a Constructive Total Loss to the Covered Vehicle, We agree to waive Our rights against You for the amount due under a payable loss. In addition to the provisions of payable loss, You will remain responsible for payment of any items stated under Exclusions. Upon the satisfaction of each of Your duties in Section F ("Claims Procedures") We agree to waive Our rights against You for the amount due under a payable loss within 60 days of the incident or 30 days from filing of the police report."
(c) *Section I(5) is hereby deleted and replaced with the following:* "For any amounts deducted from the Primary Carrier's settlement due to prior damage, unpaid insurance premiums, salvage, towing and storage and other condition adjustments."

(15) **Maryland:**
(a) *Section H(8) is hereby deleted and replaced with the following:* "Net Payoff. The amount of Our interest as of the date of loss, as represented by the portion of Your unpaid balance according to the original payment schedule of the RIC that is secured by collateral subject to the

limitations. The amount does not include any unearned finance charges; late charges; any delinquent payments; uncollected service charges; refundable prepaid taxes and fees; the recoverable portion of financed insurance charges; or the recoverable portion of financed amounts for unearned insurance premiums or refundable charges (including, but not limited to credit life, vehicle service coverages/warranties and guaranteed automobile protection charges) that are owed by You on the date of loss and that are actually refunded to the buyer or credited as a reduction to the loan balance; and amounts that are added to the RIC balance after the inception date of the RIC."
(b) *The following provision is hereby deleted from Section I, Exclusions:* For any amounts deducted from the Primary Carrier's settlement due to wear and tear, prior damage, unpaid insurance premiums, salvage, towing and storage and other condition adjustments.

(16) **Michigan:** None

(17) **Mississippi:** None

(18) **Missouri:** None

(19) **Nebraska:** *The following provision is hereby added:* "A guaranteed asset protection waiver is not insurance and is not regulated by the Department of Insurance, and the guaranteed asset protection waiver remains a part of the finance agreement upon the assignment, sale, or transfer of such finance agreement by the Creditor or the Creditor's designee."

(20) **Nevada:** *The following provision is hereby added:* **"THIS WAIVER IS NOT AN INSURANCE POLICY. A guaranteed asset protection waiver is not a policy of liability or casualty insurance and does not satisfy the requirement to maintain liability insurance pursuant to NRS 485.185. Failure to make a timely payment under the terms of the finance agreement may void the guaranteed asset protection waiver."**

(21) **New Hampshire:** *The following provision is hereby added:* "In the event that You do not receive satisfaction under this contract, You may contact the New Hampshire insurance department at 1-800-852-3416 or 21 South Fruit Street, Suite 14, Concord, NH 03301".

(22) **North Carolina:** None

(23) **Ohio:** None

(24) **Oklahoma:** None

(25) **Pennsylvania:** None

(26) **South Carolina:** None

(27) **Tennessee:** None

(28) **Utah:**
(a) *The following provision is added to Section J:* "ANY MATTER IN DISPUTE BETWEEN YOU AND CREDITOR MAY BE SUBJECT TO ARBITRATION AS AN ALTERNATIVE TO COURT ACTION PURSUANT TO THE RULES OF (THE AMERICAN ARBITRATION ASSOCIATION OR OTHER RECOGNIZED ARBITRATOR), A COPY OF WHICH IS AVAILABLE ON REQUEST FROM CREDITOR. ANY DECISION REACHED BY ARBITRATION SHALL BE BINDING UPON BOTH YOU AND CREDITOR. THE ARBITRATION AWARD MAY INCLUDE ATTORNEY'S FEES IF ALLOWED BY STATE LAW AND MAY BE ENTERED AS A JUDGEMENT IN ANY COURT OF PROPER JURISDICTION."
(b) *The following provision is added:* "This GAP Waiver is subject to limited regulation by the Utah Insurance Commissioner. A complaint regarding this GAP Waiver may be submitted to the Utah Insurance Commissioner."

(29) **Virginia:** None

(30) **West Virginia:** None

(31) **Wisconsin:**
(a) *Section E ("Cancellation") is hereby deleted in its entirety and replaced with the following:* "YOUR RIGHT TO CANCEL: You have the unconditional right to cancel and terminate this optional Addendum for a refund/credit of the unearned portion of the charge for this Addendum at any time. If any termination occurs within 30 days of the Addendum purchase You will receive a full refund/credit of the Addendum cost, or a full credit of the Addendum cost plus the amount of applicable finance charges, provided no loss has occurred. After 30 days, You will receive a refund/credit of the Addendum cost calculated by the Pro Rata method, or by the refund method as may be required by state or federal law. We will refund all charges to the Creditor. To cancel the Addendum and request a refund/credit, You must contact the Creditor, in writing, at the address shown above. If You do not receive the refund/credit within 60 days of notice of cancellation/termination, contact the GAP Administrator stated above.

 SilverRock

GAP (CV-MuSt) 03-2017

You may contact Administrator during normal business hours at the following number or address: SilverRock Automotive, Inc
P.O. Box 29087, Phoenix, AZ 85038-9087 • (888) 849-0681

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

 **CARVANA** | **Carvana™ Limited Warranty**

| LIMITED WARRANTY NUMBER |
| --- |
| CVLW  1189373 |

## PLEASE KEEP A COPY OF THIS LIMITED WARRANTY IN YOUR VEHICLE

### CONTRACT HOLDER

| CUSTOMER'S NAME | CO-CUSTOMER'S NAME | | |
| --- | --- | --- | --- |
| Richard Saddler | N/A | | |
| ADDRESS | CITY | STATE | ZIP |
| 701 Ridgeside Dr # L | Ballwin | MO | 63021 |
| PHONE NUMBER | EMAIL ADDRESS | | |
| 3104282110 | | | |

### VEHICLE INFORMATION

| YEAR | MAKE | MODEL | | |
| --- | --- | --- | --- | --- |
| 2015 | GMC | Terrain | | |
| VIN | CURRENT ODOMETER | VEHICLE PURCHASE DATE | VEHICLE PURCHASE PRICE | |
| 2GKFLZE35F6281225 | 63770 | 09/21/18 | 21,700.00 | |

### DEALERSHIP

| DEALERSHIP NAME | PHONE NUMBER | DEALERSHIP NUMBER | |
| --- | --- | --- | --- |
| CARVANA, LLC | 8003334554 | 20002 | |
| ADDRESS | CITY | STATE | ZIP |
| 63 PIERCE RD | WINDER | GA | 30680-7280 |

I have read and understand this Limited Warranty ("Limited Warranty"):

| | | |
| --- | --- | --- |
| _____ | 09/21/18 | _____ |
| Signature of Customer | Limited Warranty Effective Date | Signature of Dealer Representative |

## COVERAGE: 100 DAY/4,189 MILE LIMITED WARRANTY

(1) Coverage Term - This portion of the Coverage ends with either of the following, whichever occurs first: (i) 100 days from Vehicle Purchase Date or (ii) when Your Vehicle has been driven 4,189 miles measured from the Current Odometer reading (indicated above).

(2) Covered Parts – Repairs on all assemblies and parts are covered on Your Vehicle under the 100 Day/4,189 Mile Limited Warranty except the following items or conditions, which are excluded and not covered unless otherwise required by state law:

- Interior or Exterior Cosmetic Imperfections
- Replaceable/Wearable Parts
- Recommended Maintenance
- Aftermarket Accessories

(3) Deductible - $50 per each Repair Visit.

## DEFINITIONS

(1) "Administrator" means SilverRock Automotive Inc, PO Box 29087, Phoenix, AZ 85038-9087, Toll Free: (866) 628-3905.

(2) "Breakdown" means that event caused by the total failure of any Covered Part to work as it was designed to work in normal service due to defects in material or workmanship; provided, however, such meaning is specifically limited by those certain conditions under which a failure of a Covered Part is not deemed a Breakdown as identified in the section captioned "Exclusions".

(3) "Coverage" means the 100 Day/4,189 Mile Limited Warranty as described herein, subject to these terms and conditions.

(4) "Covered Part" means an item listed as a Covered Part in the applicable "Coverage" sections above.

(5) "Customer", "Co-Customer", "You", and "Your" mean the individual(s) identified in this Limited Warranty.

(6) "Dealership", "We", "Us" and "Our" mean Carvana, LLC. This Limited Warranty is provided to You by Us.

(7) "Interior or Exterior Cosmetic Imperfections" means any physical defects on your vehicle that do not affect the drivability or safety of the vehicle.

(8) "Recommended Maintenance": means any normal or scheduled maintenance – the parts and services that all vehicles routinely need. This includes, lubrication, engine tune-ups, replacing filters of any kind, coolant, spark plugs, bulbs or fuses (unless those costs result from a covered repair) and cleaning and polishing.

(9) "Replaceable/Wearable Parts" means any part that is designed to wear down or be replaced with general maintenance of the vehicle. Wearable components include but not limited to your drive belt, tires, brake pads, brake rotors, clutch material (in manual transmissions), wiper blades and fluids.

(10) "Repair Visit" means a visit to a repair facility to perform a diagnosis, teardown, or a covered repair.

(11) "Your Vehicle" means the Customer's vehicle identified in this Limited Warranty.

 **SilverRock.**

You may contact the Administrator during normal business hours at the following number or address:
P.O. Box 29087, Phoenix, AZ 85038-9087• (866) 628-3905

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

 **CARVANA**  |  **Carvana™ Limited Warranty**

| LIMITED WARRANTY NUMBER |
|---|
| CVLW   1189373 |

## YOUR OBLIGATIONS

(1) In order for this Limited Warranty to remain in force, You must properly operate, care for and maintain Your Vehicle as recommended by Your Vehicle's manufacturer.

(2) Either You or the repair facility must obtain the Administrator's authorization number prior to beginning any diagnosis, teardown, or covered repair.

(3) You are responsible for paying the Deductible indicated for each Repair Visit.

## OUR OBLIGATIONS

(1) If a covered Breakdown of Your Vehicle occurs during the term of this Limited Warranty, We will:

   (a) Repair or replace, as the Administrator deems appropriate, the Covered Part(s) which caused the Breakdown if You have met Your obligations and if the Breakdown is not excluded under the Exclusions section. Replacement parts may be of like kind and quality, subject to Administrator's discretion. This may include the use of new, remanufactured or used parts as determined by the Administrator.

   (b) Reimburse You for a rental car at the rate of up to $40.00 per day for a maximum of five (5) days per Breakdown or series of Breakdowns related in time or cause. The rental car reimbursement benefit is calculated using the total labor time required to repair the Breakdown(s), such that each set of up to (8) labor hours qualifies You for one (1) day of rental car reimbursement. Required labor time is determined from the national repair manual in use by the repair facility. To receive rental benefits you must supply Administrator with Your receipt from a licensed rental agency.

   (c) Reimburse You for towing required due to a covered Breakdown. Limit $75 per occurrence.

## WHAT TO DO IF YOU HAVE A BREAKDOWN – CALL TOLL FREE (866) 628-3905

(1) In the event of a Breakdown, follow this step by step procedure:

   (a) Use all reasonable means to protect Your Vehicle from further damage. This may require You to stop Your Vehicle in a safe place, turn off the engine, and have Your Vehicle towed.

   (b) Instruct Your repair facility to contact the Administrator at the number shown below for instructions before any repairs are started on Your Vehicle.

   (c) Furnish the repair facility or Administrator with such information as this Limited Warranty may reasonably require. This includes receipts for towing and signed repair orders (indicating dates and mileage).

(2) If Your Vehicle requires an emergency repair outside of the Administrator's normal business hours, then You must fulfill Your Obligations and retain any replaced parts for the Administrator's inspection. You must contact the Administrator the next business day for instructions on submitting the claim. For an emergency repair to a Covered Part Your claim will not be denied solely for lack of prior authorization. "Emergency repair" means only repair outside of Administrator's normal business hours.

## COVERAGE EXCLUSIONS

(1) All parts or services not specifically listed as Covered Parts under the applicable Covered Parts section of this Limited Warranty are not covered.

(2) This Limited Warranty provides no benefits or coverage and We have no obligation under this Limited Warranty for:

   (a) A Breakdown caused by lack of customary, proper, or manufacturer's specified maintenance.

   (b) A Breakdown caused by contamination of or lack of proper fuels, fluids, coolants or lubricants, including a Breakdown caused by a failure to replace seals or gaskets in a timely manner.

   (c) A Breakdown caused by towing a trailer, another vehicle or any other object unless Your Vehicle is equipped for this use as recommended by the manufacturer.

   (d) Repair of any parts during a covered repair which are not necessary to the completion of the covered repair or were not damaged by the failure of a Covered Part. Such replacement is considered betterment and is not covered.

   (e) A Breakdown caused by or involving modifications or additions to Your Vehicle or Covered Parts unless those modifications or additions were performed or recommended by the manufacturer.

   (f) A Breakdown caused by or involving off-roading, misuse, abuse, lift kits, lowering kits, oversize or undersize tires, racing components, racing or any form of competition.

   (g) Any repair which would normally be provided by Your Vehicle manufacturer, a repair shop or part supplier under their respective warranty(s).

   (h) Costs or other damages caused by the failure of a part not listed under Covered Parts.

   (i) Damage to Your Vehicle caused by continued vehicle operation after the failure of a Covered Part.

   (j) Any liability, cost or damages You incur or may incur to any third parties other than for Administrator approved repair or replacement of Covered Parts which caused a Breakdown.

   (k) A Breakdown caused by overheating, rust, corrosion, or physical damage.

   (l) A Breakdown or damage to Your Vehicle caused by collision, fire, electrical fire or meltdown, theft, freezing, vandalism, riot, explosion, lightning, earthquake, windstorm, hail, water, flood or acts of the public enemy or any government authority, or for any hazard insurable under standard physical damage insurance policies whether or not such insurance is in force respecting Your Vehicle.

   (m) A Breakdown not occurring in the United States or Canada.

   (n) Loss of use, loss of time, lost profits or savings, inconvenience, commercial loss, or other incidental or consequential damages or loss that results from a Breakdown.

   (o) Liability for damage to property, or for injury to or death of any person arising out of the operation, maintenance, or use of Your Vehicle whether or not related to a Breakdown.

 SilverRock

You may contact the Administrator during normal business hours at the following number or address:
P.O. Box 29087, Phoenix, AZ 85038-9087• (866) 628-3905

WTY (CV-MuSt) 11-2017

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

 **CARVANA** | ### Carvana™ Limited Warranty

| LIMITED WARRANTY NUMBER |
|---|
| CVLW   1189373 |

(p)  Any cost or other benefit for which the manufacturer has announced its responsibility through any means including public recalls or factory service bulletins.

(q)  Any part not covered by, or excluded by Your Vehicle's manufacturer's warranty.

(r)  Adjustments of or to, repair or replacement of any Covered Part if a Breakdown has not occurred or if the wear on that part has not exceeded the field tolerances allowed by the manufacturer.

(s)  A Breakdown if your odometer fails, or for any reason does not record the actual mileage of Your Vehicle after purchase date and You do not have it repaired and the mileage certified within thirty (30) days of failure date.

(t)  A Breakdown if Your Vehicle is used for business, deliveries, construction, or commercial hauling; Your Vehicle is used as a postal vehicle, taxi, police car or other emergency vehicle; You rent Your Vehicle to someone else; Your Vehicle is equipped with a snow plow or used to plow snow; You are using or have used or modified Your Vehicle in a manner which is not recommended by the Vehicle manufacturer.

(u)  Exclusion of Airbags: We disclaim any knowledge of, and make no representation or warranty as to the condition or operability of the airbag(s) on the Vehicle unless otherwise disclosed to you on the AutoCheck Vehicle History Report. You acknowledge that We have not made any representations, oral or in writing, as to the condition or operability of the airbag(s), and You accept the Vehicle without representation or warranty from us. You further acknowledge that You had the opportunity to have the airbag(s) checked by someone of your choice prior to the completion of the sale.

## OTHER IMPORTANT PROVISIONS

(1)  This Limited Warranty will terminate when You sell Your Vehicle or when Your Vehicle reaches the time or mileage limitation, whichever occurs first.

(2)  This Limited Warranty and its benefits are not transferable to any other vehicle owner and apply only to the Customer named above.

(3)  All implied warranties which may arise under state law, including all implied warranties of merchantability and fitness for a particular purpose, are limited to the duration of this Limited Warranty. Some states do not allow limitations on how long an implied warranty lasts so the above limitations or exclusions may not apply to you.

(4)  This Limited Warranty does not cover any incidental, consequential, punitive, or other special damages. Some states do not allow the limitation or exclusion of incidental or consequential damages, so the above limitation or exclusion may not apply to you.

(5)  This Limited Warranty gives You specific legal rights, and you may also have other rights which vary from State to State.





WTY (CV-MuSt) 11-2017

You may contact the Administrator during normal business hours at the following number or address:
P.O. Box 29087, Phoenix, AZ 85038-9087• (866) 628-3905

Page 3 of 3

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

**MO-102 10/10/2015**

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary | |
|---|---|---|---|
| CARVANA, LLC | Richard Saddler | No. | 2000151880 |
| 63 PIERCE RD | 701 Ridgeside Dr # L | Date | 09/21/18 |
| WINDER GA 30680-7280 | Ballwin MO 63021 | | |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of<br>$ 0.00 |
|---|---|---|---|---|
| 12.64 % | $ 11,415.51 | $ 26,489.02 | $ 37,904.53 | $ 37,904.53 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 71 | $ 527.00 | monthly beginning  10/21/18 |
| 1 | $ 487.53 | 09/21/24 |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If you fail to pay your scheduled payment, in full, within 15 days of its due date, you agree to pay: 1. a late charge of $5.00, if the amount of your scheduled payment is $25.00 or less; 2. otherwise, a late charge of 5% of the amount of your scheduled payment, subject to a minimum late charge of $10.00 and a maximum late charge of $25.00.

**Prepayment.** If you pay off this Contract early, you ☐ may ☒ will not  have to pay a Minimum Finance Charge.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2015 | GMC | Terrain | SUV | 2GKFLZE35F6281225 | 63770 |

☐ New  ☒ Used  ☐ Demo

Other:
N/A

## Description of Trade-In

| N/A | N/A | N/A | N/A |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

## Conditional Delivery

☐ Conditional Delivery. If checked, you agree that the following agreement regarding securing financing ("*Agreement*") applies: _____ N/A _____
_____ N/A _____ . The *Agreement* is part of this Contract. The *Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.*

## Sales Agreement

**Payment.** You promise to pay us the principal amount of
$ _____ 26,489.02 _____ plus finance charges accruing on the unpaid balance at the rate of _____ 12.64 _____ % per year from the date of this Contract until paid in full. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed.*

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

☐ Minimum Finance Charge. You agree to pay a minimum finance charge of
$ _____ N/A _____ if you pay this Contract in full before we have earned that much in finance charges.

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

## Itemization of Amount Financed

| | | | |
|---|---|---|---|
| a. | Price of Vehicle, etc. (incl. sales tax of $ ___1,652.02___ ) | $ | 23,352.02 |
| b. | Service Contract, paid to: Carvana | $ | 2,350.00 |
| c. | **Cash Price** (a+b) | $ | 25,702.02 |
| d. | Trade-in allowance | $ | 0.00 |
| e. | Less: Amount owing, paid to (includes m): N/A | $ | N/A |
| f. | Net trade-in (d-e; if negative, enter $0 here and enter the amount on line m) | $ | 0.00 |
| g. | Cash payment | $ | 0.00 |
| h. | Manufacturer's rebate | $ | N/A |
| i. | Deferred down payment | $ | N/A |
| j. | Other down payment (describe) N/A | $ | N/A |
| k. | **Down Payment** (f+g+h+i+j) | $ | 0.00 |
| l. | **Unpaid balance of Cash Price** (c-k) | $ | 25,702.02 |
| m. | Financed trade-in balance (see line f) | $ | 0.00 |
| n. | Paid to public officials, including filing fees | $ | 92.00 |
| o. | Insurance premiums paid to insurance company(ies) | $ | 0.00 |
| p. | Administrative Fee | $ | 0.00 |

AN ADMINISTRATIVE FEE IS NOT AN OFFICIAL FEE AND IS NOT REQUIRED BY LAW BUT MAY BE CHARGED BY A DEALER. THIS ADMINISTRATIVE FEE MAY RESULT IN A PROFIT TO DEALER. NO PORTION OF THIS ADMINISTRATIVE FEE IS FOR THE DRAFTING, PREPARATION, OR COMPLETION OF DOCUMENTS OR THE PROVIDING OF LEGAL ADVICE. THIS NOTICE IS REQUIRED BY LAW.

| | | | |
|---|---|---|---|
| q. | To: Gap Coverage | $ | 695.00 |
| r. | To: N/A | $ | N/A |
| s. | To: N/A | $ | N/A |
| t. | To: N/A | $ | N/A |
| u. | To: N/A | $ | N/A |
| v. | To: N/A | $ | N/A |
| w. | To: N/A | $ | N/A |
| x. | To: N/A | $ | N/A |
| y. | To: N/A | $ | N/A |
| z. | To: N/A | $ | N/A |
| aa. | **Total Other Charges/Amts Paid** (m thru z) | $ | 3,137.00 |
| bb. | **Prepaid Finance Charge** | $ | 0.00 |
| cc. | **Amount Financed** (l+aa-bb) | $ | 26,489.02 |

We may retain or receive a portion of any amounts paid to others.

## Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**

☐ Single   ☐ Joint   ☐ None
Premium $ ___N/A___   Term ___N/A___
Insured ___N/A___

**Credit Disability**

☐ Single   ☐ Joint   ☐ None
Premium $ ___N/A___   Term ___N/A___
Insured ___N/A___

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

| N/A | N/A |
|---|---|
| **By:** | **DOB** |

| N/A | N/A |
|---|---|
| **By:** | **DOB** |

| N/A | N/A |
|---|---|
| **By:** | **DOB** |

**You have the right to cancel credit insurance within 15 days of buying it and receive a full refund or credit for the credit insurance premium.**

**Property Insurance.** You must insure the Property securing this Contract. You understand that you are free to insure your Property with whatever licensed company, agent or broker you may choose; that you may do so at any time after the date of this loan; that you have not cancelled any existing insurance on your Property if you owned it before this loan; and that this loan cannot be denied simply because you did not purchase your insurance through us. **YOU MAY NOT NEED TO PURCHASE CREDIT PROPERTY INSURANCE, AND YOU MAY HAVE OTHER INSURANCE WHICH WE WILL ACCEPT WHICH COVERS THE PROPERTY SECURING THIS LOAN. YOU SHOULD EXAMINE ANY OTHER INSURANCE WHICH YOU HAVE IN ORDER TO DETERMINE IF THIS COVERAGE IS NECESSARY.**

This premium is calculated as follows:

| | | | |
|---|---|---|---|
| ☐ $ | N/A | Deductible, Collision Cov. $ | N/A |
| ☐ $ | N/A | Deductible, Comprehensive $ | N/A |
| ☐ Fire-Theft and Combined Additional Cov. | | $ | N/A |
| ☐ | N/A | | $ | N/A |

**Liability insurance coverage for bodily injury and property damage caused to others is not included in this Contract unless checked and indicated.**

☐   **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ ___N/A___ for ___N/A___ of coverage.

*[This area intentionally left blank.]*

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

## Additional Protections

**You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.**

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☒ **Service Contract**

| | | |
|---|---|---|
| Term | | 36   months |
| Price | $ | 2,350.00 |
| Coverage | | Vehicle Protection |

☒ **Gap Waiver or Gap Coverage**

| | | |
|---|---|---|
| Term | | 72   months |
| Price | $ | 695.00 |
| Coverage | | Gap Coverage |

☐ **N/A**

| | | |
|---|---|---|
| Term | | N/A |
| Price | $ | N/A |
| Coverage | | N/A |

| | |
|---|---|
| | 09/21/18 |
| By: Richard Saddler | Date |

| | |
|---|---|
| N/A | N/A |
| By: | Date |

| | |
|---|---|
| N/A | N/A |
| By: | Date |

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. You also agree that the purchase of the Property on credit takes place at the Seller's licensed location identified at the top of page 1 of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time. See *Minimum Finance Charge* section. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $25, plus any charge by the depository institution for the dishonored or returned payment.

**Governing Law and Interpretation.** This Contract is governed by the law of Missouri and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice  messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that  could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

◆ You fail to make a payment as required by this Contract.

◆ We believe the prospect of payment, performance, or the ability to realize upon the collateral is significantly impaired.

If you default, you agree to pay our costs for collecting amounts owing, including court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay reasonable attorneys' fees not in excess of 15% of the unpaid debt after default and referral to an attorney not a salaried employee of ours.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you default on this Contract, we may exercise the remedies provided by law and this Contract after we have given you any notice and opportunity to cure your default that the law requires. Those remedies include:

◆ We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.

◆ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so, provided we give you prior notice and a reasonable opportunity to perform. We are not required to make any such payments or repairs. You will repay us that amount when we tell you to do so. That amount will earn finance charges from the date we pay it at the rate described in the *Payment* section until paid in full.

◆ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

◆ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

◆ We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

◆ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

◆ You must pay this Contract even if someone else has also signed it.
◆ We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
◆ We may release any security and you will still be obligated to pay this Contract.
◆ If we give up any of our rights, it will not affect your duty to pay this Contract.
◆ If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

◆ You will defend our interests in the Property against claims made by anyone else. You will keep your claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
◆ You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
◆ You agree not to remove the Property from the U.S. without our prior written consent.
◆ You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
◆ You will pay all taxes and assessments on the Property as they become due.
◆ You will notify us with reasonable promptness of any loss or damage to the Property.
◆ You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

Unless you provide evidence of the insurance coverage required by this Contract, we may purchase insurance at your expense to protect our interests in the Property. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the Property. You may later cancel any insurance purchased by us, but only after providing evidence that you have obtained insurance as required. If we purchase insurance for the Property, you will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Notices

Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. **NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Sí compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

**Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

Emissions Inspection Notice. If the vehicle is subject to Missouri emissions inspection and the Seller sells it to you without prior inspection and approval, you may: (1) return the Vehicle within 10 days, provided it has no more than 1,000 additional miles since the time of sale, to have the Seller repair the Vehicle and provide an emissions certificate and sticker within five working days if the Vehicle fails, upon inspection, to meet the emissions standards, or (2) enter into any mutually acceptable agreement with the Seller.

## Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

| N/A | N/A |
|-----|-----|
| By: | Date |

Signature of Third Party Owner (NOT the Buyer)

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

☒ **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

_____   09/21/18
By:  Richard Saddler                              Date

_____N/A_____   ____N/A____
By:                                               Date

_____N/A_____   ____N/A____
By:                                               Date

**Notice to the Buyer. Do not sign this Contract before you read it or if it contains any blank spaces. You are entitled to an exact copy of the Contract you sign. Under the law you have the right to pay off in advance the full amount due and to obtain a partial refund of the time price differential.**

**By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.**

**Buyer**

_____   09/21/18
By:  Richard Saddler                              Date

_____N/A_____   ____N/A____
By:                                               Date

_____N/A_____   ____N/A____
By:                                               Date

**Seller**

_____   09/21/18
By:  CARVANA, LLC                                 Date

**Assignment.** This Contract and Security Agreement is assigned to
_____N/A_____

the Assignee, phone _____N/A_____ . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.
☐  This Assignment is made with recourse.

**Seller**

_____N/A_____
By:                                               Date

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

# ODOMETER DISCLOSURE STATEMENT
## (Retail)

DATE OF STATEMENT  09/21/18

Federal law (and State law, if applicable) requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I,  CARVANA, LLC.                                              state that the odometer now reads

 63770              (no tenths) miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described below, unless one of the following statements is checked:

|  |  |
|---|---|
| [ ] | (1) I hereby certify that to the best of my knowledge the *odometer reading reflects the amount of mileage in excess of its mechanical limits.* |
| [ ] | (2) I hereby certify that the odometer reading is NOT the actual mileage. WARNING – ODOMETER DISCREPANCY |

YEAR  2015            MAKE  GMC                        MODEL  Terrain

BODY TYPE  SUV            VEHICLE ID NO.  2GKFLZE35F6281225

TRANSFEROR'S NAME  CARVANA, LLC.
(PRINTED NAME)
TRANSFEROR'S ADDRESS  63 PIERCE RD
(STREET)
WINDER                    GA        30680-7280
(CITY)                      (STATE)      (ZIP)
TRANSFEROR'S NAME  X _____
(SIGNATURE) Paul Breaux

TRANSFEREE'S NAME  Richard Saddler
(PRINTED NAME)
TRANSFEREE'S ADDRESS  701 Ridgeside Dr # L
(STREET)
Ballwin                   MO        63021
(CITY)                      (STATE)      (ZIP)
TRANSFEREE'S NAME  X _____
(SIGNATURE) Richard Saddler

C038 (09/21/18)

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

# Retail Purchase Agreement
## – Georgia –

| BUYER | Richard Saddler | |
|---|---|---|
| ADDRESS | 701 RIDGESIDE DR # L | |
| CITY, STATE, ZIP | BALLWIN MO 63021 | |
| PHONE(S) | RES. 3104282110 | BUS. |

**VEHICLE BEING PURCHASED**

| Year 2015 | Make GMC | | Model Terrain | | Body SUV |
|---|---|---|---|---|---|
| Lic. Plate # | License Tab # | Expires | | Mileage 63770 | Color GRAY |

VIN # 2GKFLZE35F6281225

Dealership provides an express limited warranty. Buyer has a copy of the limited warranty agreement. No other express or implied warranties are made by the Dealership and there will be no implied warranties of merchantability or fitness for a particular purpose unless required by applicable law. Seller does not have to make any repairs on this vehicle, except as required under the limited warranty and applicable state law. Buyer may also have other rights that vary from state to state.

Buyer ("you") and Dealership ("we") agree that this Retail Purchase Agreement (this "Agreement") is governed by federal law and the law of the state of the Dealership Address listed above. We are agreeing to sell to you and you are agreeing to buy from us the Vehicle at our licensed dealership location shown above, subject to the terms and conditions of this Agreement. We agree to transfer to you and you agree to accept title and ownership of the Vehicle in the state of the Dealership Address listed above. When we transfer title and ownership of the Vehicle to you, you may take delivery of the Vehicle from us at our licensed dealership location shown above or you may make arrangements with us to have the Vehicle transported to another mutually agreed-upon location for your pick-up.

**TRADE IN VEHICLE #1**

| Year N/A | Make N/A | | Model N/A | | Body N/A |
|---|---|---|---|---|---|
| Lic. Plate # N/A | License Tab # | Expires | | Mileage N/A | Color N/A |

VIN # N/A

**TRADE IN VEHICLE #2**

| Year N/A | Make N/A | | Model N/A | | Body N/A |
|---|---|---|---|---|---|
| Lic. Plate # N/A | License Tab # | Expires | | Mileage N/A | Color N/A |

VIN # N/A

_____ Buyer's Initials

Date   09/21/18               Phone  8003334554

Dealership  CARVANA, LLC

Address   63 PIERCE RD

City, State, Zip   WINDER GA 30680-7280

Stock Number   2000151880

THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

LA INFORMACION QUE VE ADHERIDA EN LA VENTANILLA FORMA PARTE DE ESTE CONTRATO. LA INFORMACION CONTENIDA EN ELLA PREVALECE POR SOBRE TODA OTRA DISPOSICION INCLUIDA EN EL CONTRATO DE COMPRAVENTA.

| | | |
|---|---|---|
| 1 | Selling price | $21,700.00 |
| 2 | TAVT/Sales Tax* | $1,652.02 |
| 3 | License and Title Fee | $92.00 |
| 4 | Vehicle Protection | $2,350.00 |
| 5 | Gap Coverage | $695.00 |
| 6 | Subtotal (Selling Price + Delivery Fee + Fees + Taxes) | $26,489.02 |
| 7 | Balance Due (Subtotal) | $26,489.02 |
| | TOTAL BALANCE DUE (BALANCE DUE + TRADE-IN BALANCE) | $26,489.02 |

**FINANCE CHARGE**
The dollar amount the credit will cost you

$   11,415.51

If financed, interest charged on the principal amount. See Retail Installment Contract for more information.

*For GA customers, this value is TAVT. For customers outside of GA, this value is the sales tax due at registration.

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

RED TO IN ESTIMATED PAY-OFF AND THE FEES REFERRED TO IN THE ABOVE LINE ITEMS ARE ESTIMATES, AT THE TIME THE BALANCES AND FEES ARE VERIFIED AND CONTRACT DETERMINED, APPROPRIATE ADJUSTMENTS, IF NECESSARY, WILL BE MADE. ANY DIFFERENCE IN THE PAYOFF AMOUNT IS THE RESPONSIBILITY OF THE BUYER(S).

## Carvana Vehicle Return Program

We will give you the ability to return the Vehicle to Carvana and terminate this retail purchase agreement and any retail installment contract executed in connection herewith so long as:
1) You alert Carvana prior to 5pm EST on the 7th calendar day after you take delivery of the Vehicle;
2) You return the vehicle in one of two ways:

    i) Within a Carvana service area: you make the Vehicle available for pick up by a Carvana representative at a predetermined time and location the following business day. Cost of pick-up will be paid by Carvana. Service area is designated by zip code and subject to change without prior notice.

    ii) Outside of a Carvana service area: Carvana will arrange for transport of the vehicle. The cost will be paid by you. Service area is designated by zip code and subject to change without prior notice.

3) The Vehicle is free of all liens and encumbrances other than the lien created in your favor by any applicable retail installment contract;
4) The Vehicle is in the same condition you received it except for reasonable wear and tear (evidence of smoking in the vehicle during the 7 Day Test Own is not considered reasonable wear and tear) and any mechanical problem that becomes evident after delivery that was not caused by you;
5) You have not driven it more than 400 miles;
6) The Vehicle is without damage or having been in an accident *that occurred after* you took delivery of the Vehicle;
7) If the Vehicle is driven more than 400 miles, at Carvana's election you will pay $1.00 per mile for each mile the Vehicle was driven over 400 miles. If you return your Vehicle and had traded in a vehicle to us, we will return your trade to you only after you have paid all fees required for the return of the Vehicle. Required fees may not be paid by personal check. Required fees will be deducted from your down payment refund. If you paid your down payment via ACH transaction, we will pay you and/or return your trade in by the earlier of (a) when you provide evidence that the ACH transaction was cleared, or (b) 15 business days after your purchase of the Vehicle. So long as you meet all conditions for return of the Vehicle outlined above, Carvana will not report this account to the credit bureaus.

**Trade in Representation and Warranty:** You represent and warrant that the trade-in described in the Buyer's order/Purchase Agreement, if any, has not been misrepresented and air pollution equipment is on the trade-in and is working, you will provide to us a Certificate of Title (or documents that allow us to obtain it), free of any lien(s) or encumbrance(s), (i.e. titling issues, child support or amounts due to government titling or registration agency,) and you have the right to sell the trade-in.

**General:** At time of delivery, or at any time during your 7 Day Test Own period, you may reject your vehicle and terminate your vehicle financing and purchase for any reason.

In certain states, dealers may not place any insignia that advertises the dealer's name on a vehicle unless the Buyer consents thereto in the purchase contract for such vehicle. Unless Buyer notifies dealer otherwise in writing, Buyer hereby expressly consents to the placement of Carvana's name on the vehicle's license plate cover. Buyer expressly waives any compensation for the placement of dealer's name on the vehicle.

**Default:** You will be in default if any of the following occurs (except as may be prohibited by law): 1. You gave us false or misleading information on carvana.com or on the telephone, via email or text message, in person, or any other communication medium in connection with the purchase of the Vehicle relating to this Agreement; 2. If we cannot verify any information that you have provided us; 3. If we discover a material adverse change in any information you provided us during our review process; 4. If you do not cooperate in the verification and review process described below; 5. You fail to keep any other agreement or promise you made in this Agreement and/or any retail installment contract executed in connection herewith.

**Assignment:** You may not assign your rights under this Agreement and/or any retail installment contract executed in connection herewith without our permission.

**After-sale Review and Verification Process:** The Vehicle sold to you is subject to an after-sale review and verification of the information you have provided to us. You agree to cooperate with the after-sale review and verification process.

**Limitation on Damages: Unless prohibited by law, you shall not be entitled to recover from us any consequential, incidental or punitive damages, damages to property or damages for loss of use, loss of time, loss of profits, or income or any other similar damages. We are not liable for any failure or delay in delivering the vehicle to you if it is beyond our control, not our fault or we are not negligent.**

**References:** To the extent you are financing your purchase with us, we may contact your employer or your references to verify the information you provided to us in connection with this Agreement.

**Odometer (mileage):** Each of your and our representations regarding odometer readings are subject to information provided by others, including government agencies. We each understand that this information is not always accurate. As permitted by applicable law, neither us is responsible for any inaccuracies in this information to the extent it is not the party's fault.

**Disclosure on Airbags:** We disclaim any knowledge of, and make no representation or warranty as to the condition or operability of the airbag(s) on the vehicle unless otherwise disclosed to you on the AutoCheck Vehicle History Report. You acknowledge that we have not made any representations, oral or in writing, as to the condition or operability of the airbag(s), and you accept the vehicle without representation or warranty from us. You further acknowledge that you had the opportunity to have the airbag(s) checked by someone of your choice prior to the expiration of your 7 Day Test Own Period.

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742    urchase and maintain liability insurance. We do not provide liability insurance for you and it is not included in your Agreement. Your choice of insurance providers will not affect our decision to sell you the vehicle.

**Record Retention:** You agree that we may maintain documents and records related to the vehicle and the Agreement electronically, including, but not limited to, documents and record images, and that we may dispose of original documents. You agree that a copy of any such electronic records may be used and shall be deemed to be the same as an original in any arbitration, judicial, or non-judicial or regulatory proceeding related to the vehicle.

**Arbitration Agreement:** The arbitration agreement entered into between you and Dealer is incorporated by reference into and is part of this Agreement.

**NOTICE:** Carvana, LLC allows you to finance applicable sales/use taxes assessed on ancillary products (vehicle service contract, GPS, GAP Coverage). Whether you finance your vehicle purchase or pay cash, if your vehicle is registered in the state where you purchased your vehicle, Carvana will remit the applicable sales/use tax on ancillary products to that state on your behalf. Unless required by state law, if your vehicle is registered in a state that is not the state where you purchased the vehicle, Carvana will not collect or remit to the state of vehicle registration any applicable sales/use tax on ancillary products on your behalf unless you live in Kansas, Louisiana, or Pennsylvania.

**Buyer acknowledges receipt of a copy of this Agreement. No oral agreements or understandings apply.**
**This agreement is not binding until accepted by an authorized representative of Carvana.**

Sales Advisor _____     Buyer _____
                                                              Richard Saddler

                                                     Accepted By _____
                                                              Carvana

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

 CARVANA

# Carvana Care

| APPLICATION/CONTRACT NUMBER |
|---|
| CVSC   1189373 |

This document is the Application and, if accepted by the Administrator, the Vehicle Service Contract. If this Application cannot be accepted by the administrator as written You will be notified of any changes to the coverage applied for within approximately 60 days. If You choose not to accept these changes to Your application for coverage or Your Vehicle does not qualify for any type of coverage Your Contract Price will be refunded.

## CONTRACT HOLDER (CUSTOMER, YOU, YOUR)

| CUSTOMER'S NAME | CO-CUSTOMER'S NAME | | |
|---|---|---|---|
| Richard Saddler | N/A | | |
| ADDRESS | CITY | STATE | ZIP |
| 701 Ridgeside Dr # L | Ballwin | MO | 63021 |
| PHONE NUMBER | EMAIL ADDRESS | | |
| 3104282110 | | | |

## COVERED VEHICLE (YOUR VEHICLE)

| YEAR | MAKE | MODEL | | |
|---|---|---|---|---|
| 2015 | GMC | Terrain | | |
| VIN | CURRENT ODOMETER | VEHICLE PURCHASE DATE | VEHICLE PURCHASE PRICE | |
| 2GKFLZE35F6281225 | 63770 | 09/21/18 | 21,700.00 | |

## SELLING DEALERSHIP

| NAME | PHONE NUMBER | ACCOUNT NUMBER | |
|---|---|---|---|
| CARVANA, LLC | 8003334554 | 2000151880 | |
| ADDRESS | CITY | STATE | ZIP |
| 63 PIERCE RD | WINDER | GA | 30680-7280 |

## CONTRACT INFORMATION

| CONTRACT TERM | | EXPIRATION ODOMETER | EXPIRATION DATE |
|---|---|---|---|
| Months 36    Mileage  100000 | | 100,000 | 09/20/21 |
| CONTRACT PURCHASE PRICE | | DEDUCTIBLE | |
| $ 2,350.00 | | $50 | |

## LIENHOLDER

You authorize the lender to: (1) be listed as joint payee and receive any refund in the event this Contract is cancelled, (2) cancel this Contract in the event of repossession or total loss, (3) be listed as sole payee on all repossessions.

| NAME | | | |
|---|---|---|---|
| CARVANA, LLC | | | |
| ADDRESS | CITY | STATE | ZIP |
| 1930 W Rio Salado Parkway | Tempe | AZ | 85281 |

This coverage ends with either of the following, whichever occurs first: (1) When the mileage of Your Vehicle, as measured from zero (0) miles reaches the mileage limit for the plan selected, or (2) when the time limit for the term selected expires as measured from the Vehicle Purchase Date. The term of this Contract is inclusive of the manufacturer's warranty period.

I have read and understand this document. I understand that the above information is subject to verification and that the Application for coverage may be rejected or the terms of coverage may be modified if any of the above information is incorrect or if the Vehicle is ineligible for the term, coverage, or deductible applied for. The purchase of this Vehicle Service Contract is not required to either purchase or obtain financing for the Vehicle.

_____
*Customer Signature*

_____
*Co-Customer Signature*

_____09/21/18_____
*Contract Purchase Date*

_____
*Signature of Selling Dealership Representative*

 SilverRock

VSC (SR-CV-GA-EXC) 07-2018

You may contact the Administrator during normal business hours at the following number or address: SilverRock Automotive, Inc.
P.O. Box 29087, Phoenix, AZ 85038-9087 • (866) 628-3905

Page 1 of 5

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

 CARVANA          **Carvana Care**

| APPLICATION/CONTRACT NUMBER | |
|---|---|
| CVSC | 1189373 |

## DEFINITIONS

- "We", "Us" and "Our" means "SilverRock Automotive, Inc.", the Administrator named in the Contract. This Contract is between Us and the Customer named herein.
- "Covered Part" means an item defined as a Covered Part in the Covered Parts section below.
- "Breakdown" or "Mechanical Breakdown" means that event caused by the total failure of any Covered Part to work as it was designed to work in normal service, including a total failure resulting from wear and tear or ordinary use. Please refer to the wording under exclusions for a listing of conditions under which the failure of a Covered Part is not considered a Mechanical Breakdown.

## YOUR OBLIGATIONS

- In order for this Contract to remain in force, the minimum requirement on oil and oil filter changes is every six (6) months or 5,000 miles, whichever occurs first. If Your Vehicle is equipped with a timing belt, the belt must be replaced before Your Vehicle's odometer reads 60,000 miles. If the manufacturer requires shorter maintenance intervals than those listed above, You must follow the manufacturer's recommendations. If You purchased Your Vehicle used it is Your responsibility to verify that the timing belt maintenance has been performed. All other maintenance and servicing must be followed as recommended by Your Vehicle's manufacturer. You are responsible for maintaining correct levels and types of fuels, lubricants and coolants. You must keep and make available verifiable signed service/purchase receipts which show that this maintenance has been performed within the time and mileage limits required.
- You or Your licensed repair facility are required to obtain an Administrator's authorization number prior to beginning any repair covered by this Contract.
- You are responsible for paying the deductible indicated in the Application for each repair visit caused by a covered Mechanical Breakdown(s).
- You are responsible for authorizing and paying for any teardown or diagnosis time needed to determine if Your Vehicle has a covered Breakdown. If it is subsequently determined that the repair is needed due to a covered Breakdown, then We will pay for this part of the repair. If the failure is not a covered Mechanical Breakdown, then You are responsible for this charge.
- While owned by You, if Your odometer fails, or for any reason does not record the actual mileage of Your Vehicle after Purchase Date, then in order for this Contract to remain effective, You must have it repaired and the mileage certified within thirty (30) days of failure date. If You fail to do so, then there will be no coverage under this Contract.

## OUR OBLIGATIONS

If a covered Mechanical Breakdown of Your Vehicle occurs during the term of this Contract, We will:

- Pay You or the repairer, for repair or replacement, as the Administrator deems appropriate, of the Covered Part(s) which caused the Mechanical Breakdown if You have met Your obligations as described in this Contract and if the Breakdown is not excluded under the exclusions section of this Contract. Replacement parts can be of like kind and quality. This may include the use of new, remanufactured or used parts as determined by the Contract Administrator.
- Reimburse You for a rental car at the rate of up to $30 for every 8 hours (or portion thereof) of labor time required to complete the repair. Required labor time is determined from the national repair manual in use by the repair facility. To receive rental benefits, You must supply Us with Your receipt from a licensed rental agency. The limit on this reimbursement is up to $30 per day for up to 5 days per Mechanical Breakdown or series of Breakdowns related in time or cause.
- Reimburse You for additional receipted motel and restaurant expenses up to $75 per day for a maximum of 3 days due to the occurrence of a covered Breakdown more than 100 miles from Your home which results in a repair facility keeping Your Vehicle overnight.

## FOR EMERGENCY ROADSIDE ASSISTANCE — CALL TOLL FREE (888) 300-8607

- Towing. Limit of $75 per incident or failure related in time or cause.
- Gasoline and fluids. An emergency supply will be provided when an immediate need arises. Limit of $75 per occurrence. You are responsible for cost of fluids delivered.
- Flat tire assistance. Removal and replacement with Your provided spare. Limit of $75 per occurrence.
- Lock-out assistance. Service will provide for a locksmith to gain entry to Your Vehicle if the keys are locked inside. Limit of $75 per occurrence.
- Battery jump start. A jump start will be provided when an immediate need arises due to a drained battery. Limit of $75 per occurrence.

## WHAT TO DO IF YOU HAVE A MECHANICAL BREAKDOWN, CALL TOLL FREE: (866) 628-3905

In the event of a Mechanical Breakdown, follow this step by step procedure:

(1) Use all reasonable means to protect Your Vehicle from further damage. This may require You to stop Your Vehicle, turn off the engine, and have Your Vehicle towed.

(2) You must contact the Contract Administrator at the number shown above for instructions before any repairs are started on Your Vehicle. All repair work must be performed by a licensed repair facility.

(3) Furnish the repair facility or Contract Administrator with such information as this Contract may reasonably require. This includes receipts for car rental charges, receipts for towing or emergency road service, and signed repair orders (indicating dates and mileage) as required by this Contract.

(4) If Your Vehicle requires an emergency repair outside of the Contract Administrator's normal business hours, You must follow all Contract guidelines and retain any replaced parts for the Administrator's inspection. You must contact the Contract Administrator the next business day for instructions on submitting the claim. For an emergency repair to a covered part Your claim will not be denied solely for lack of prior authorization.

(5) Absent prior written approval by Administrator, all claim documentation must be received by Administrator within ninety (90) days of claim authorization date.

 SilverRock.

VSC (SR-CV-GA-EXC) 07-2018

You may contact the Administrator during normal business hours at the following number or address: SilverRock Automotive, Inc.
P.O. Box 29087, Phoenix, AZ 85038-9087 ▪ (866) 628-3905

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

 CARVANA       **Carvana Care**

| APPLICATION/CONTRACT NUMBER | |
|---|---|
| CVSC | 1189373 |

## SYSTEM - COVERED PARTS
REPAIRS ON ALL ASSEMBLIES AND PARTS ARE COVERED ON YOUR VEHICLE WITH THE EXCEPTION OF THE FOLLOWING LISTED ITEMS:

- PAINT/CARPETING
- TRIM
- MOLDING/BUMPERS
- BRIGHT METAL
- UPHOLSTERY
- BRAKE ROTORS & DRUMS
- BATTERIES
- FRAME OR STRUCTURAL SEPARATION
- LENSES
- LIGHT BULBS/HEADLIGHTS
- STRUTS/SHOCK ABSORBERS

- BODY PANELS
- CANVAS, VINYL, OR FABRIC TOP
- GLASS
- FIBERGLASS TOP
- TIRES AND WHEELS
- PHYSICAL DAMAGE
- NORMAL FLUID/OIL/LUBRICANT SEEPAGE
- ANY REPOSITIONING, REFITTING, OR REALIGNING
- ALL MAINTENANCE SERVICES AND ITEMS SUCH AS ALIGNMENTS, WHEEL BALANCES, ENGINE TUNEUPS, SPARK/GLOW PLUGS, BRAKE PADS, LININGS & SHOES, FILTERS, LUBRICANTS, COOLANTS, AND BELTS

## EXCLUSIONS - WHAT THIS VEHICLE SERVICE CONTRACT DOES NOT COVER
This Contract provides no benefits or coverage and We have no obligation under this Contract for:

- A Breakdown caused by lack of customary, proper, or manufacturer's specified maintenance.
- A Breakdown caused by improper types or quantities of or contamination or lack of proper fuels, fluids, coolants, refrigerants or lubricants, including a Breakdown caused by a failure to replace seals or gaskets in a timely manner.
- A Breakdown caused by towing a trailer, another Vehicle or any other object unless Your Vehicle is equipped for this use as recommended by the manufacturer.
- Repair of any parts during a covered repair which are not necessary to the completion of the covered repair. Such replacement is considered betterment and is not covered by this Contract.
- A Breakdown which occurred prior to Your purchase of Your Vehicle that would have been obvious and apparent if that component was inspected at time of purchase and were known to You.
- A Breakdown caused by or involving modifications or additions to Your Vehicle made by You or with Your knowledge, whether on or after the Purchase Date, unless those modifications or additions were performed or recommended by the manufacturer.
- A Breakdown caused by or involving off-roading, misuse, abuse, lift kits, lowering kits, oversize or undersize tires, racing components, racing or any form of competition.
- Any repair which would normally be provided by the Vehicle manufacturer, a repair shop or part supplier under warranty.
- Costs or other damages caused by the failure of or to a part not listed as a Covered Part.
- Damage to the Vehicle caused by continued Vehicle operation after the failure of a Covered Part.
- Any liability, cost or damages You incur or may incur to any third parties other than for Administrator approved repair or replacement of Covered Parts which caused a Mechanical Breakdown.
- A Breakdown caused by overheating, rust, corrosion, restricted oil or coolant passages, restricted filters or physical damage.
- A Breakdown caused by collision, fire, electrical fire or meltdown, theft, freezing, vandalism, riot, explosion, lightning, earthquake, windstorm, hail, water, flood or acts of the public enemy or any government authority, or for any hazard insurable under standard physical damage insurance policies whether or not such insurance is in force respecting Your Vehicle.
- A Breakdown not occurring in the United States or Canada.
- Loss of use, loss of time, lost profits or savings, inconvenience, commercial loss, or other incidental or consequential damages or loss that results from a Breakdown.
- Liability for damage to property, or for injury to or death of any person arising out of the operation, maintenance or use of Your Vehicle whether or not related to a Breakdown.
- Any cost or other benefit for which the manufacturer has announced its responsibility through any means including public recalls or factory service bulletins.
- Any part not covered by, or excluded by Vehicle manufacturer's warranty.
- Repair or replacement of any covered part if a Breakdown has not occurred or if the wear on that part has not exceeded the field tolerances allowed by the manufacturer.
- This Contract does not cover any Vehicle used for business, deliveries, construction, or commercial hauling; or is used as a postal Vehicle, taxi, police, or other emergency Vehicle; or any Vehicle rented or leased by You to someone else; or any Vehicle equipped to or used to plow snow; or any Vehicle using or have used or modified in a manner which is not recommended by the Vehicle manufacturer by you or with your knowledge, whether any such exclusion shall originate during the term of this Contract.

## CANCELLATION REFUNDS
If You request a cancellation:
- Within the first thirty (30) days after the Contract Purchase Date and have filed no claims, then You shall receive a refund or credit to Your account of the full Contract Purchase Price.

 SilverRock

VSC (SR-CV-GA-EXC) 07-2018

You may contact the Administrator during normal business hours at the
following number or address: SilverRock Automotive, Inc.
P.O. Box 29087, Phoenix, AZ 85038-9087 • (866) 628-3905

Page 3 of 5

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

 **CARVANA**          **Carvana Care**

| APPLICATION/CONTRACT NUMBER |
| --- |
| CVSC    1189373 |

- **After the first thirty (30) days from the Contract Purchase Date or have filed a claim,** then You shall receive a Pro-Rata Refund, calculated as the lesser of: (a) the ratio of the term remaining to the original term covered, or (b) the ratio of the miles remaining to the original miles covered. The Contract Term for cancellation purposes will be based on the date You purchased the Contract and the date the Contract would expire, and the mileage on the date You purchased the Contract and the mileage at which the Contract would expire. If You cancel the Contract, the cancellation fee is the lesser of (i) $50.00 or (ii) 10% of the prorated refund.
- **Requesting a refund.** You, or Your Lienholder, may cancel this Agreement by submitting a written request of cancellation to Administrator. The completed written request must be signed by You and returned to Administrator with a copy of this Contract. The cancellation documents may be mailed to P.O. Box 29087, Phoenix, AZ 85038-9087 or e-mailed to cancellations@silverrockinc.com. All requests must be received by Administrator within 30 days of requested cancellation effective date. Notification to cancel shall start only upon Administrator's receipt of Your complete cancellation documentation. Administrator is the party responsible for honoring cancellation requests. If You cancel this Contract and do not receive a refund, please notify BlueShore Insurance.
  Note: This provision is not available on Contracts which have been transferred.

Any cancellation by Us will comply with O.C.G.A. 33-24-44.

## OUR RIGHT TO CANCEL THIS CONTRACT

We reserve the right to cancel this Contract and will not pay for a Mechanical Breakdown if:

- *Fraud.* You commit any acts of fraud as regards this Contract, in any way.
- *Failure to Pay Consideration.* Your failure to pay all of the consideration and amounts due under this Contract, for any reason.
- *Material Misrepresentations.* Your material misrepresentations as regards this Contract, of any type, including, but not limited to, whether Your Vehicle is used for business, deliveries, construction, or commercial hauling; Your Vehicle is used as a postal Vehicle, taxi, police, or other emergency Vehicle; You rent or lease Your Vehicle to someone else; Your Vehicle is equipped to or used to plow snow; You are using or have used or modified Your Vehicle in a manner which is not recommended by the Vehicle manufacturer; or whether the odometer, for any reason does not record the actual mileage of Your Vehicle after Purchase Date.
- In the event the Contract is cancelled by Us, then We will provide a Pro-Rata Refund, but We will not retain a cancellation fee.

## HOW THIS CONTRACT MAY BE TRANSFERRED

This provision is only available if You are the first Contract Holder. This option is not available to You if the Vehicle is traded or sold to or through any entity other than a private party. Your rights and duties under this Contract may be transferred if You sell Your Vehicle directly to another private party, but only if You do the following:

- Send Administrator the completed transfer Application within thirty days of the sale or transfer of Your Vehicle.
- Submit proof that the manufacturer's warranty has been transferred to the new owner.
- Pay Administrator a $50.00 transfer fee. In the event Your Vehicle is a total loss or repossessed, Your rights and obligations under this Contract immediately transfer to the Lienholder, if any. You must provide new owner with copies of all receipts as listed under "YOUR OBLIGATIONS".

## TRANSFER APPLICATION

| | | |
| --- | --- | --- |
| *Name of New Owner* | *Date of Transfer* | *Odometer Reading on Date of Transfer* |
| *Address* | *City* | *State*     *Zip* |
| *Signature of Vehicle Purchaser* | | *Date* |
| *Signature of Vehicle Purchaser* | | *Date* |

## OTHER IMPORTANT CONTRACT PROVISIONS

OUR OBLIGATIONS TO YOU ARE GUARANTEED UNDER A SERVICE CONTRACT REIMBURSEMENT POLICY. In return for Your payment for this Contract and subject to its terms, You will be provided with the protection described herein. Our obligations to perform under this Service Contract are insured by BlueShore Insurance Company 1720 W. Rio Salado Pkwy, Tempe, Arizona 85281, (877) 864-2873. In the event We fail to pay any covered claim within sixty (60) days after proof of loss has been filed, You may make a direct claim to the insurer at the address listed above.

The Dealer agrees that all sums paid by You under the terms of this Contract, excluding a commission earned by the Dealer shall be submitted on Your behalf to the Administrator and others for the purpose of assuring the payment of Your claims under this Contract. If this Contract is cancelled Dealer is responsible for refunding any unearned part of the commission.

The aggregate total of Our liability for all benefits paid or payable during the term of this Contract shall not exceed the actual cash value of Your Vehicle at time of Contract purchase. Our limit of liability for any Breakdown or series of Breakdowns related in time or cause shall not exceed the actual cash value of Your Vehicle according to current National Auto Dealers Association standards at the time of Breakdown.

After You receive any benefits under this Contract, We are entitled to all Your rights of recovery against any manufacturer, repairer or other party who may be

 SilverRock

You may contact the Administrator during normal business hours at the following number or address: SilverRock Automotive, Inc.
P.O. Box 29087, Phoenix, AZ 85038-9087 • (866) 628-3905

VSC (SR-CV-GA-EXC) 07-2018

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

  **Carvana Care**

| APPLICATION/CONTRACT NUMBER |
| --- |
| CVSC   1189373 |

responsible to You for the costs covered by this Contract or for any other payment made by Us. If We ask, You agree to help Us enforce these rights. You also agree to cooperate and help Us in any other matter concerning this Contract.

This Contract contains the complete agreement between the parties and is not valid unless signed by the Customer.

This Contract will terminate when You sell Your Vehicle unless transferred as provided in the Transfer Section or when this Contract is cancelled as outlined in the Cancellation Section or when Your Vehicle reaches the time or mileage limitation.

Coverage afforded under this Contract is not guaranteed by Your state's Property and Casualty Guaranty Association.

THIS IS NOT A CONTRACT OF INSURANCE.

YOU AND WE AGREE THAT ANY DISPUTE, SHALL TAKE PLACE ONLY ON AN INDIVIDUAL BASIS. YOU AND WE AGREE TO WAIVE THE RIGHT TO: (1) A TRIAL BY JURY; (2) PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING, EITHER AS A CLASS REPRESENTATIVE, CLASS MEMBER OR CLASS OPPONENT; OR (3) JOIN OR CONSOLIDATE YOUR CLAIM(S) WITH CLAIMS OF ANY OTHER PERSON.  THIS PARAGRAPH DOES NOT APPLY TO ANY LAWSUIT FILED AGAINST US IN COURT BY A STATE OR FEDERAL GOVERNMENT AGENCY EVEN WHEN SUCH AGENCY IS SEEKING RELIEF ON BEHALF OF A CLASS THAT INCLUDES YOU.

TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES AGREE THAT: (I) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (II) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

SilverRock

VSC (SR-CV-GA-EXC) 07-2018

You may contact the Administrator during normal business hours at the following number or address: SilverRock Automotive, Inc. P.O. Box 29087, Phoenix, AZ 85038-9087 • (866) 628-3905

Page 5 of 5

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742



# CREDIT REPORTING NOTICE

Thank you for being a Carvana customer. We know you have other choices and we appreciate you choosing us to assist you.

We report all information, positive and negative. "Negative information" means information concerning delinquencies, late payments, missed payments, or any form of default. If you believe any information we have reported is inaccurate please notify us immediately in writing at the address below.

If you have any questions about any of our programs or your credit reporting, Please feel free to call us at 877-235-9900 or write us at 1930 W Rio Salado Pkwy, Tempe, AZ 85281, Attn: Credit Bureau Disputes

Have a great day!

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742



I certify I am not in the process of filing a Bankruptcy nor am I in an active Bankruptcy.

x _____
Richard Saddler

## Carvana - Vehicle Registration (Missing Document)

From:  Registration (registration@carvana.com)

To:     ricksaddler@yahoo.com

Date:  Wednesday, October 3, 2018, 09:43 AM CDT

Hello Rick,

Thank you for your recent purchase with Carvana.  Please note, your registration has been received however there is a hold on your file until the following item has been received:

Emissions Inspection:
• Original emissions inspection is required for used vehicles being registered in Franklin, Jefferson, St. Charles or St Louis County, or St Louis City.
• It must be completed in MO and cannot be more than 60 days old at the time of registration.

Please provide this information as soon as possible so as not to delay the processing of your registration. Should you have any questions, please contact our office at 800-333-4554.

All the best, and thank you for choosing Carvana!

Your Carvana Registration Team

Exhibit B

DocuSign Envelope ID: 2B2F82E0-0339-44EC-A792-753077621742    Filed: 01/22/20    Page: 172 of 190    PageID #: 205
This is a copy view of the Authoritative Copy
by the designated custodian

# ARBITRATION AGREEMENT

---

### NOTICE OF ARBITRATION AGREEMENT

We both agree that if we have a dispute, either of us can decide to resolve it by using arbitration. Arbitration is a formal process for resolving disputes without going to court. If you want to learn more about arbitration, please navigate to the following links in your browser:

- http://info.adr.org/consumer-arbitration/
- https://www.jamsadr.com/adr-arbitration

If you wish, **you can decide to opt out and reject this arbitration agreement**, but to reject this arbitration agreement you will need to follow the instructions under the heading "Your Right to Reject this Agreement". You will need to act in the next 30 days or you lose your right to reject this arbitration agreement. It is your choice.

By choosing arbitration, we are both giving up our right to go to court (except small claims court) to resolve our dispute. In arbitration a neutral person, called an arbitrator, listens to both of us and decides how our dispute is resolved. Arbitrator decisions are enforceable, just like a court order. Unlike court orders, these decisions are subject to very limited review by a court. Once a decision is made it is final, except in very limited circumstances.

In arbitration, we both give up our right to a judge or jury, and, as a result, there is no jury trial. However, if either of us elects to use small claims court to resolve the dispute, the dispute will be resolved in small claims court rather than arbitration.

If you or we choose arbitration, only our individual claims will be arbitrated. Claims by groups of individuals or "Class" arbitrations, are not allowed. By choosing to arbitrate, you will be giving up your right to participate in a class action or a private attorney general action in court or in arbitration with respect to the dispute.

Arbitration rules are generally simpler and more limited than court rules. If you want to learn more about the rules and how they work, navigate to the following link in your browser:

- https://www.adr.org/sites/default/files/Consumer_Rules_Web.pdf

- https://www.jamsadr.com/rules-streamlined-arbitration/

The Arbitration Agreement also explains what the fees and costs for the arbitration will be, and who will pay them.

This is only a summary. As with all legal agreements, please read the entire agreement carefully before you sign. **Unless you opt out of the Arbitration Agreement, it will substantially affect your rights in the event of a dispute between you and us.**

---

"Us/We/Our" means Carvana, any purchaser, assignee or servicer of the Contract, all of their parent companies, and all subsidiaries, affiliates, predecessors and successors, and all officers, directors and employees of any of the forgoing. "Us/We/Our" also means any third party providing any product or service in connection with or incidental to the Contract, the sale of the vehicle and/or other goods or services covered by the Contract and/or related to the vehicle, if such third party is named as a co-defendant with us in a Claim you assert. "Us/We/Our" have these meanings only for this Agreement. This Agreement is part of, and is hereby incorporated into, the Contract. However, whenever in this Agreement the term "Contract" is used, it does not include this Agreement.

"You/Your" means you and/or any of your heirs or personal representatives.

"Contract" means the Retail Purchase Agreement (in Texas, the Buyer's Order) and/or the related Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement) you signed with us in connection with this purchase, and any prior Retail Purchase Agreement (in Texas, Buyer's Order) and/or Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement) that you previously had with us.

*Exhibit C*

DocuSign Envelope ID: 2B2F82E9-9E59-44EC-A792-783077521742

This is a copy view of the Authoritative Copy
by the designated custodian

"Agreement" means this Arbitration Agreement.

"Including" and "includes" means "including but not limited to".

This Agreement describes how a Claim may be arbitrated instead of litigated in court.

"Claim" means any claim, dispute our controversy between you and us arising from or related to one or more of the following:

> (a) The Contract.
> (b) The vehicle or the sale of the vehicle.
> (c) The provision or sale of any goods and services like warranties, insurance and extended service contracts covered by the Contract or related to the vehicle.
> (d) The relationships resulting from the Contract.
> (e) Advertisements, promotions or oral or written statements related to the Contract.
> (f) The financing terms.
> (g) Your credit applications.
> (h) The origination and servicing of the Contract.
> (i) The collection of amounts you owe us.
> (j) Any repossession, or replevin, of the vehicle.
> (k) Your personal information.
> (l) The rescission or termination of the Contract.

"Claim" has the broadest reasonable meaning. It includes claims of every kind of nature. This includes initial claims, counterclaims, cross-claims, third-party claims, statutory claims, contract claims, negligence and tort claims (including claims of fraud and other intentional torts). However, notwithstanding any language in this Agreement to the contrary, a "Claim" does not include a dispute about validity, enforceability, coverage or scope of this Agreement (including, without limitation, the paragraph below captioned "No Class Actions or Private Attorney General Actions," the final sentence under the paragraph below captioned "Miscellaneous" and/or this sentence); any such dispute is for a court, and not an arbitrator to decide. This exclusion from the definition of a "Claim" does not apply to any dispute or argument that concerns the validity or enforceability of the Contract as a whole; any such dispute or argument is for the arbitrator, not a court, to decide.

Even if you and we elect to litigate a Claim in court, you or we may elect to arbitrate any other Claim, including a new Claim in that lawsuit or any other lawsuit. Nothing in that litigation waives any rights in this Agreement.

However, notwithstanding any language in this Agreement to the contrary, the term "Claim" does not include (i) any self-help remedy, such as repossession or sale of any collateral given by you to us as security for repayment of amounts owed by you under the Contract; or (ii) any individual action in court by one party that is limited to preventing the other party from using such self-help remedy and that does not involve a request for damages or monetary relief of any kind. Also, we will not require arbitration of any individual Claim you make in small claims court or your state's equivalent court, if any. If, however, you or we transfer or appeal the Claim to a different court, we reserve our right to elect arbitration.

**Your Right to Reject this Agreement. You have the right to reject this Agreement, in which event neither you nor we will have the right to require arbitration of any Claims. Rejection of this Agreement will not affect any other aspect of your Contract. In order for you to reject this Agreement, we must receive a signed writing ("Rejection Notice") from you within 30 days of the day you enter into the Contract, stating that you reject the Agreement. Any notice received after 30 days from the Contract date will not be accepted. The Rejection Notice must include your name, address and Vehicle Identification Number (VIN) and must be mailed to us at:  Attn: Carvana Legal, 1930 W Rio Salado Pkwy, Tempe, AZ 85281  and must be sent via certified mail, return receipt requested. Upon receipt of your Rejection Notice, we will refund your postage cost up to $6.70. We will not refund postage cost for late notices. If the Rejection Notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the Rejection Notice on your behalf. If you reject this Agreement, that will not constitute a rejection of any prior arbitration agreement between you and us.**

This is a copy view of the Authoritative Copy
by the designated custodian

<u>Selection of Arbitration Administrator</u>. Unless prohibited by applicable laws, any Claim shall be resolved, on your election or ours, by arbitration under this Agreement.

You may select as the administrator either of the organizations listed at the end of this Agreement. If we want to arbitrate, we will tell you in writing. That may include a motion to compel arbitration that we file in court. You will have 20 (twenty) days to select the administrator (or, if you dispute our right to require arbitration of the Claim, 20 (twenty) days after that dispute is finally resolved). If you do not choose an administrator within the 20-day period, we will do so.

If for any reason the administrator is unable, unwilling, or ceases to be the administrator, you will have 20 (twenty) days to choose the other organization listed at the end of this Agreement. If you do not select a new administrator within that period, we will do so. If neither organization is willing or able to be the administrator, then the administrator will be selected by the court. Notwithstanding any language in this Agreement to the contrary, no arbitration may be administered, without the consent of all parties to the arbitration, by any administrator that has in place a formal or informal policy that is inconsistent with the paragraph below captioned "No Class Action or Private Attorney General Action."

If a party files a lawsuit in court asserting Claim(s) that are subject to arbitration and the other party files a motion to compel arbitration with the court which is granted, it will be the responsibility of the party prosecuting the Claim(s) to commence the arbitration proceeding.

<u>Location of Hearing</u>. Any arbitration hearing you attend shall be in the federal judicial district of your residence.

<u>No Class Action or Private Attorney General Action</u>. Notwithstanding any language herein to the contrary, if you or we elect to arbitrate a Claim, neither you nor we will have the right to: (1) participate in a class action in court or in arbitration, either as a class representative, class member or class opponent; (2) act as a private attorney general in court or in arbitration, or (3) join or consolidate your Claim(s) with claims of any other person, and the arbitrator shall have no authority to conduct any such class, private attorney general or multiple-party proceeding. This paragraph does not apply to any lawsuit filed against us in court by a state or federal government agency even when such agency is seeking relief on behalf of a class of buyers/borrowers including you. This means that we will not have the right to compel arbitration of any claim brought by such an agency.

<u>Notice and Cure; Special Payment</u>: Prior to initiating a Claim, you may give us a written Claim Notice describing the basis of your Claim and the amount you would accept in resolution of the Claim, and a reasonable opportunity, not less than 30 days, to resolve the Claim. If (i) you submit a Claim Notice in accordance with this Paragraph on your own behalf (and not on behalf of any other party); (ii) you cooperate with us by promptly providing the information we reasonably request; (iii) we refuse to provide you with the relief you request; and (iv) the arbitrator subsequently determines that you were entitled to such relief (or greater relief), you will be entitled to a minimum award of at least $7,500 (not including any arbitration fees and attorneys' fees and costs to which you will also be entitled).

<u>Fees and Expenses</u>. An arbitration administrator and arbitrator may waive or reduce its fees for financial hardship. If you ask in writing, we will pay all administrator and arbitrator fees up to $2,500 that the administrator will not waive for any Claims you assert in good faith.

We will consider in good faith your request to pay all or part of any administrator or arbitrator fees over $2,500 ("additional fees"). To the extent we do not approve your request, if the arbitrator issues an award to you, we will still pay you for additional fees you must pay the administrator and/or arbitrator as follows:

(1) In the case of additional fees based on the amount of your Claim or the value of the relief you sought, we will pay you an amount equal to the fees you would have paid if the amount of your Claim or the value of the relief you sought had been the amount or value of the award to you.
(2) In the case of other additional fees not based on the amount of your Claim or the value of the relief you sought, we will pay you for the amount of such additional fees.
(3) If we are required to pay any greater sums under applicable law or in order for this Agreement to be enforced, we will pay such amounts.

DocuSign Envelope ID: 23B1F62C-9E35-44EC-A792-73307E21742

This is a copy view of the Authoritative Copy
by the designated custodian

We will bear the administrator and arbitrator fees we are normally required to pay and will also bear the expense of our attorneys, experts and witnesses, except where applicable law and the Contract allow us to recover attorneys' fees and/or court costs in a collection action we bring. You will bear the expense of your attorneys, experts and witnesses if we prevail in an arbitration. However, in an arbitration you commence, we will pay your reasonable fees if you prevail or if we must bear such fees in order for this Agreement to be enforced. Also, we will bear any fees if applicable law requires us to.

Applicable Law, Award of Arbitrator and Right to Appeal. Because the Contract involves a transaction in interstate commerce, the Federal Arbitration Act ("FAA") governs this Agreement. The arbitrator shall apply applicable substantive law consistent with the FAA. The arbitrator shall apply applicable statutes of limitations. The arbitrator is authorized and given the power to award all remedies that would apply if the action were brought in court. Either party may make a timely request for a brief written explanation of the basis for the award. The arbitrator shall not apply federal or state rules of civil procedure or evidence.

Judgment on the arbitrator's award may be entered in any court with jurisdiction. Otherwise, the award shall be kept confidential.

The arbitrator's decision is final and binding, except for any right of appeal provided by the FAA. However, if the amount of the Claim exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can appeal the award to a three-arbitrator panel administered by the administrator, which panel shall reconsider any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Agreement to "The arbitrator" shall mean the panel of arbitrators if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with the paragraph captioned "Fees and Expenses" above.

Miscellaneous. This Agreement survives payment of all amounts you owe, if any, under the Contract. It also survives your bankruptcy and any sale by us of your Contract.

If there is a conflict or inconsistency between the administrator's rules and this Agreement, this Agreement governs. If there is a conflict or inconsistency between this Agreement and the Contract, this Agreement governs. If a court or arbitrator deems any part of this Agreement invalid or unenforceable under any law or statute consistent with the FAA, the remaining parts of this Agreement shall be enforceable despite such invalidity. However, if a court limits or voids any part of the above paragraph captioned "No Class Actions or Private Attorney General Actions" in any proceeding, then this entire Agreement (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal such limitation or voiding.

This Agreement (if you do not reject) will supersede any prior arbitration agreement between you and us with respect to any Claim.



DocuSign Envelope ID: 12B2F82E-9E39-44E0-A792-763077B21742

This is a copy view of the Authoritative Copy h

**BY SIGNING BELOW, YOU EXPRESSLY AGREE TO THE ABOVE AGREEMENT. THE AGREEMENT MAY SUBSTANTIALLY LIMIT YOUR RIGHTS IN THE EVENT OF A DISPUTE. YOU ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT.**

*Richard Saddler*
_____
Customer Signature

_____
Customer Signature

By: _____
Authorized Signature

Date: _____09/21/18_____

## ARBITRATION ADMINISTRATORS

If you have a question about the administrator mentioned in this Agreement or if you would like to obtain a copy of their arbitration rules or fee schedules, you can contact them as follows:

American Arbitration Association (AAA)
13455 Noel Road, Suit 1750
Dallas, TX 75240-6620
www.adr.org

J.A.M.S./Endispute
700 11th Street, NW, Suite 450
Washington, DC 20001
www.jamsADR.com
(800) 352-5267

C100GA (Revised 03/27/2018)

DocuSign Envelope ID: 2B32F62E-9E39-44EC-A792-7530775217142

This is a copy view of the Authoritative Copy
by the designated custodian

# BUYERS GUIDE

**IMPORTANT:** Spoken promises are difficult to enforce. Ask the dealer to put all promises in writing. Keep this form.

| GMC | Terrain | 2015 | 2GKFLZE35F6281225 |
|---|---|---|---|
| VEHICLE MAKE | MODEL | YEAR | VEHICLE IDENTIFICATION NUMBER (VIN) |

## WARRANTIES FOR THIS VEHICLE:

[ ] # AS IS - NO DEALER WARRANTY

THE DEALER DOES NOT PROVIDE A WARRANTY FOR ANY REPAIRS AFTER SALE.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

[X] # DEALER WARRANTY

[ ] FULL WARRANTY.

[x] LIMITED WARRANTY. The dealer will pay _100_% of the labor and _100_% of the parts for the covered systems that fail during the warranty period. Ask the dealer for a copy of the warranty, and for any documents that explain warranty coverage, exclusions, and the dealer's repair obligations. *Implied warranties* under your state's laws may give you additional rights.

| SYSTEMS COVERED: | DURATION: |
|---|---|
| Gasoline/Diesel Engine | 100 days or 4,189 miles whichever comes first |
| Transaxle | 100 days or 4,189 miles whichever comes first |
| Driveaxle | 100 days or 4,189 miles whichever comes first |
| Air Conditioning | 100 days or 4,189 miles whichever comes first |

## NON-DEALER WARRANTIES FOR THIS VEHICLE:

[X] MANUFACTURER'S WARRANTY STILL APPLIES. The manufacturer's original warranty has not expired on some components of the vehicle.

[ ] MANUFACTURER'S USED VEHICLE WARRANTY APPLIES.

[ ] OTHER USED VEHICLE WARRANTY APPLIES.

Ask the dealer for a copy of the warranty document and an explanation of warranty coverage, exclusions, and repair obligations.

[X] SERVICE CONTRACT. A service contract on this vehicle is available for an extra charge. Ask for details about coverage, deductible, price, and exclusions. If you buy a service contract within 90 days of your purchase of this vehicle, *implied warranties* under your state's laws may give you additional rights.

## ASK THE DEALER IF YOUR MECHANIC CAN INSPECT THE VEHICLE ON OR OFF THE LOT.

**OBTAIN A VEHICLE HISTORY REPORT AND CHECK FOR OPEN SAFETY RECALLS.** For information on how to obtain a vehicle history report, visit ftc.gov/usedcars. To check for open safety recalls, visit safercar.gov. You will need the vehicle identification number (VIN) shown above to make the best use of the resources on these sites.

**SEE OTHER SIDE** for important additional information, including a list of major defects that may occur in used motor vehicles.

**Si el concesionario gestiona la venta en español, pídale una copia de la Guía del Comprador en español.**

*RS*

DocuSign Envelope ID: 1262F82B-9E89-44EC-A792-783077B21742

This is a copy view of the Authoritative Copy
by the designated custodian

Here is a list of some major defects that may occur in used vehicles.

**Frame & Body**
Frame-cracks, corrective welds, or rusted through
Dog tracks—bent or twisted frame

**Engine**
Oil leakage, excluding normal seepage
Cracked block or head
Belts missing or inoperable
Knocks or misses related to camshaft lifters and push rods
Abnormal exhaust discharge

**Transmission & Drive Shaft**
Improper fluid level or leakage, excluding normal seepage
Cracked or damaged case which is visible
Abnormal noise or vibration caused by faulty transmission or drive shaft
Improper shifting or functioning in any gear
Manual clutch slips or chatters

**Differential**
Improper fluid level or leakage, excluding normal seepage
Cracked of damaged housing which is visible
Abnormal noise or vibration caused by faulty differential

**Cooling System**
Leakage including radiator
Improperly functioning water pump

**Electrical System**
Battery leakage
Improperly functioning alternator, generator, battery, or starter

**Fuel System**
Visible leakage

**Inoperable Accessories**
Gauges or warning devices
Air conditioner
Heater & Defroster

**Brake System**
Failure warning light broken
Pedal not firm under pressure (DOT spec.)
Not enough pedal reserve (DOT spec.)
Does not stop vehicle in straight line (DOT spec.)
Hoses damaged
Drum or rotor too thin (Mfgr. Specs)
Lining or pad thickness less than 1/32 inch
Power unit not operating or leaking
Structural or mechanical parts damaged

**Air Bags**

**Steering System**
Too much free play at steering wheel (DOT specs.)
Free play in linkage more than 1/4 inch
Steering gear binds or jams
Front wheels aligned improperly (DOT specs.)
Power unit belts cracked or slipping
Power unit fluid level improper

**Suspension System**
Ball joint seals damaged
Structural parts bent or damaged
Stabilizer bar disconnected
Spring broken
Shock absorber mounting loose
Rubber bushings damaged or missing
Radius rod damaged or missing
Shock absorber leaking or functioning improperly

**Tires**
Tread depth less than 2/32 inch
Sizes mismatched
Visible damage

**Wheels**
Visible cracks, damage or repairs
Mounting bolts loose or missing

**Exhaust System**
Leakage

**Catalytic Converter**

---

DEALER NAME

CARVANA, LLC

ADDRESS

63 PIERCE RD                    WINDER GA 30680-7280

TELEPHONE                       EMAIL

8003334554                      DL-CarvanaPhoenixAdvocate@carvana.com

FOR COMPLAINTS AFTER SALE, CONTACT:
Carvana Customer Advocates at: 1.800.333.4554 or
1930 W Rio Salado Pkwy, Tempe, AZ 85281

---

**IMPORTANT:** The information on this form is part of any contract to buy this vehicle. Removing this label before consumer purchase (except for purpose of test-driving) violates federal law (16 C.F.R. 455).

RS

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-763077B21742

This is a copy view of the Authoritative Copy held by the designated custodian

# Retail Purchase Agreement
## – Georgia –

| BUYER | Richard Saddler |
|---|---|
| ADDRESS | 701 RIDGESIDE DR # L |
| CITY, STATE, ZIP | BALLWIN MO 63021 |
| PHONE(S) | RES. 3104282110 | BUS. |

| VEHICLE BEING PURCHASED | | | | |
|---|---|---|---|---|
| Year 2015 | Make GMC | Model Terrain | | Body SUV |
| Lic. Plate # | License Tab # | Expires | Mileage 63770 | Color GRAY |
| VIN # 2GKFLZE35F6281225 | | | | |

Dealership provides an express limited warranty. Buyer has a copy of the limited warranty agreement. No other express or implied warranties are made by the Dealership and there will be no implied warranties of merchantability or fitness for a particular purpose unless required by applicable law. Seller does not have to make any repairs on this vehicle, except as required under the limited warranty and applicable state law. Buyer may also have other rights that vary from state to state.

Buyer ("you") and Dealership ("we") agree that this Retail Purchase Agreement (this "Agreement") is governed by federal law and the law of the state of the Dealership Address listed above. We are agreeing to sell to you and you are agreeing to buy from us the Vehicle at our licensed dealership location shown above, subject to the terms and conditions of this Agreement. We agree to transfer to you and you agree to accept title and ownership of the Vehicle in the state of the Dealership Address listed above. When we transfer title and ownership of the Vehicle to you, you may take delivery of the Vehicle from us at our licensed dealership location shown above or you may make arrangements with us to have the Vehicle transported to another mutually agreed-upon location for your pick-up.

| TRADE IN VEHICLE #1 | | | | |
|---|---|---|---|---|
| Year N/A | Make N/A | Model N/A | | Body N/A |
| Lic. Plate # N/A | License Tab # | Expires | Mileage N/A | Color N/A |
| VIN # N/A | | | | |

| TRADE IN VEHICLE #2 | | | | |
|---|---|---|---|---|
| Year N/A | Make N/A | Model N/A | | Body N/A |
| Lic. Plate # N/A | License Tab # | Expires | Mileage N/A | Color N/A |
| VIN # N/A | | | | |

_RS_ _____ Buyer's Initials

| Date | 09/21/18 | Phone | 8003334554 |
|---|---|---|---|
| Dealership | CARVANA, LLC | | |
| Address | 63 PIERCE RD | | |
| City, State, Zip | WINDER GA 30680-7280 | | |
| Stock Number | 2000151880 | | |

**THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

**LA INFORMACION QUE VE ADHERIDA EN LA VENTANILLA FORMA PARTE DE ESTE CONTRATO. LA INFORMACION CONTENIDA EN ELLA PREVALECE POR SOBRE TODA OTRA DISPOSICION INCLUIDA EN EL CONTRATO DE COMPRAVENTA.**

| | | |
|---|---|---|
| 1 | Selling price | $21,700.00 |
| 2 | TAVT/Sales Tax* | $1,652.02 |
| 3 | License and Title Fee | $92.00 |
| 4 | Vehicle Protection | $2,350.00 |
| 5 | Gap Coverage | $695.00 |
| 6 | Subtotal (Selling Price + Delivery Fee + Fees + Taxes) | $26,489.02 |
| 7 | Balance Due (Subtotal) | $26,489.02 |
| | **TOTAL BALANCE DUE** (BALANCE DUE + TRADE-IN BALANCE) | **$26,489.02** |

### FINANCE CHARGE
The dollar amount the credit will cost you

$ 11,415.51

If financed, interest charged on the principal amount. See Retail Installment Contract for more information.

*For GA customers, this value is TAVT. For customers outside of GA, this value is the sales tax due at registration.

C100GA (09/21/18)

THE ABOVE LINE ITEMS ARE ESTIMATES, AT THE TIME THE BALANCES AND FEES ARE VERIFIED AND CONTRACT DETERMINED, APPROPRIATE ADJUSTMENTS, IF NECESSARY, WILL BE MADE. ANY DIFFERENCE IN THE PAYOFF AMOUNT IS THE RESPONSIBILITY OF THE BUYER(S).

**Carvana Vehicle Return Program**

We will give you the ability to return the Vehicle to Carvana and terminate this retail purchase agreement and any retail installment contract executed in connection herewith so long as:
1) You alert Carvana prior to 5pm EST on the 7th calendar day after you take delivery of the Vehicle;
2) You return the vehicle in one of two ways:
    i) Within a Carvana service area: you make the Vehicle available for pick up by a Carvana representative at a predetermined time and location the following business day. Cost of pick-up will be paid by Carvana. Service area is designated by zip code and subject to change without prior notice.
    ii) Outside of a Carvana service area: Carvana will arrange for transport of the vehicle. The cost will be paid by you. Service area is designated by zip code and subject to change without prior notice.
3) The Vehicle is free of all liens and encumbrances other than the lien created in your favor by any applicable retail installment contract;
4) The Vehicle is in the same condition you received it except for reasonable wear and tear (evidence of smoking in the vehicle during the 7 Day Test Own is not considered reasonable wear and tear) and any mechanical problem that becomes evident after delivery that was not caused by you;
5) You have not driven it more than 400 miles;
6) The Vehicle is without damage or having been in an accident that occurred after you took delivery of the Vehicle;
7) If the Vehicle is driven more than 400 miles, at Carvana's election you will pay $1.00 per mile for each mile the Vehicle was driven over 400 miles. If you return your Vehicle and had traded in a vehicle to us, we will return your trade to you only after you have paid all fees required for the return of the Vehicle. Required fees may not be paid by personal check. Required fees will be deducted from your down payment refund. If you paid your down payment via ACH transaction, we will pay you and/or return your trade in by the earlier of (a) when you provide evidence that the ACH transaction was cleared, or (b) 15 business days after your purchase of the Vehicle. So long as you meet all conditions for return of the Vehicle outlined above, Carvana will not report this account to the credit bureaus.

**Trade in Representation and Warranty:** You represent and warrant that the trade-in described in the Buyer's order/Purchase Agreement, if any, has not been misrepresented and air pollution equipment is on the trade-in and is working, you will provide to us a Certificate of Title (or documents that allow us to obtain it), free of any lien(s) or encumbrance(s), (i.e. titling issues, child support or amounts due to government titling or registration agency,) and you have the right to sell the trade-in.

**General:** At time of delivery, or at any time during your 7 Day Test Own period, you may reject your vehicle and terminate your vehicle financing and purchase for any reason.

In certain states, dealers may not place any insignia that advertises the dealer's name on a vehicle unless the Buyer consents thereto in the purchase contract for such vehicle. Unless Buyer notifies dealer otherwise in writing, Buyer hereby expressly consents to the placement of Carvana's name on the vehicle's license plate cover. Buyer expressly waives any compensation for the placement of dealer's name on the vehicle.

**Default:** You will be in default if any of the following occurs (except as may be prohibited by law): 1. You gave us false or misleading information on carvana.com or on the telephone, via email or text message, in person, or any other communication medium in connection with the purchase of the Vehicle relating to this Agreement; 2. If we cannot verify any information that you have provided us; 3. If we discover a material adverse change in any information you provided us during our review process; 4. If you do not cooperate in the verification and review process described below; 5. You fail to keep any other agreement or promise you made in this Agreement and/or any retail installment contract executed in connection herewith.

**Assignment:** You may not assign your rights under this Agreement and/or any retail installment contract executed in connection herewith without our permission.

**After-sale Review and Verification Process:** The Vehicle sold to you is subject to an after-sale review and verification of the information you have provided to us. You agree to cooperate with the after-sale review and verification process.

**Limitation on Damages: Unless prohibited by law, you shall not be entitled to recover from us any consequential, incidental or punitive damages, damages to property or damages for loss of use, loss of time, loss of profits, or income or any other similar damages. We are not liable for any failure or delay in delivering the vehicle to you if it is beyond our control, not our fault or we are not negligent.**

**References:** To the extent you are financing your purchase with us, we may contact your employer or your references to verify the information you provided to us in connection with this Agreement.

**Odometer (mileage):** Each of your and our representations regarding odometer readings are subject to information provided by others, including government agencies. We each understand that this information is not always accurate. As permitted by applicable law, neither us is responsible for any inaccuracies in this information to the extent it is not the party's fault.

**Disclosure on Airbags:** We disclaim any knowledge of, and make no representation or warranty as to the condition or operability of the airbag(s) on the vehicle unless otherwise disclosed to you on the AutoCheck Vehicle History Report. You acknowledge that we have not made any representations, oral or in writing, as to the condition or operability of the airbag(s), and you accept the vehicle without representation or warranty from us. You further acknowledge that you had the opportunity to have the airbag(s) checked by someone of your choice prior to the expiration of your 7 Day Test Own Period.

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-7530778B21742

...urchase and maintain liability insurance. We do not provide liability insurance for you and it is not included in your Agreement. Your choice of insurance providers will not affect our decision to sell you the vehicle.

**Record Retention:** You agree that we may maintain documents and records related to the vehicle and the Agreement electronically, including, but not limited to, documents and record images, and that we may dispose of original documents. You agree that a copy of any such electronic records may be used and shall be deemed to be the same as an original in any arbitration, judicial, or non-judicial or regulatory proceeding related to the vehicle.

**Arbitration Agreement:** The arbitration agreement entered into between you and Dealer is incorporated by reference into and is part of this Agreement.

**NOTICE:** Carvana, LLC allows you to finance applicable sales/use taxes assessed on ancillary products (vehicle service contract, GPS, GAP Coverage). Whether you finance your vehicle purchase or pay cash, if your vehicle is registered in the state where you purchased your vehicle, Carvana will remit the applicable sales/use tax on ancillary products to that state on your behalf. Unless required by state law, if your vehicle is registered in a state that is not the state where you purchased the vehicle, Carvana will not collect or remit to the state of vehicle registration any applicable sales/use tax on ancillary products on your behalf unless you live in Kansas, Louisiana, or Pennsylvania.

**Buyer acknowledges receipt of a copy of this Agreement. No oral agreements or understandings apply.**
**This agreement is not binding until accepted by an authorized representative of Carvana.**

Sales Advisor _____

Buyer _____
*Richard Saddler*
Richard Saddler

Accepted By _____
Carvana

DocuSign Envelope ID: 1282F82E-9E36-44EC-A792-7530F7B21744

# GAP ADDENDUM TO
# RETAIL INSTALLMENT CONTRACT

| CONTRACT NUMBER | |
|---|---|
| CVGA | 1189373 |

## A. TRANSACTION INFORMATION

| Customer's Name | | | | |
|---|---|---|---|---|
| | Richard Saddler | | | |

| Address | | City | | State | ZIP |
|---|---|---|---|---|---|
| 701 Ridgeside Dr # L | | Ballwin | | MO | 63021 |

| Phone Number | Email Address |
|---|---|
| 3104282110 | |

| Creditor's Name | | Creditor's Policy # | Creditor's Phone Number |
|---|---|---|---|
| Carvana | | | 1 (800) 333-4554 |

| Creditor's Address | | City | | State | ZIP |
|---|---|---|---|---|---|
| 1930 W. Rio Salado Pkwy | | Tempe | | AZ | 85281 |

| Vehicle Year / Make / Model | | | Vehicle Identification Number | Vehicle Class |
|---|---|---|---|---|
| 2015 | GMC | Terrain | 2GKFLZE35F6281225 | 01 |

| Manufacturer's Suggested Retail Price ("MSRP") | Current Odometer | Deal No. | Use (Personal, Business, or Commercial) |
|---|---|---|---|
| 21,700.00 | 63770 | CVGA 1189373 | |

| GAP Addendum Price | Term of GAP Addendum | Amount Financed | Inception Date |
|---|---|---|---|
| 695.00 | 72 | 26,489.02 | 09/21/18 |

This Guaranteed Asset Protection ("GAP") Contract Addendum ("GAP Addendum") amends the Retail Installment Contract ("RIC"). This GAP Addendum is between the Customer ("I", "You", or "Your") and the Creditor ("We", "Us", or "Our"). The administrator named herein will service this GAP waiver. Although not required to do so, You have elected to participate in Our GAP Program. GAP does not take the place of insurance on the vehicle. You are responsible for maintaining collision and comprehensive insurance for the full value of the vehicle and any other insurance required by the RIC or applicable law. You are responsible for all notifications or claims that are required to be filed with Your automobile insurance company. We will not process or handle Your insurance claims for You.

## B. TERMINATION OF ADDENDUM

This Addendum will terminate as of the earliest date that any of the following events occur: 1) the date Your RIC is scheduled to terminate; 2) upon payment in full of the RIC; 3) expiration of any redemption period following the repossession or surrender of the Covered Vehicle, however, in the event of acceleration or payment in full of the unpaid balance, and upon Our notice thereof, You will receive a refund of the cost of this Addendum, calculated from the date of the acceleration or demand for payment in full; 4) after a Constructive Total Loss or theft of the Covered Vehicle occurs and Our rights against You for the amount due under a payable loss have been waived; 5) the date the RIC is prepaid or the RIC is refinanced, however, in the event of prepayment, and upon Our notice thereof, You will receive a refund of the cost of this Addendum based on the prepayment date; or 6) upon the occurrence of a denial of benefits based on an Exclusion, from which You will receive a refund based upon such Exclusion. It is Your responsibility to notify Us or Our Administrator, in writing, of Your request to cancel this coverage and to request a refund/credit of the GAP charge which, at Our option, may be made to satisfy Your obligations under the RIC.

**YOU ACKNOWLEDGE AND AGREE THAT YOUR ACCEPTANCE OF THIS GAP ADDENDUM IS VOLUNTARY AND IS NOT REQUIRED IN ORDER FOR YOU TO OBTAIN CREDIT, DOES NOT IMPACT YOUR ABILITY TO OBTAIN ANY PARTICULAR OR MORE FAVORABLE CREDIT TERMS, AND HAS NO EFFECT ON THE TERMS OF THE RELATED SALE OF THIS VEHICLE. This coverage may decrease over the term of Your RIC and may not extend for the full term of Your RIC. You may wish to consult an alternative source to determine whether similar coverage may be obtained and at what cost. You also acknowledge that You have read and understand this Addendum and its provisions. No other verbal representations have been made to You that differ from these written provisions. This Addendum includes a binding arbitration clause. You should carefully read the back of this Addendum for additional information on eligibility, requirements, conditions and exclusions that could prevent You from receiving benefits under this Addendum.**

## C. SIGNATURES

I have read, understand, and accept the terms and conditions of this Addendum, and agree to be bound thereby:

| *Richard Saddler* | 09/21/18 |
|---|---|
| Customer | Date |

| *[signature]* | 09/21/18 |
|---|---|
| Signature of Creditor | Date |

SilverRock

GAP (CV-MuSt) 03-2017

You may contact Administrator during normal business hours at the following number or address: SilverRock Automotive, Inc P.O. Box 29087, Phoenix, AZ 85038-9087 • (888) 849-0681

Page 1 of 3

DocuSign Envelope ID: 1282F82E-9E39-44EC-A792-763077B21742

This is a copy view of the Authoritative Copy held by the de...

# GAP ADDENDUM TO
# RETAIL INSTALLMENT CONTRACT

| CONTRACT NUMBER | |
|---|---|
| CVGA | 1189373 |

## TERMS AND CONDITIONS

**D. WAIVER**

(1) In the event of a Constructive Total Loss to the Covered Vehicle, We agree to waive Our rights against You for the GAP Amount then due under the RIC. You will remain responsible for payment of any items stated under Exclusions.

(2) All GAP Amount claims must be reported to Us or Our Administrator within 90 days of receiving settlement from the Primary Carrier; or if no Primary Carrier coverage is in effect on the date of loss, within 90 days of the accident or theft. No payment for payable losses will be made by Us if the claim is not reported within these stated time periods.

**E. CANCELLATION**

(1) YOUR RIGHT TO CANCEL: You have the unconditional right to cancel and terminate this optional Addendum for a refund/credit of the unearned portion of the charge for this Addendum at any time. If any termination occurs within 30 days of the Addendum purchase You will receive a full refund/credit of the Addendum cost, provided no loss has occurred. After 30 days, You will receive a refund/credit of the Addendum cost calculated by the pro rata method, or by the refund method as may be required by state or federal law. All refunds will be applied to satisfy Your obligations under the RIC. To cancel the Addendum and request a refund/credit, You must contact Us or Our Administrator, in writing, at the address shown herein.

(2) If You do not receive the refund/credit within 60 days of notice of cancellation/termination, contact Us or Our Administrator.

**F. CLAIMS PROCEDURES**

(1) In the event of a Constructive Total Loss, You must notify and provide all of the following to Our Administrator, SilverRock Automotive Inc (at the address shown below): 1) a complete copy of the primary insurance settlement, including the valuation report; 2) a copy of the original RIC and this Addendum; 3) A copy of the accident/police report; 4) a copy of Your automobile insurance policy from Your Primary Carrier; 5) a copy of the payoff from the Creditor as of the date of loss; 6) a copy of the insurance settlement check from Your Primary Carrier; 7) a copy of the damage estimate; 8) a copy of the payment history for the RIC, 9) a list of refundable items, and 10) a copy of the Primary Carrier's denial of claim (if applicable). You will not be required to provide additional documentation that is not listed in this GAP Addendum.

(2) Neither Our Administrator nor We will obtain this information for You. The Administrator or We must receive this documentation within 90 days of settlement by Your Primary Carrier. No payment will be made if this documentation is not provided to Our Administrator or Us within this stated time period.

**G. ASSIGNMENT**

(1) The GAP Addendum will follow the RIC with no subrogation rights against the Customer, if the RIC is sold or assigned by Us.

**H. DEFINITIONS**

(1) *Actual Cash Value (ACV).* The retail value of the Covered Vehicle, on the date of loss, as listed in a national or regional guide, such as National Automobile Dealers Association (NADA) or, at the Administrator's discretion, the Administrator may use an equivalent national or regional guide for the territory in which the Covered Vehicle is principally garaged. For a Covered Vehicle which has no retail value available, or is located in territories where NADA or an equivalent national or regional guide is not customarily used, ACV will be determined using the best information available to Our Administrator, or which Administrator reasonably believes accurately reflects the retail value of the Covered Vehicle and is customarily used as the basis for establishing ACV for Covered Vehicle in the territory of the Covered Vehicle location.

(2) *Constructive Total Loss.* A direct and accidental loss of or damage of Covered Vehicle, which meets one of these criteria: 1) the total cost to repair the Covered Vehicle is greater than the ACV of the Covered vehicle immediately prior to the date of loss; or 2) the Covered Vehicle is stolen and is not recovered within 30 days from the date a police report was filed, and Your Primary Carrier declares the Covered Vehicle a total loss. In the case there is no primary insurance coverage, and only upon reasonable advanced notice, the Covered Vehicle must be available for the Administrator's inspection or appraisal to determine if the Covered Vehicle is a Constructive Total Loss. If the Covered Vehicle is not available for inspection or appraisal, then the claim will not be covered. Notwithstanding the foregoing, inspection or appraisal by the Administrator will not be required if the Covered Vehicle is stolen and is not recovered within 30 days from the date a police report was filed, and Your Primary Carrier declares the Covered Vehicle a total loss.

(3) *Covered Vehicle.* Any four-wheel private passenger automobile, van, or light truck, as described in the RIC, used for personal purposes. This definition is subject to the Exclusions provisions. If benefits under this Addendum are denied because it is determined that Your vehicle is not a Covered Vehicle as defined herein, then You will receive a full refund of the cost of this Addendum upon denial of such claim for benefits.

(4) *Creditor:* The seller of the Covered Vehicle and holder of the RIC.

(5) *Date of Loss.* The date on which Covered Vehicle is reported stolen or incurs physical damage that is severe enough to constitute a Constructive Total Loss.

(6) *Delinquent Payment.* Any payment, as described in the RIC, which remains unpaid for a period of more than 30 days after the due date stated in the RIC. The delinquent payment will be determined as of and limited to amounts past due on the date of loss.

(7) *RIC.* The contract which represents the financing agreement between Us and You for the purchase of the Covered Vehicle, and which explains the terms, conditions, inception date, and expiration date of the financing agreement.

(8) *GAP Amount.* The difference between the Net Payoff and the Primary Carrier's physical damage insurance settlement for a Constructive Total Loss, or if the Covered Vehicle was uninsured at the time of the Constructive Total Loss, then the difference between the Net Payoff and the Actual Cash Value. The GAP Amount includes the amount of Your physical damage insurance deductible up to $1,000.

(9) *Net Payoff.* The amount of Our interest as of the date of loss, as represented by the portion of Your unpaid balance according to the original payment schedule of the RIC that is secured by collateral subject to the Limitations. The amount does not include any unearned finance charges; late charges; any delinquent payments; uncollected service charges; refundable prepaid taxes and fees; the recoverable portion of financed insurance charges; or the recoverable portion of financed amounts for unearned insurance premiums or refundable charges (including, but not limited to credit life, vehicle service coverages/warranties and guaranteed automobile protection charges) that are owed by You on the date of loss; and amounts that are added to the RIC balance after the inception date of the RIC.

(10) *Primary Carrier.* The insurance company that: is selected by You to provide physical damage coverage on the vehicle; or provides liability coverage to any person who has caused Your vehicle to incur a Constructive Total Loss.

(11) *Territory.* This coverage applies only to payable losses sustained while the Covered Vehicle is: 1) within the United States of America (U.S.), its territories or possessions; 2) in Canada; or 3) being transported between any of the previously stated.

**I. EXCLUSIONS**

This Addendum will not provide coverage for loss:

(1) Resulting from losses occurring prior to the effective date of this Addendum.

(2) Resulting from confiscation of Covered Vehicle by a government body or public official.

(3) Caused by theft, unless You or We file a police report.

(4) Resulting from being operated, used, or maintained in any race, speed contest, or other contest.

(5) Occurring after the Covered Vehicle has been repossessed.

(6) For any amounts deducted from the Primary Carrier's settlement due to wear and tear, prior damage, unpaid insurance premiums, salvage, towing and storage and other condition adjustments.

**J. ARBITRATION**

IF THE RIC INCLUDES AN ARBITRATION PROVISION, THEN ALL DISPUTES BETWEEN YOU AND US RELATING TO THIS ADDENDUM ARE SUBJECT TO THE ARBITRATION PROVISIONS OF THE RIC, WHICH PROVISIONS ARE HEREBY INCORPORATED BY REFERENCE.

**K. FRAUD AND MISREPRESANTATION**

This Addendum is issued in reliance upon the truth of all representations made by You. We will not waive the GAP Amount as to any RIC where You: 1) intentionally concealed or misrepresented any material fact; 2) engaged in fraudulent conduct; or 3) made a materially false statement relating to submitting a claim. If You have concealed or misrepresented any material fact(s) concerning this coverage, or in case of fraud, attempted fraud, or the false swearing by affecting any matter relating to this coverage, whether before or after payable loss, this Addendum may be terminated and all charges will be returned.



You may contact Administrator during normal business hours at the following number or address: SilverRock Automotive, Inc
P.O. Box 29087, Phoenix, AZ 85038-9087 • (888) 849-0651

This is a copy view of the Authoritative Copy held by the designated custodian.

# GAP ADDENDUM TO
# RETAIL INSTALLMENT CONTRACT

| CONTRACT NUMBER | |
|---|---|
| CVGA | 1189373 |

## L. STATE – SPECIFIC PROVISIONS

(1) **Alabama:** *The following provision is hereby added:* "The cost of this GAP Addendum is not regulated and You should determine whether the cost of this GAP Addendum is reasonable."

(2) **Arkansas:** None

(3) **Arizona:** None

(4) **California:** None

(5) **Colorado:** *The following provision is hereby added:* "GAP is not a substitute for collision or property insurance. You may wish to consult an insurance agent to determine whether similar coverage may be obtained and at what cost. GAP is not a substitute for collision or property damage insurance. If this transaction contains a fee or premium for guaranteed automobile protection, all holders and assignees of this consumer credit transaction are subject to all claims and defenses which the consumer could assert against the original Creditor resulting from the consumer's purchase of guaranteed automobile protection."

(6) **Georgia:** None

(7) **Hawaii:** None

(8) **Florida:** None

(9) **Illinois:** None

(10) **Indiana:**
  (a) *The following provision is hereby added:* "You may be able to obtain GAP coverage from Your primary insurance carrier."
  (b) *The definition for the term "Actual Cash Value" is deleted and hereby replaced with the following:* "Actual Cash Value (ACV)." The value of the covered vehicle, on the date of loss, as established by the primary insurance carrier. If there is no primary insurance coverage in place at the time of a claim, then the applicable NADA value or its equivalent shall be used."
  (c) *The following provision is hereby added:* "For additional information or complaints, You may contact the Indiana Department of Financial Institutions, 30 South Meridian Street, Suite 200, Indianapolis, Indiana 46204, (317) 232-3955, http://www.in.gov/dfi."
  (d) *The following provision is hereby added to Section I, Exclusions:* "RICs where the amount financed, less the cost of the GAP Waiver, the cost of credit insurance, and the cost of warranties or service agreements, is less than 80% of MSRP for a new vehicle or the NADA average retail value for a used vehicle are not eligible for participation in this GAP program."

(11) **Iowa:** None

(12) **Kansas:**
  (a) *The following provision is hereby added:* "The GAP coverage may not cancel or waive the entire amount owing at the time of loss."
  (b) *The following provision is hereby added:* "Kansas consumers with questions or complaints may contact the Office of the State Bank Commissioner, 700 S.W. Jackson #300, Topeka, KS 66603, (785) 296-2266 or toll free 1-877-387-8523."
  (c) *Section H(1) is hereby deleted and replaced with the following:* "Actual Cash Value (ACV). The value established by the primary insurance carrier. If there is no primary insurance coverage at the time of the loss, the market value of the Covered Vehicle will be determined by the National Automobile Dealers Association ("NADA") Official Used Car Guide or equivalent."

(13) **Kentucky:** None

(14) **Louisiana:**
  (a) *The following provision is hereby added to Section E ("Cancellation"):* "In order to receive a refund due in the event of early cancellation of this GAP Waiver Addendum after the first thirty (30) days from purchase, You must provide a written request to cancel to the Administrator or Creditor within ninety (90) days of the occurrence of the event terminating the GAP Waiver Addendum. If You elect to cancel this GAP Waiver, no cancellation fee shall be charged."
  (b) *Section D(1) is hereby deleted, and replaced with the following:* "In the event of a Constructive Total Loss to the Covered Vehicle, We agree to waive Our rights against You for the amount due under a payable loss. In addition to the provisions of payable loss, You will remain responsible for payment of any items stated under Exclusions. Upon the satisfaction of each of Your duties in Section F ("Claims Procedures") We agree to waive Our rights against You for the amount due under a payable loss within 60 days of the incident or 30 days from filing of the police report."
  (c) *Section I(5) is hereby deleted and replaced with the following:* "For any amounts deducted from the Primary Carrier's settlement due to prior damage, unpaid insurance premiums, salvage, towing and storage and other condition adjustments."

(15) **Maryland:**
  (a) *Section H(8) is hereby deleted and replaced with the following:* "Net Payoff.* The amount of Our interest as of the date of loss, as represented by the portion of Your unpaid balance according to the original payment schedule of the RIC that is secured by collateral subject to the

limitations. The amount does not include any unearned finance charges; late charges; any delinquent payments; uncollected service charges; refundable prepaid taxes and fees; the recoverable portion of financed insurance charges; or the recoverable portion of financed amounts for unearned insurance premiums or refundable charges (including, but not limited to credit life, vehicle service coverages/warranties and guaranteed automobile protection charges) that are owed by You on the date of loss and that are actually refunded to the buyer or credited as a reduction to the loan balance; and amounts that are added to the RIC balance after the inception date of the RIC."
  (b) *The following provision is hereby deleted from Section I, Exclusions:* For any amounts deducted from the Primary Carrier's settlement due to wear and tear, prior damage, unpaid insurance premiums, salvage, towing and storage and other condition adjustments.

(16) **Michigan:** None

(17) **Mississippi:** None

(18) **Missouri:** None

(19) **Nebraska:** *The following provision is hereby added:* "A guaranteed asset protection waiver is not insurance and is not regulated by the Department of Insurance, and the guaranteed asset protection waiver remains a part of the finance agreement upon the assignment, sale, or transfer of such finance agreement by the Creditor or the Creditor's designee."

(20) **Nevada:** *The following provision is hereby added:* "THIS WAIVER IS NOT AN INSURANCE POLICY. A guaranteed asset protection waiver is not a policy of liability or casualty insurance and does not satisfy the requirement to maintain liability insurance pursuant to NRS 485.185. Failure to make a timely payment under the terms of the finance agreement may void the guaranteed asset protection waiver."

(21) **New Hampshire:** *The following provision is hereby added:* "In the event that You do not receive satisfaction under this contract, You may contact the New Hampshire insurance department at 1-800-852-3416 or 21 South Fruit Street, Suite 14, Concord, NH 03301".

(22) **North Carolina:** None

(23) **Ohio:** None

(24) **Oklahoma:** None

(25) **Pennsylvania:** None

(26) **South Carolina:** None

(27) **Tennessee:** None

(28) **Utah:**
  (a) *The following provision is added to Section J:* "ANY MATTER IN DISPUTE BETWEEN YOU AND CREDITOR MAY BE SUBJECT TO ARBITRATION AS AN ALTERNATIVE TO COURT ACTION PURSUANT TO THE RULES OF (THE AMERICAN ARBITRATION ASSOCIATION OR OTHER RECOGNIZED ARBITRATOR), A COPY OF WHICH IS AVAILABLE ON REQUEST FROM CREDITOR. ANY DECISION REACHED BY ARBITRATION SHALL BE BINDING UPON BOTH YOU AND CREDITOR. THE ARBITRATION AWARD MAY INCLUDE ATTORNEY'S FEES IF ALLOWED BY STATE LAW AND MAY BE ENTERED AS A JUDGEMENT IN ANY COURT OF PROPER JURISDICTION."
  (b) *The following provision is added:* "This GAP Waiver is subject to limited regulation by the Utah Insurance Commissioner. A complaint regarding this GAP Waiver may be submitted to the Utah Insurance Commissioner."

(29) **Virginia:** None

(30) **West Virginia:** None

(31) **Wisconsin:**
  (a) *Section E ("Cancellation") is hereby deleted in its entirety and replaced with the following:* "YOUR RIGHT TO CANCEL: You have the unconditional right to cancel and terminate this optional Addendum for a refund/credit of the unearned portion of the charge for this Addendum at any time. If any termination occurs within 30 days of the Addendum purchase You will receive a full refund/credit of the Addendum cost, or a full credit of the Addendum cost plus the amount of applicable finance charges, provided no loss has occurred. After 30 days, You will receive a refund/credit of the Addendum cost calculated by the Pro Rata method, or by the refund method as may be required by state or federal law. We will refund all charges to the Creditor. To cancel the Addendum and request a refund/credit, You must contact the Creditor, in writing, at the address shown above. If You do not receive the refund/credit within 60 days of notice of cancellation/termination, contact the GAP Administrator stated above.



You may contact Administrator during normal business hours at the following number or address: SilverRock Automotive, Inc
P.O. Box 29087, Phoenix, AZ 85038-9087 • (888) 849-0681

DocuSign Envelope ID: 1282F82E-9E39-44EC-A792-7530F7B21742

 **CARVANA**

# Carvana Care

This is a copy only of the Authoritative Copy in ... ...y th...

| APPLICATION/CONTRACT NUMBER |
|---|
| CVSC    1189373 |

This document is the Application and, if accepted by the Administrator, the Vehicle Service Contract. If this Application cannot be accepted by the administrator as written You will be notified of any changes to the coverage applied for within approximately 60 days. If You choose not to accept these changes to Your application for coverage or Your Vehicle does not qualify for any type of coverage Your Contract Price will be refunded.

## CONTRACT HOLDER (CUSTOMER, YOU, YOUR)

| CUSTOMER'S NAME | | CO-CUSTOMER'S NAME | | |
|---|---|---|---|---|
| Richard Saddler | | N/A | | |
| ADDRESS | CITY | | STATE | ZIP |
| 701 Ridgeside Dr # L | Ballwin | | MO | 63021 |
| PHONE NUMBER | EMAIL ADDRESS | | | |
| 3104282110 | | | | |

## COVERED VEHICLE (YOUR VEHICLE)

| YEAR | MAKE | MODEL | | |
|---|---|---|---|---|
| 2015 | GMC | Terrain | | |
| VIN | CURRENT ODOMETER | VEHICLE PURCHASE DATE | | VEHICLE PURCHASE PRICE |
| 2GKFLZE35F6281225 | 63770 | 09/21/18 | | 21,700.00 |

## SELLING DEALERSHIP

| NAME | PHONE NUMBER | | ACCOUNT NUMBER | |
|---|---|---|---|---|
| CARVANA, LLC | 8003334554 | | 2000151880 | |
| ADDRESS | CITY | | STATE | ZIP |
| 63 PIERCE RD | WINDER | | GA | 30680-7280 |

## CONTRACT INFORMATION

| CONTRACT TERM | | EXPIRATION ODOMETER | EXPIRATION DATE |
|---|---|---|---|
| **Months** 36          **Mileage** 100000 | | 100,000 | 09/20/21 |
| CONTRACT PURCHASE PRICE | | DEDUCTIBLE | |
| $ 2,350.00 | | **$50** | |

## LIENHOLDER

You authorize the lender to: (1) be listed as joint payee and receive any refund in the event this Contract is cancelled, (2) cancel this Contract in the event of repossession or total loss, (3) be listed as sole payee on all repossessions.

| NAME | | | |
|---|---|---|---|
| CARVANA, LLC | | | |
| ADDRESS | CITY | STATE | ZIP |
| 1930 W Rio Salado Parkway | Tempe | AZ | 85281 |

This coverage ends with either of the following, whichever occurs first: (1) When the mileage of Your Vehicle, as measured from zero (0) miles reaches the mileage limit for the plan selected, or (2) when the time limit for the term selected expires as measured from the Vehicle Purchase Date. The term of this Contract is inclusive of the manufacturer's warranty period.

I have read and understand this document. I understand that the above information is subject to verification and that the Application for coverage may be rejected or the terms of coverage may be modified if any of the above information is incorrect or if the Vehicle is ineligible for the term, coverage, or deductible applied for. **The purchase of this Vehicle Service Contract is not required to either purchase or obtain financing for the Vehicle.**

*Richard Saddler*
_____
*Customer Signature*

_____
*Co-Customer Signature*

09/21/18
_____
*Contract Purchase Date*

_____
*Signature of Selling Dealership Representative*

 SilverRock.

VSC (SR-CV-GA-EXC) 07-2018

You may contact the Administrator during normal business hours at the following number or address: SilverRock Automotive, Inc.
P.O. Box 29087, Phoenix, AZ 85038-9087 • (866) 628-3905

Page 1 of 5

This is a copy view of the Authorization Copy E
by the S...

 CARVANA

# Carvana Care

APPLICATION/CONTRACT NUMBER

CVSC    1189373

## DEFINITIONS

- "We", "Us" and "Our" means "SilverRock Automotive, Inc.", the Administrator named in the Contract. This Contract is between Us and the Customer named herein.
- "Covered Part" means an item defined as a Covered Part in the Covered Parts section below.
- "Breakdown" or "Mechanical Breakdown" means that event caused by the total failure of any Covered Part to work as it was designed to work in normal service, including a total failure resulting from wear and tear or ordinary use. Please refer to the wording under exclusions for a listing of conditions under which the failure of a Covered Part is not considered a Mechanical Breakdown.

## YOUR OBLIGATIONS

- In order for this Contract to remain in force, the minimum requirement on oil and oil filter changes is every six (6) months or 5,000 miles, whichever occurs first. If Your Vehicle is equipped with a timing belt, the belt must be replaced before Your Vehicle's odometer reads 60,000 miles. If the manufacturer requires shorter maintenance intervals than those listed above, You must follow the manufacturer's recommendations. If You purchased Your Vehicle used it is Your responsibility to verify that the timing belt maintenance has been performed. All other maintenance and servicing must be followed as recommended by Your Vehicle's manufacturer. You are responsible for maintaining correct levels and types of fuels, lubricants and coolants. You must keep and make available verifiable signed service/purchase receipts which show that this maintenance has been performed within the time and mileage limits required.
- You or Your licensed repair facility are required to obtain an Administrator's authorization number prior to beginning any repair covered by this Contract.
- You are responsible for paying the deductible indicated in the Application for each repair visit caused by a covered Mechanical Breakdown(s).
- You are responsible for authorizing and paying for any teardown or diagnosis time needed to determine if Your Vehicle has a covered Breakdown. If it is subsequently determined that the repair is needed due to a covered Breakdown, then We will pay for this part of the repair. If the failure is not a covered Mechanical Breakdown, then You are responsible for this charge.
- While owned by You, if Your odometer fails, or for any reason does not record the actual mileage of Your Vehicle after Purchase Date, then in order for this Contract to remain effective, You must have it repaired and the mileage certified within thirty (30) days of failure date. If You fail to do so, then there will be no coverage under this Contract.

## OUR OBLIGATIONS

If a covered Mechanical Breakdown of Your Vehicle occurs during the term of this Contract, We will:

- Pay You or the repairer, for repair or replacement, as the Administrator deems appropriate, of the Covered Part(s) which caused the Mechanical Breakdown if You have met Your obligations as described in this Contract and if the Breakdown is not excluded under the exclusions section of this Contract. Replacement parts can be of like kind and quality. This may include the use of new, remanufactured or used parts as determined by the Contract Administrator.
- Reimburse You for a rental car at the rate of up to $30 for every 8 hours (or portion thereof) of labor time required to complete the repair. Required labor time is determined from the national repair manual in use by the repair facility. To receive rental benefits, You must supply Us with Your receipt from a licensed rental agency. The limit on this reimbursement is up to $30 per day for up to 5 days per Mechanical Breakdown or series of Breakdowns related in time or cause.
- Reimburse You for additional receipted motel and restaurant expenses up to $75 per day for a maximum of 3 days due to the occurrence of a covered Breakdown more than 100 miles from Your home which results in a repair facility keeping Your Vehicle overnight.

## FOR EMERGENCY ROADSIDE ASSISTANCE – CALL TOLL FREE (888) 300-8607

- Towing. Limit of $75 per incident or failure related in time or cause.
- Gasoline and fluids. An emergency supply will be provided when an immediate need arises. Limit of $75 per occurrence. You are responsible for cost of fluids delivered.
- Flat tire assistance. Removal and replacement with Your provided spare. Limit of $75 per occurrence.
- Lock-out assistance. Service will provide for a locksmith to gain entry to Your Vehicle if the keys are locked inside. Limit of $75 per occurrence.
- Battery jump start. A jump start will be provided when an immediate need arises due to a drained battery. Limit of $75 per occurrence.

## WHAT TO DO IF YOU HAVE A MECHANICAL BREAKDOWN, CALL TOLL FREE: (866) 628-3905

In the event of a Mechanical Breakdown, follow this step by step procedure:

(1) Use all reasonable means to protect Your Vehicle from further damage. This may require You to stop Your Vehicle, turn off the engine, and have Your Vehicle towed.

(2) You must contact the Contract Administrator at the number shown above for instructions before any repairs are started on Your Vehicle. All repair work must be performed by a licensed repair facility.

(3) Furnish the repair facility or Contract Administrator with such information as this Contract may reasonably require. This includes receipts for car rental charges, receipts for towing or emergency road service, and signed repair orders (indicating dates and mileage) as required by this Contract.

(4) If Your Vehicle requires an emergency repair outside of the Contract Administrator's normal business hours, You must follow all Contract guidelines and retain any replaced parts for the Administrator's inspection. You must contact the Contract Administrator the next business day for instructions on submitting the claim. For an emergency repair to a covered part Your claim will not be denied solely for lack of prior authorization.

(5) Absent prior written approval by Administrator, all claim documentation must be received by Administrator within ninety (90) days of claim authorization date.

 SilverRock.

You may contact the Administrator during normal business hours at the following number or address: SilverRock Automotive, Inc.
P.O. Box 29087, Phoenix, AZ 85038-9087 • (866) 628-3905



by that issued is complete an official effective Copy h

 CARVANA

# Carvana Care

## SYSTEM - COVERED PARTS

REPAIRS ON ALL ASSEMBLIES AND PARTS ARE COVERED ON YOUR VEHICLE WITH THE EXCEPTION OF THE FOLLOWING LISTED ITEMS:

- PAINT/CARPETING
- TRIM
- MOLDING/BUMPERS
- BRIGHT METAL
- UPHOLSTERY
- BRAKE ROTORS & DRUMS
- BATTERIES
- FRAME OR STRUCTURAL SEPARATION
- LENSES
- LIGHT BULBS/HEADLIGHTS
- STRUTS/SHOCK ABSORBERS

- BODY PANELS
- CANVAS, VINYL, OR FABRIC TOP
- GLASS
- FIBERGLASS TOP
- TIRES AND WHEELS
- PHYSICAL DAMAGE
- NORMAL FLUID/OIL/LUBRICANT SEEPAGE
- ANY REPOSITIONING, REFITTING, OR REALIGNING
- ALL MAINTENANCE SERVICES AND ITEMS SUCH AS ALIGNMENTS, WHEEL BALANCES, ENGINE TUNEUPS, SPARK/GLOW PLUGS, BRAKE PADS, LININGS & SHOES, FILTERS, LUBRICANTS, COOLANTS, AND BELTS

## EXCLUSIONS - WHAT THIS VEHICLE SERVICE CONTRACT DOES NOT COVER

This Contract provides no benefits or coverage and We have no obligation under this Contract for:

- A Breakdown caused by lack of customary, proper, or manufacturer's specified maintenance.
- A Breakdown caused by improper types or quantities of or contamination or lack of proper fuels, fluids, coolants, refrigerants or lubricants, including a Breakdown caused by a failure to replace seals or gaskets in a timely manner.
- A Breakdown caused by towing a trailer, another Vehicle or any other object unless Your Vehicle is equipped for this use as recommended by the manufacturer.
- Repair of any parts during a covered repair which are not necessary to the completion of the covered repair. Such replacement is considered betterment and is not covered by this Contract.
- A Breakdown which occurred prior to Your purchase of Your Vehicle that would have been obvious and apparent if that component was inspected at time of purchase and were known to You.
- A Breakdown caused by or involving modifications or additions to Your Vehicle made by You or with Your knowledge, whether on or after the Purchase Date, unless those modifications or additions were performed or recommended by the manufacturer.
- A Breakdown caused by or involving off-roading, misuse, abuse, lift kits, lowering kits, oversize or undersize tires, racing components, racing or any form of competition.
- Any repair which would normally be provided by the Vehicle manufacturer, a repair shop or part supplier under warranty.
- Costs or other damages caused by the failure of or to a part not listed as a Covered Part.
- Damage to the Vehicle caused by continued Vehicle operation after the failure of a Covered Part.
- Any liability, cost or damages You incur or may incur to any third parties other than for Administrator approved repair or replacement of Covered Parts which caused a Mechanical Breakdown.
- A Breakdown caused by overheating, rust, corrosion, restricted oil or coolant passages, restricted filters or physical damage.
- A Breakdown caused by collision, fire, electrical fire or meltdown, theft, freezing, vandalism, riot, explosion, lightning, earthquake, windstorm, hail, water, flood or acts of the public enemy or any government authority, or for any hazard insurable under standard physical damage insurance policies whether or not such insurance is in force respecting Your Vehicle.
- A Breakdown not occurring in the United States or Canada.
- Loss of use, loss of time, lost profits or savings, inconvenience, commercial loss, or other incidental or consequential damages or loss that results from a Breakdown.
- Liability for damage to property, or for injury to or death of any person arising out of the operation, maintenance or use of Your Vehicle whether or not related to a Breakdown.
- Any cost or other benefit for which the manufacturer has announced its responsibility through any means including public recalls or factory service bulletins.
- Any part not covered by, or excluded by the original Vehicle manufacturer's warranty.
- Repair or replacement of any covered part if a Breakdown has not occurred or if the wear on that part has not exceeded the field tolerances allowed by the manufacturer.
- This Contract does not cover any Vehicle used for business, deliveries, construction, or commercial hauling; or is used as a postal Vehicle, taxi, police, or other emergency Vehicle; or any Vehicle rented or leased by You to someone else; or any Vehicle equipped to or used to plow snow; or any Vehicle using or have used or modified in a manner which is not recommended by the Vehicle manufacturer by you or with your knowledge, whether any such exclusion shall originate during the term of this Contract.

## CANCELLATION REFUNDS

If You request a cancellation:

- **Within the first thirty (30) days after the Contract Purchase Date and have filed no claims, then You shall receive a refund or credit to Your account of the full** Contract Purchase Price.

 SilverRock

You may contact the Administrator during normal business hours at the following number or address: SilverRock Automotive, Inc.
P.O. Box 29087, Phoenix, AZ 85038-9087 • (866) 628-3905



by that ... Copy it



# Carvana Care

| APPLICATION/CONTRACT NUMBER | |
|---|---|
| CVSC | 1189373 |

- **After the first thirty (30) days from the Contract Purchase Date or have filed a claim,** then You shall receive a Pro-Rata Refund, calculated as the lesser of: (a) the ratio of the term remaining to the original term covered, or (b) the ratio of the miles remaining to the original miles covered. The Contract Term for cancellation purposes will be based on the date You purchased the Contract and the date the Contract would expire, and the mileage on the date You purchased the Contract and the mileage at which the Contract would expire. If You cancel the Contract, the cancellation fee is the lesser of (i) $50.00 or (ii) 10% of the prorated refund.
- **Requesting a refund.** You, or Your Lienholder, may cancel this Agreement by submitting a written request of cancellation to Administrator. The completed written request must be signed by You and returned to Administrator with a copy of this Contract. The cancellation documents may be mailed to P.O. Box 29087, Phoenix, AZ 85038-9087 or e-mailed to cancellations@silverrockinc.com. All requests must be received by Administrator within 30 days of requested cancellation effective date. Notification to cancel shall start only upon Administrator's receipt of Your complete cancellation documentation. Administrator is the party responsible for honoring cancellation requests. If You cancel this Contract and do not receive a refund, please notify BlueShore Insurance.
  Note: This provision is not available on Contracts which have been transferred.

Any cancellation by Us will comply with O.C.G.A. 33-24-44.

## OUR RIGHT TO CANCEL THIS CONTRACT

We reserve the right to cancel this Contract and will not pay for a Mechanical Breakdown if:

- *Fraud.* You commit any acts of fraud as regards this Contract, in any way.
- *Failure to Pay Consideration.* Your failure to pay all of the consideration and amounts due under this Contract, for any reason.
- *Material Misrepresentations.* Your material misrepresentations as regards this Contract, of any type, including, but not limited to, whether Your Vehicle is used for business, deliveries, construction, or commercial hauling; Your Vehicle is used as a postal Vehicle, taxi, police, or other emergency Vehicle; You rent or lease Your Vehicle to someone else; Your Vehicle is equipped to or used to plow snow; You are using or have used or modified Your Vehicle in a manner which is not recommended by the Vehicle manufacturer; or whether the odometer, for any reason does not record the actual mileage of Your Vehicle after Purchase Date.
- In the event the Contract is cancelled by Us, then We will provide a Pro-Rata Refund, but We will not retain a cancellation fee.

## HOW THIS CONTRACT MAY BE TRANSFERRED

This provision is only available if You are the first Contract Holder. This option is not available to You if the Vehicle is traded or sold to or through any entity other than a private party. Your rights and duties under this Contract may be transferred if You sell Your Vehicle directly to another private party, but only if You do the following:

- Send Administrator the completed transfer Application within thirty days of the sale or transfer of Your Vehicle.
- Submit proof that the manufacturer's warranty has been transferred to the new owner.
- Pay Administrator a $50.00 transfer fee. In the event Your Vehicle is a total loss or repossessed, Your rights and obligations under this Contract immediately transfer to the Lienholder, if any. You must provide new owner with copies of all receipts as listed under "YOUR OBLIGATIONS".

## TRANSFER APPLICATION

| | | |
|---|---|---|
| *Name of New Owner* | *Date of Transfer* | *Odometer Reading on Date of Transfer* |
| *Address* | *City* | *State*   *Zip* |
| *Signature of Vehicle Purchaser* | | *Date* |
| *Signature of Vehicle Purchaser* | | *Date* |

## OTHER IMPORTANT CONTRACT PROVISIONS

OUR OBLIGATIONS TO YOU ARE GUARANTEED UNDER A SERVICE CONTRACT REIMBURSEMENT POLICY. In return for Your payment for this Contract and subject to its terms, You will be provided with the protection described herein. Our obligations to perform under this Service Contract are insured by BlueShore Insurance Company 1720 W. Rio Salado Pkwy, Tempe, Arizona 85281, (877) 864-2873. In the event We fail to pay any covered claim within sixty (60) days after proof of loss has been filed, You may make a direct claim to the insurer at the address listed above.

The Dealer agrees that all sums paid by You under the terms of this Contract, excluding a commission earned by the Dealer shall be submitted on Your behalf to the Administrator and others for the purpose of assuring the payment of Your claims under this Contract. If this Contract is cancelled Dealer is responsible for refunding any unearned part of the commission.

The aggregate total of Our liability for all benefits paid or payable during the term of this Contract shall not exceed the actual cash value of Your Vehicle at time of Contract purchase. Our limit of liability for any Breakdown or series of Breakdowns related in time or cause shall not exceed the actual cash value of Your Vehicle according to current National Auto Dealers Association standards at the time of Breakdown.

After You receive any benefits under this Contract, We are entitled to all Your rights of recovery against any manufacturer, repairer or other party who may be



You may contact the Administrator during normal business hours at the following number or address: SilverRock Automotive, Inc.
P.O. Box 29087, Phoenix, AZ 85038-9087 • (866) 628-3905



DocuSign Envelope ID: 4128 F62E 9E5 D5 AF2 7530 7B21742

 CARVANA

# Carvana Care

| APPLICATION/CONTRACT NUMBER | |
|---|---|
| CVSC | 1189373 |

responsible to You for the costs covered by this Contract or for any other payment made by Us. If We ask, You agree to help Us enforce these rights. You also agree to cooperate and help Us in any other matter concerning this Contract.

This Contract contains the complete agreement between the parties and is not valid unless signed by the Customer.

This Contract will terminate when You sell Your Vehicle unless transferred as provided in the Transfer Section or when this Contract is cancelled as outlined in the Cancellation Section or when Your Vehicle reaches the time or mileage limitation.

Coverage afforded under this Contract is not guaranteed by Your state's Property and Casualty Guaranty Association.

THIS IS NOT A CONTRACT OF INSURANCE.

YOU AND WE AGREE THAT ANY DISPUTE, SHALL TAKE PLACE ONLY ON AN INDIVIDUAL BASIS. YOU AND WE AGREE TO WAIVE THE RIGHT TO: (1) A TRIAL BY JURY; (2) PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING, EITHER AS A CLASS REPRESENTATIVE, CLASS MEMBER OR CLASS OPPONENT; OR (3) JOIN OR CONSOLIDATE YOUR CLAIM(S) WITH CLAIMS OF ANY OTHER PERSON.  THIS PARAGRAPH DOES NOT APPLY TO ANY LAWSUIT FILED AGAINST US IN COURT BY A STATE OR FEDERAL GOVERNMENT AGENCY EVEN WHEN SUCH AGENCY IS SEEKING RELIEF ON BEHALF OF A CLASS THAT INCLUDES YOU.

TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES AGREE THAT: (I) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (II) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

*RS*



 SilverRock

VSC (SR-CV-GA-EXC) 07-2018

You may contact the Administrator during normal business hours at the
following number or address: SilverRock Automotive, Inc.
P.O. Box 29087, Phoenix, AZ 85038-9087 • (866) 628-3905

Page 5 of 5

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742



## CREDIT REPORTING NOTICE

Thank you for being a Carvana customer. We know you have other choices and we appreciate you choosing us to assist you.

We report all information, positive and negative. "Negative information" means information concerning delinquencies, late payments, missed payments, or any form of default. If you believe any information we have reported is inaccurate please notify us immediately in writing at the address below.

If you have any questions about any of our programs or your credit reporting, Please feel free to call us at 877-235-9900 or write us at 1930 W Rio Salado Pkwy, Tempe, AZ 85281, Attn: Credit Bureau Disputes

Have a great day!

Exhibit D