```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MISSOURI
                      EASTERN DIVISION


RICHARD SADDLER,                   )
                                   )
           Plaintiff,              )
                                   )
   v.                              ) No. 4:20-CV-105-HEA
                                   )
CARVANA LCC,                       )
                                   )
           Defendant.              )



                        MOTION HEARING


         BEFORE THE HONORABLE HENRY EDWARD AUTREY
                UNITED STATES DISTRICT JUDGE


                       AUGUST 5, 2020
```

APPEARANCES:

For Plaintiff:      Richard Sadler (Pro Se)
                    413 Genoa Drive
                    Manchester, MO 63021

For Defendant:      Marshall Thomas McFarland, Esq.
                    GULLET SANFORD ROBINSON & MARTIN PLLC
                    150 Third Avenue South, Suite 1700
                    Nashville, TN 37201

                    Allison Elizabeth Lee, Esq.
                    BOYLE BRASHER LLC
                    1010 Market Street, Suite 950
                    St. Louis, MO 63101

*REPORTED BY:*      *Gayle D. Madden, CSR, RDR, CRR*
                    *Official Court Reporter*
                    *United States District Court*
                    *111 South Tenth Street, Third Floor*
                    *St. Louis, MO  63102      (314) 244-7987*
        (Produced by computer-aided mechanical stenography.)

1          (Proceedings commenced via videoconference at 1:55 p.m.)

2          THE COURT:  This is the matter of Richard Sadler versus Carvana LLC, Case No. 19SL-CC05679.  The matter is now before the Court on this date for purposes of proceeding on hearing on Defendant Carvana's motion to compel arbitration and dismiss action or, in alternative, to stay.  The Plaintiff is present and is proceeding pro se, without counsel.  Defendant is present through counsel.  We are proceeding in this matter consistent with the matters and requirements of the CARES Act and also consistent with the Order of Judge Rod Sippel, the Chief Judge for this Eastern District of Missouri, issued to effectuate the continued operations of the Court during COVID-19 pandemic circumstances.

          Mr. Sadler, are you ready to proceed?

          MR. SADDLER:  I am, Your Honor.

          THE COURT: All right.  And, Mr. Maxwell, are you ready to proceed?

          MR. MCFARLAND: Mr. McFarland.  Yes, I'm ready to proceed, Your Honor.

          THE COURT: Mr. McFarland.  I'm sorry.  All right.

          DEPUTY CLERK:  And then we had another attorney just enter, Allison --

          THE COURT: All right.  Allison --

          DEPUTY CLERK:  Allison Lee.

          THE COURT: Ms. Lee.

1 DEPUTY CLERK: Allison. Allison Lee.

2 THE COURT: We can't hear you.

3 DEPUTY CLERK: You need to unmute.

4 MS. LEE: Oh, I'm sorry. I was muted. Good
5 afternoon. I'm local counsel for Carvana, so I'll defer to
6 Mr. McFarland.

7 THE COURT: Yes.

8 DEPUTY CLERK: Thank you.

9 THE COURT: All right. Thank you.
10 You're still proceeding pro se, representing
11 yourself, Mr. Sadler; is that correct?

12 MR. SADDLER: I am, Your Honor.

13 THE COURT: Okay. Any questions about this
14 proceeding today before we get underway with it?

15 MR. SADDLER: Absolutely. Thank you, Your Honor. I
16 guess one question I have as far as etiquette -- how do we --
17 with regards to something in which we may object to, do we
18 allow the other side to finish? How do you want to handle
19 that? How should I proceed?

20 THE COURT: Well, since it's a motion, you know, and
21 it's the Defendant's motion, Defendant will get to go first to
22 argue the motion, and then once the Defendant finishes their
23 argument on the motion, his argument on the motion, you'll
24 have an opportunity to respond to his arguments and state your
25 position with regard to whether the motion should be granted

1 or not. Okay?

2 MR. SADDLER: Okay. And this is dealing with the
3 motion with regards to remanding?

4 THE COURT: No. We're dealing with the motion to
5 compel arbitration and dismiss the action or, in the
6 alternative, the motion to stay.

7 MR. SADDLER: I don't -- I -- that's -- that's --
8 there's a misunderstanding because I had -- when I had spoken
9 with your clerk or whomever that young lady who called me, it
10 was my understanding that we had to deal with the issue of
11 whether or not the Court has jurisdiction.

12 THE COURT: Well, that's all related to the motion to
13 compel as well as the motion to dismiss. I don't think that
14 you had filed a motion to remand in the case.

15 MR. SADDLER: Yes.

16 THE COURT: You did?

17 MR. SADDLER: Yes, sir.

18 THE COURT: When did you file it?

19 And did you send copies to the Defendant's attorneys?

20 MR. SADDLER: I did. I emailed it to counsel as
21 well.

22 DEPUTY CLERK: These are the pending motions I show.

23 MR. MCFARLAND: Your Honor, to clarify this --

24 THE COURT: You know, I note that -- I note that
25 there's an objection to the removal, but there is no motion to

1   remand that's been filed.

2           Mr. McFarland, what were you going to say?

3           MR. MCFARLAND:  I was just going to point out the

4   objection to removal that was filed on February 20th, but it

5   appears Your Honor has --

6           MR. SADDLER:  Yeah, I misspoke.  Thank you.

7           THE COURT:  All right.  All right.  Go ahead,

8   Mr. McFarland, with your argument.

9           MR. MCFARLAND:  Thank you.  Thomas McFarland here on

10  behalf of Carvana LLC.  This is Carvana's motion to compel

11  arbitration and to dismiss the action or, in the alternative,

12  to stay.  This is a fairly straightforward motion, Your Honor.

13  As you are certainly aware, when -- when deciding motions to

14  compel arbitration, the standard is -- is threefold.  It's

15  whether a valid arbitration agreement exists, whether the

16  dispute falls within the scope of that agreement, and whether

17  any applicable contract principles subject the agreement to

18  revocation.  And put simply, all three of those factors are

19  present in this case.  As Your Honor may recall, Plaintiff

20  initially filed this action or a similar action in the county

21  court for St. Louis County, which we removed to Your Honor and

22  was remanded back to the Circuit Court, but in that petition,

23  which was verified, the Plaintiff swore that he entered into,

24  amongst others, an arbitration agreement with Carvana LLC.

25  That arbitration agreement is within a retail installment

1   contract between my client and the Plaintiff for the purchase
2   of a particular vehicle that is in dispute here.  That
3   arbitration agreement controls this matter.  It is a valid
4   arbitration agreement.  It satisfies the requirements for
5   binding contracts under Missouri law.  There's offer and
6   acceptance, and it's supported by valid consideration.  In an
7   attempt to -- to avoid that arbitration agreement in this
8   refiled action, Plaintiff has declined to reference the
9   arbitration agreement as one of the documents that he entered
10  into with my client.  Notwithstanding that, it's still valid;
11  it still exists.  The first threshold, the first factor, is
12  satisfied here.
13          The terms of the arbitration agreement, which can be
14  found on page 4 of Carvana's motion, document 8, page 4,
15  states that we both agree that if we have a dispute, either of
16  us can decide to resolve it by using arbitration.  Arbitration
17  is a formal process for resolving disputes without going to
18  court.  By choosing arbitration, we are both giving up our
19  right to go to court, except small claims court, to resolve
20  our dispute.  In arbitration, a neutral person, called an
21  arbitrator, listens to both of us and decides how our dispute
22  is resolved.  Arbitrator decisions are enforceable, just like
23  a court order.  Unlike court orders, these decisions are
24  subject to very limited review by a court.  Once a decision is
25  made, it is final except in very limited circumstances.  In

1 arbitration, we both give up our right to a judge or a jury,
2 and as a result, there is no jury trial. That is contained in
3 the arbitration agreement. It's a broad provision. The first
4 factor is satisfied.
5 Secondly, the dispute at issue here falls within the
6 scope of the arbitration agreement. Plaintiff's initial
7 verified petition contained two causes of action for breach of
8 contract and misrepresentation, if I do recall. His since
9 refiled action contains those two causes of action as well as
10 five additional causes of action. The causes of action are
11 breach of the retail installment contract of which the
12 arbitration agreement is made part, statutory fraud with
13 relation to that contract, violation of the Missouri
14 Merchandising Practices Act with relation to that contract,
15 breach of that contract's covenant of good faith and fair
16 dealing, fraud or negligent misrepresentation and unjust
17 enrichment. Each of these claims relates to the contract.
18 But for the contract, my client and the Plaintiff would have
19 no interaction.
20 The language of the -- of the arbitration agreement,
21 which can be found on page 5 of Carvana's memorandum,
22 identifies the specific claims that are subject to
23 arbitration, and it identifies a myriad list. All of them are
24 encompassed in this cause of action. It's any claim or
25 dispute or controversy between Carvana and Mr. Saddler that

1   arises from, amongst others, the contract, the vehicle or its
2   sale, any provision of goods and services with relation to the
3   contract or the vehicle, the relationship that results from
4   the contract, the financing terms, the credit applications,
5   the servicing of the contract, the collection of amounts
6   Mr. Saddler owes to Carvana, repossession of the vehicle, his
7   personal information, or, importantly, any attempts of
8   rescission or termination of the contract. Respectfully --
9   and then the clause finishes by saying, "'Claim' has the
10  broadest reasonable meaning.  It includes claims of every kind
11  of nature.  This includes initial claims, counterclaims,
12  cross-claims, third-party claims, statutory claims, contract
13  claims, negligence and tort claims, including claims of fraud
14  and other intentional torts."
15          Respectfully, when viewed in light of the strong
16  presumption in favor of arbitration that the Federal
17  Arbitration Act embodies, this -- this provision encompasses
18  the dispute.  The case law states that when the language is
19  broad like this, the dispute is arbitrable if it touches on
20  the matters encompassed by the contract.  Respectfully, Your
21  Honor, the relationship between the parties would not exist
22  but for this contract.  The arbitration agreement is broad
23  enough to encompass the dispute.
24          And, lastly, with regard to the second factor, the
25  FAA states that all doubts are resolved in favor of

1  arbitration.  My client has bargained for arbitration, and
2  it's entitled to it here.
3         The last factor is whether any applicable contract
4  principles subject the agreement to revocation, and put
5  simply, there are no such principles here.  Defendant or
6  Plaintiff, in his response, attempts to now argue that --
7  essentially, that Carvana forged his signature on the
8  arbitration agreement.  That is directly contrary to the
9  verified allegations in his first petition.  He is simply
10 trying to avoid the arbitration agreement, and that should not
11 be permitted to go forward in this case.
12        Importantly, Plaintiff did not make this claim that
13 Carvana forged his signature until 16 months after signing the
14 arbitration agreement and well over eight months after filing
15 his verified petition.
16        Additionally, Carvana has submitted the declaration
17 of Joshua Brown, which is attached as Exhibit 1 to Carvana's
18 reply in this matter, which is document 17.  Mr. Brown's
19 declaration, without going too far into it -- the Court can
20 review that if it would like.  It, essentially, states the
21 steps and procedures that Mr. Sadler would have to go through
22 to execute the arbitration agreement and that Mr. Saddler did
23 in fact go through to execute the arbitration agreement.
24 These are all based off the review of Carvana's records, and
25 in fact, Carvana would not deliver -- Carvana's business

1  practices do not permit the delivery of a vehicle if these
2  documents were not executed.  Put forward or put simply, he
3  executed -- he executed the arbitration agreement.  The
4  declaration of Mr. Brown establishes that Carvana received
5  what's called a Certificate of Completion that indicates all
6  of these documents were executed.  The DocuSign -- DocuSign is
7  the application that Carvana uses to electronically sign
8  documents -- that their customers use to electronically sign
9  documents.  The document envelope ID matches the signing of
10 those documents, and the activity log that's attached to
11 Mr. Brown's declaration establishes that this arbitration
12 agreement was in fact executed.
13         And one -- one final point with regard to this is
14 that the Plaintiff could have opted out of the arbitration
15 agreement without penalty.  Within 30 days of receiving the
16 arbitration agreement, signing and receiving the arbitration
17 agreement, he could have opted out without penalty at all.  He
18 chose not to do so.  Carvana is entitled to arbitrate this
19 matter.  It's entitled to the limited discovery and review
20 that arbitration brings and the cost savings that arbitration
21 brings.
22         And, lastly, in -- in Plaintiff's response, he makes
23 an argument that Carvana should be sanctioned.  Put simply,
24 Carvana has done nothing to warrant sanctions in this matter,
25 and sanctions should not be avoided or should not be awarded.

1    And the final point is that when judging the
2    respective declarations in this matter, Plaintiff's criminal
3    history that's pointed out in the final section of Carvana's
4    reply, doc 17, document 17, is -- should be considered by the
5    Court.  And unless Your Honor has any questions, that is
6    the -- that is the extent of our argument.
7            THE COURT:  Very well.
8            Mr. Sadler, your response please.
9            MR. SADDLER:  Yes.  Your Honor, two things.  Number
10   one, obviously, Defendant did not go into something that I
11   think is very pertinent, and that is whether or not the Court
12   actually has jurisdiction because of the jurisdictional issues
13   that are at matter even to hear this.  I think there is a
14   jurisdictional issue with regards to how the Defendant has not
15   only -- now that I have found out -- not only have created
16   the -- the signed document with regards to arbitration that
17   the Court needs to take attention to, but in addition, they're
18   skipping over the fact of whether or not jurisdiction is --
19   is -- is appropriate, and I believe, for starters, they have
20   not -- under any circumstances, have not shown that -- proven
21   the burden that jurisdiction is actually -- is proper in this
22   court, for starters.
23           And, secondly, with regards to the document that he's
24   talking about, when the car was acquired, it was the same day
25   in which I bought my house.  I'll make a long story short

1  here.  I closed on my house on, I believe, September 21st, and
2  then three hours later, while at my house, moving in, moving
3  boxes, the Carvana car pulled up.  This was the second
4  automobile I had purchased from Carvana in the last -- it had
5  been within a four-month period of time from the delivery of
6  the second car on the 21st of September.  Of course, going
7  through the whole process, the -- the agent or the deliverer
8  for Carvana, when they ship the car -- after he tried multiple
9  times in getting his computer to work, he could not.  He had a
10 copy of the actual contract, which I've attached, affixed to
11 my filing, my second filing, and what changed from the first
12 time I was before you, Your Honor, to today, being in front of
13 you in this case, is the first case was clearly on a computer.
14 I bought that car.  Everything was done on an iPad, on a
15 laptop.  I executed.  I returned that car 21 -- approximately
16 21 days later, almost under a month later.  I bought the exact
17 same make, model, and color car.  The only difference
18 between -- well, there's multiple differences, but the
19 difference between the two is the car in which is the subject
20 of this hearing is the six-cylinder, where the first car was a
21 four-cylinder.  So, in my recollection of the time in which we
22 were before you before, it was my understanding that I did
23 everything electronically.  What changed is in my office, the
24 documents in which I signed with the Carvana agent present was
25 put in a box that was in my office.  I didn't see that box

1  until well after this process had already started.  So counsel
2  is correct.  I did stipulate that I executed the document via
3  their -- their tablet, but I did not do it in this one, and
4  the reason being is that agent, which discovery will
5  determine -- that agent who delivered that car simply asked
6  me, "Can you hook up your printer, and can we make a copy of
7  this so we can have a signed copy because I can't stand here
8  and get my computer to work, my laptop," or the iPad or
9  whatever he had in front of him.  I was like, "Fine."  So I
10 did that.  I went and got my printer hooked up.  We made a
11 copy.  I signed everything.  Now, whether or not it was an
12 error of his or not, when I signed those documents, there was
13 not a hard signed arbitration document.  Again, I had assumed
14 that I had signed one.  So it was under the assumption because
15 that's the information that Carvana had given me.  Later to
16 find out, when I find those signed documents, there is no
17 signed copy of an arbitration agreement inside those
18 documents.  So for counsel to reference that he has valid
19 proof, I believe what will help this -- this Court make a
20 determination on whether or not there's a jurisdiction issue
21 is discovery.  That's kind of exactly what I told counsel, and
22 that is I'm not opposed to coming up with a fixed amount.  I
23 just don't know the value of the case today because what I --
24 what I -- the facts I knew then are different than the facts I
25 know today, and that's my issue with him.

1     Based on what counsel has given you with regards to
2  the arbitration document, that document was not executed by
3  Richard Sadler, so -- and I think that will come out in
4  discovery, which is ultimately what I'm asking for. I rest on
5  that, Your Honor.
6         THE COURT: Mr. McFarland.
7         MR. MCFARLAND: Thank you, Your Honor. I will just
8  come back to Mr. -- Mr. Brown's declaration. Mr. Saddler
9  states that Carvana has no proof as to the execution, the
10 electronic execution, of the arbitration agreement. That is
11 simply not true. There is, first, Mr. Saddler's own sworn
12 statement, his sworn allegation that he executed this
13 document. It was only after Carvana moved for arbitration the
14 first time and then moved for arbitration in this case again,
15 because we moved for arbitration in the first case but the
16 case was voluntarily dismissed before that motion could be
17 heard, that Mr. Saddler now claims that Carvana went against
18 its business practices and executed a copy in -- in -- with
19 wet ink, which Carvana does not do, and if the Judge will look
20 at Mr. Brown's declaration starting at paragraph -- starting
21 at paragraph 13, Mr. -- Mr. Brown details the steps that
22 Mr. Saddler took to execute these documents via DocuSign. Via
23 his personal DocuSign portfolio, his personal DocuSign profile
24 that he registered with Carvana, he executed those documents
25 before the car was even delivered to him. The timing is

1  established in Mr. Brown's declaration.  There is simply no
2  question as to whether this arbitration agreement was
3  executed.  Mr. Sadler did execute it.  It is valid.  It
4  encompasses the dispute, and this dispute should be submitted
5  to arbitration absent the discovery that Mr. Saddler seeks
6  because, as we know from the first action, the discovery he
7  seeks will be all-encompassing, including sending deposition
8  notices to every single executive that Carvana identifies on
9  its -- on its website.  That's what Carvana is seeking to
10 avoid here.  What it's contractually entitled to avoid is the
11 litigation process via the arbitration agreement.  And really,
12 that's -- that's all -- that's what we would rest on along
13 with the fact that the Court can and should consider the --
14 the Plaintiff's criminal history when it comes to crimes
15 involving dishonesty when considering the -- the -- the
16 existence of the arbitration agreement, Your Honor.  Thank
17 you.
18         THE COURT:  And what is that criminal history?
19         MR. MCFARLAND:  In 2006, Mr. Saddler was convicted of
20 two counts of mail fraud in this court, and in 2014, he was
21 convicted of three counts of wire fraud.  Carvana has attached
22 those docket sheets as Exhibits 2 and 3 to its reply.  They
23 are available at document 17-2 and 17-3.
24         THE COURT:  All right.  Anything else, Mr. McFarland?
25         MR. MCFARLAND:  No.  Thank you.

1    THE COURT: Anything else you care to respond to or
2  state, Mr. Saddler?
3    MR. SADDLER: Yes. Yes, Your Honor. Thank you.
4  With regards to criminal history, as counsel brings up
5  criminal history, I'm not sure of the relevance to that, but
6  he brings it up. Also, keep in mind that Carvana is owned and
7  operated by DriveTime, which the father, Mr. Garcia, is also a
8  felon. Not only is he a felon as well through the -- through
9  the savings and loan process, he also has been fined by the
10 federal government in excess of approximately 15 to 20 million
11 dollars, as of the last three years ago, because of predatory
12 lending.
13   In addition to that, also, the SEC -- I don't know if
14 it's still open or not -- is also looking at Carvana based on
15 the fact that when they went public, they in turn hid the fact
16 that Mr. Garcia, a felon, was a majority share. He owns over
17 80 percent of Carvana, the publicly traded company, and they
18 hid that from the investors as that went -- as they went
19 public. So that may still be an open file. I'm not sure.
20   But with that being said, the issue at hand is I
21 acquired a car, and in acquiring a car, you're required in the
22 state of Missouri -- they are a licensed dealer in the state
23 of Missouri. It is their responsibility to give me a
24 Certificate of Title. That's what this is all about. I asked
25 for a Certificate of Title, and instead of getting a

1  Certificate of Title, after spending -- twice, I paid for
2  emissions.  I used their FedEx and FedExed it to them.  They
3  FedExed me an envelope.  I sent it to them on two occasions.
4  Since -- on May 5th or May 2nd, 2019, and I sent the first one
5  on October 18th, 2018.  Both of those, those emissions
6  reports, were sent to Carvana.  To this day -- I bought that
7  car September 21st, 2018.  We're almost coming up on two
8  years.  I still don't have a Certificate of Title.  So there
9  is an issue with -- that's why we're here.  That's all I've
10 asked for.  I still haven't gotten it.
11      In addition, this Court doesn't have jurisdiction
12 over this matter because this should be remanded, I feel, back
13 to the lower court.  I did -- I think through -- I'm not
14 saying that this may not come back to federal court later, but
15 I feel, as we sit here today, that the jurisdiction issue is
16 an issue that also needs to be dealt with, and I don't think
17 Carvana has proven that this Court actually has jurisdiction.
18 I rest, Your Honor.
19      THE COURT:  All right.  All right.  Let the record
20 reflect that this proceeding, this matter, will be taken under
21 submission, and you all will hear from me in a few days.
22 Okay?
23      MR. SADDLER:  Will there be a separate hearing, Your
24 Honor, for -- with regards to jurisdiction?  Because that's
25 originally what I had called and asked your [audio cutout]

| | |
|---|---|
| 1 | for. |
| 2 | THE COURT:  Well, again, you made an objection to the |
| 3 | removal, but you have never filed a motion for remand.  An |
| 4 | objection to the removal, basically, saying you object to |
| 5 | removal, is not -- is not a motion to have it sent back to the |
| 6 | state court for jurisdiction purposes or lack of jurisdiction. |
| 7 | So see what happens when I make my ruling. |
| 8 | MR. SADDLER:  Thank you. |
| 9 | THE COURT:  If there's a need for that, if there's a |
| 10 | need for that, you need to file a proper form.  If not, that |
| 11 | will take care of that.  Okay? |
| 12 | MR. SADDLER:  I'll get it filed immediately. |
| 13 | MR. MCFARLAND:  Thank you, Your Honor. |
| 14 | THE COURT:  All right. |
| 15 | MS. LEE:  Thank you, Your Honor. |
| 16 | THE COURT:  All right.  Thank you, all.  Stay safe. |
| 17 | Stay well.  Stay healthy. |
| 18 | MR. SADDLER:  You as well, Your Honor. |
| 19 | MR. MCFARLAND:  You as well. |
| 20 | THE COURT:  All right. |
| 21 | (Proceedings concluded at 2:21 p.m.) |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

                                                                      19
                               CERTIFICATE


	I, Gayle D. Madden, Registered Diplomate Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

	I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

	I further certify that this transcript contains pages 1 through 18 inclusive.

	Dated at St. Louis, Missouri, this 24th day of October, 2021.

                                        */s/ Gayle D. Madden*

                                        _____
                                        GAYLE D. MADDEN, CSR, RDR, CRR
                                        Official Court Reporter